Matthew D. Pearson (SBN 294302)
Matthew.Pearson@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
400 Spectrum Center Drive, Suite 1700
Irvine, California 92618
Telephone: (714) 557-3800
Facsimile: (714) 557-3347

*Attorneys for Defendant*
ACCIDENT FUND HOLDINGS, INC.
(erroneously sued as ACCIDENT FUND
HOLDINGS, INC., D/B/A
WWW.COMPWESTINSURANCE.COM)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY RODRIGUEZ, individually and on behalf of all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ACCIDENT FUND HOLDINGS, INC., d/b/a www.compwestinsurance.com, <br><br> Defendant. | Case No.:  2:25-cv-03920-SK <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT** <br><br> [Filed Concurrently with Declarations of Matthew D. Pearson, Mickey Hadick, and Lupe Rangel; and [Proposed] Order] <br><br> Action Filed:  March 24, 2025 <br> Action Served:  April 3, 2025 <br> Action Removed: May 2, 2025 <br> **DATE: August 6, 2025** <br> **TIME: 10:00 a.m.** <br> **COURTROOM: 540, 5TH FLOOR** |

## NOTICE OF MOTION

**NOTICE IS HEREBY GIVEN** that on August 6, 2025, at 10:00 a.m. in Courtroom 540, 5th Floor of the United States District Court, Central District of California, located at 255 E. Temple Street, Los Angeles, California 90012, Defendant Accident Fund Holdings, Inc. (erroneously sued as Accident Fund Holdings, Inc. dba www.compwestinsurance.com) ("AFHI") will and hereby does move, pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6) for an order dismissing Plaintiff Emily Rodriguez's ("Plaintiff") Class-Action Complaint ("Complaint").

This motion is made on the grounds that Plaintiff has failed to state against AFHI a plausible claim under California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51(a), because Plaintiff has not plausibly alleged (1) that AFHI installed or used a pen register; (2) that Plaintiff was injured by AFHI's alleged installation or use of a pen register; and (3) that CIPA § 638.51(a) should apply to AFHI's conduct, as alleged in the Complaint.

This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declarations of Matthew D. Pearson, Mickey Hadick, and Lupe Rangel; the Court's file and records in this action; and such other evidence and arguments as may be made or presented at or before the hearing on this Motion.

Dated: June 23, 2025

Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

By: _/s/ Matthew D. Pearson_
MATTHEW D. PEARSON

*Attorney for Defendant,* ACCIDENT FUND HOLDINGS, INC. (erroneously sued as Accident Fund Holdings, Inc. dba www.compwestinsurance.com)

# **<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ................................................................................................ 1

II.     PLAINTIFF'S ALLEGATIONS ....................................................................... 3

III.    THE FACTS ...................................................................................................... 4

     A.      AFHI ...................................................................................................... 4

     B.      Plaintiff .................................................................................................. 4

IV.     LEGAL STANDARDS ..................................................................................... 5

     A.      Rule 12(b)(2) Standard .......................................................................... 5

     B.      Rule 12(b)(6) Standard .......................................................................... 6

V.      ARGUMENT .................................................................................................... 7

     A.      The Court Lacks Personal Jurisdiction over AFHI............................... 7

          1.      Defendant is not subject to General Jurisdiction in
                California. ................................................................................... 7

          2.      Defendant is not subject to Specific Jurisdiction in
                California. ................................................................................... 8

     B.      Plaintiff Has Failed to State an Actionable Claim Against AFHI. ...... 14

     C.      The Rule of Lenity Compels This Court to Dismiss Plaintiff's
         Complaint. ............................................................................................ 27

VI.     CONCLUSION ............................................................................................... 29

i

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201, 1209 (9th Cir. 2020)....................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009) .....................................................................................6

*Aviles v. Liveramp, Inc.*,
  2025 Cal. Super. LEXIS 776.........................................................................16, 22

*Balsam v. Trancos, Inc.*,
  203 Cal. App. 4th 1083 (2012)...........................................................................21

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*,
  223 F.3d 1082 (9th Cir. 2000),..............................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................6

*Bittner v. United States*,
  598 U.S. 85 (2023) .............................................................................................28

*Boorstein v. Men's J. LLC*,
  No. CV 12-771 DSF EX, 2012 WL 2152815 (C.D. Cal. June 14, 2012)......23

*Brace v. Lifeguard, Inc.*, No. CIV. 92-20509 SW,
  1995 WL 32868 (N.D. Cal. Jan. 25, 1995) ....................................................23

*Briskin v. Shopify, Inc.*,
  135 F.4th 739 (9th Cir. 2025)...........................................................7, 9, 10, 11

*Bristol-Myers Squibb Co. v. Super. Ct.*,
  582 U.S. 255 (2017) .............................................................................................6

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ..............................................................20

*Brown v. Elec. Arts, Inc.*,

ii

724 F.3d 1235 (9th Cir. 2013)..........................................................................6

*Brown v. Google LLC*,

   685 F. Supp. 3d 909 (N.D. Cal. 2023)...................................................18, 19

*Capitol Recs. Inc. v. Thomas-Rasset*, No. CIV 06-1497(MJD/RLE),

   2009 WL 1664468 (D. Minn. June 11, 2009)................................................18

*Cetacean Cmty. v. Bush*,

   386 F.3d 1169 (9th Cir. 2004).........................................................................22

*City of Los Angeles v. Barr*,

   941 F.3d 931 (9th Cir. 2019)...........................................................................18

*Cody v. E. Gluck Corp.*, No. 23-CV-02286-HSG,

   2024 WL 4314187 (N.D. Cal. Sept. 26, 2024) ........................................10, 23

*CollegeSource, Inc. v. AcademyOne, Inc.*,

   653 F.3d 1066 (9th Cir. 2011)...........................................................................6

*Conohan v. Gen Digital Inc*, No. 2:24-CV-06894-MCS-PVC,

   2025 WL 864655 (C.D. Cal. Feb. 19, 2025)...................................................12

*Corbett v. Pharmacare U.S., Inc.*,

   544 F. Supp. 3d 996 (S.D. Cal. 2021)............................................................22

*Crandon v. United States*,

   494 U.S. 152 (1990)........................................................................................27

*Daimler AG v. Bauman*,

   571 U.S. 117 (2014)......................................................................................7, 5

*Dole Food Co. v. Watts*,

   303 F.3d 1104 (9th Cir. 2002)........................................................................13

*Elliot v. Cessna Aircraft Co.*, No. 820CV00378SBADSX,

   2021 WL 2153820 (C.D. Cal. May 25, 2021) ...............................................10

*Esparza v. Kohls*,

   723 F. Supp. 3d 934 (S.D. Cal. 2024) ...........................................................25

*F.A.A. v. Cooper*,

566 U.S. 284 (2012) ............................................................................................23

*Ford Motor Co*, 592 U.S. at 359............................................................................13

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,

 972 F.3d 1101 (9th Cir. 2020).................................................................5, 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,

 564 U.S. 915, 919 (2011) ........................................................................6, 7

*Greenley v. Kochava*, No. 22-cv-01327-BAS-AHG,

 2023 WL 4833466 (S.D. Cal. July 27, 2023)................................................15

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,

 328 F.3d 1122, 1133–34 (9th Cir. 2003).......................................................14

*Heeger v. Facebook, Inc.*,

 *509 F. Supp. 3d 1182 (N.D. Cal. 2020)* ........................................................24

*Hendricks v. New Video Channel Am.*, LLC, No. 2:14-CV-02989-RSWL-S,

 2015 WL 3616983, at \*4 (C.D. Cal. June 8, 2015) .........................................7

*Hill v. Nat'l Collegiate Athletic Assn.*,

 7 Cal. 4th 1 ............................................................................................24

*In re Application for Pen Reg. & Trap/Trace Device with Cell Site Location Auth.*

 396 F. Supp. 2d 747, 752 (S.D. Tex. 2005) ..................................................15

*In re the Application of the U.S. for an Ord. Authorizing the Installation & Use of a*

 *Pen Reg. & Trap & Trace Device,*

 890 F. Supp. 2d 747 (S.D. Tex. 2012) ....................................................15, 16

*In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap On*

 *(XXX) Internet Serv. Acct./User Name, (xxxxxxxx@xxx.com),*

 396 F. Supp. 2d 45 (D. Mass. 2005).............................................................20

*In re iPhone Application Litig.*,

 844 F. Supp. 2d 1040 (N.D. Cal. 2012)........................................................20

*In re United States*,

 441 F. Supp. 2d 816, 818 (S.D. Tex. 2006) ..................................................14

iv

*In re W. States Wholesale Nat. Gas Antitrust Litig. (Western States)*, 715 F.3d 716,
    741 (9th Cir. 2013) .......................................................................................5

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014)...................................................................21

*James v. Walt Disney Co.*,
    701 F. Supp. 3d 942 (N.D. Cal. 2023) .........................................................19

*Jewel v. Nat'l Sec. Agency*,
    673 F.3d 902 (9th Cir. 2011)...................................................................22

*Khamooshi v. Politico LLC*, No. 24-CV-07836-SK,
    2025 WL 1408896, at *3 (N.D. Cal. May 13, 2025) ....................................21

*Langer v. Kiser*,
    57 F.4th 1085 (9th Cir. 2023)....................................................................3

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522, 532 (9th Cir. 2008).............................................................28

*Licea v. Blue Apron, LLC*,
    2025 Cal. Super. LEXIS 744, *8................................................................12

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011)...................................................................22

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011)...................................................................10

*Michael Grecco Prods., Inc. v. Wenn Rts. Int'l Ltd.*, No. 2:24-CV-06449-RGK-
    BFM, 2025 WL 575356 (C.D. Cal. Jan. 6, 2025).........................................18

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998)...............................................................13, 17

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006)...............................................................14, 15

*People v. Nuckles*,
    56 Cal. 4th 601 (Cal. 2013)......................................................................27

v

*People v. Reynoza,*
    15 Cal. 5th 982 (Cal. 2024) ...............................................................27

*Picot v. Weston,*
    780 F.3d 1206 (9th Cir. 2015) .............................................................9

*Price v. Headspace, Inc.,* No. 24STCV19921,
    2025 WL 1237977 (Cal.Super. Apr. 01, 2025) ...............................21

*Rio Props., Inc. v. Rio Int'l Interlink,*
    284 F.3d 1007 (9th Cir. 2002) ....................................................13, 14

*Rodriguez v. Autotrader.com, Inc.,* No. 2:24-CV-08735-RGK-JC,
    2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025)..................24, 25, 26

*Rounds v. Case-Mate Inc.,* No. 2:24-cv-08531-WLH-RAO,
    2025 U.S. Dist. LEXIS 48225 (C.D. Cal. Mar. 14, 2025) ...........12

*Saleh v. Nike, Inc.,*
    562 F. Supp. 3d 503 (C.D. Cal. 2021)...............................................25

*Sanchez v. Cars.Com Inc.,*
    2025 Cal. Super. LEXIS 710...............................................................24

*Sanchez v. Marriott Int'l, Inc.,* No. 2:24-CV-04882-SB-AGR,
    2024 WL 3598821,  (C.D. Cal. July 31, 2024) ..................................3

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) ..............................................................6

*Shisler v. Sanfer Sports Cars, Inc.,*
    146 Cal. App. 4th 1254 (2006)............................................................7

*Soelect, Inc. v. Hyundai Motor Co.,* No. 23-CV-05405-CRB,
    2024 WL 4293911 (N.D. Cal. Sept. 24, 2024) ...............................13

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ...........................................................................23

*Swarts v. Home Depot, Inc.,*
    689 F. Supp. 3d 732 (N.D. Cal. 2023). ..............................................8

*United States v. Balint*,

   201 F.3d 928 (7th Cir. 2000) ............................................................................27

*U.S. v. Forrester*,

      512 F.3d 500 (9th Cir. 2008) ..............................................................24, 26

*United States v. Jean*,

     207 F. Supp. 3d 920 (W.D. Ark. 2016),

     aff'd, 891 F.3d 712 (8th Cir. 2018) ..............................................................25

*United States v. Kozminski*,

     487 U.S. 931 (1988) ........................................................................................27

*United States v. Nosal*,

     676 F.3d 854 (9th Cir. 2012) ..........................................................................27

*United States v. Reed*,

     575 F.3d 900 (9th Cir. 2009) ..........................................................................20

*United States v. Ritchie*,

     342 F.3d 903 (9th Cir. 2003) ............................................................................6

*United States v. Saathoff*,

     708 F. Supp. 2d 1020 (S.D. Cal. 2010) ..........................................................28

*United States v. Santos,*

     553 U.S. 507 (2008*)* ......................................................................................28

*United States v. Simpson*,

     319 F.3d 81 (2d Cir. 2002) ..............................................................................27

*United States v. Thompson/Ctr. Arms Co.*,

     504 U.S. 505 (1992) ........................................................................................27

*Vita v. New England Baptist Hosp.*, No. SJC-13542,

     2024 WL 4558621 (Mass. Oct. 24, 2024) ......................................................28

*Walden v. Fiore*,

     571 U.S. 277 (2014) ........................................................................................12

*Will Co. v. Lee*,

    47 F.4th 917 (9th Cir. 2022).............................................................10

*Woods v.  U.S. Bank N.A.*,

    831 F.3d 1159 (9th Cir. 2016)............................................................6

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,

    433 F.3d 1199 (9th Cir. 2006).............................................................9

**Statutes**

Cal. Code Civ. Proc. § 425.55 ...............................................................3

Cal. Penal Code § 638.50(c)..................................................................17

Cal. Penal Code § 638.51 .............................................................passim

Cal. Penal Code § 638.52(d).................................................................16

Fed. Rule. Civ. Proc. §12(b)(2) .............................................................5

Fed. Rule. Civ. Proc. §12(b)(6) .............................................................6

**Other Sources**

High Frequency Litigants Filing Construction Disability Claims.,

3 Witkin, Cal. Proc. 6th Actions § 402 (2025) ……………………………………3

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.   INTRODUCTION

3    Through her Complaint, Plaintiff Emily Rodriguez ("Plaintiff") seeks to haul

4   into California court Defendant Accident Fund Holdings, Inc. (erroneously sued as

5   Accident Fund Holdings, Inc. dba www.CompWestInsurance.com) ("AFHI")—a

6   Michigan-incorporated and -headquartered holding company that owns insurance

7   providers—for allegedly violating an antiquated California criminal law—the

8   Invasion of Privacy Act ("CIPA")—that was never intended to regulate, and does not

9   regulate, the conduct at issue here.   Needless to say, her Complaint should be

10   dismissed, for many reasons.

11    **First and foremost**, Plaintiff's Complaint should be dismissed because this

12   Court lacks personal jurisdiction over AFHI in this case.   Plaintiff alleges that AFHI

13   installed on www.CompWestInsurance.com (the "Site") certain JavaScript that

14   collected and sent to a third party—Meta Systems, Inc.—certain information about

15   her interactions on the Site.   From this, Plaintiff concludes that the JavaScript

16   qualified as a "trap and trace device" under California law and that, because AFHI

17   did not obtain a court order prior to installing the device, AFHI violated California

18   Penal Code § 638.51 (the "Trap-and-Trace Statute").

19    Setting aside, for now, the numerous errors in Plaintiff's logic, Plaintiff's

20   Complaint lacks any allegations that would suggest, let alone establish, that AFHI

21   did anything to target her specifically or California generally.   She merely alleges

22   that AFHI operates a globally accessible website that she happened to visit while in

23   California.   Merely operating a website is not an act "purposefully directed" at

24   California and, as such, is not grounds upon which this Court can exercise personal

25   jurisdiction. For that reason alone, Plaintiff's Complaint should be dismissed.

26    **Second**, Plaintiff's Complaint should be dismissed because she has failed to

27   plausibly allege that AFHI violated the Trap-and-Trace Statute at all. The Trap-and-

28

1

1   Trace Statute was intended to regulate the surreptitious collection of "dialing,
2   routing, addressing, and signaling information" ("DRAS Information") of an
3   incoming communication by a non-participant to the communication.  That is not
4   what occurred here.

5          Plaintiff was not "unsuspecting;" she anticipated and, indeed, hoped that the
6   Site was running the JavaScript. As a self-described website "tester" who, within the
7   last year, has filed **forty-four** actions under CIPA (thirty-nine of which included a
8   claim under the Trap-and-Trace Statute), Plaintiff was not surprised to find that the
9   Site was running JavaScript.  She was looking for it.  Moreover, Meta was not a "non-
10  participant" to the communication; Plaintiff's browser sent the transmission at issue
11  in this case directly to Meta.  And the JavaScript did not collect just DRAS; Plaintiff
12  herself alleges that it captured more.

13         **Third**, Plaintiff's Complaint should be dismissed because she lacks statutory
14  standing under CIPA.  Only persons "injured by a violation" of CIPA are entitled to
15  bring suit.  Plaintiff does not allege to have suffered any injury from AFHI's alleged
16  installation of a trap and trace device, and how could she?  Plaintiff actively surfs the
17  internet in the hopes of finding a website running the very technology at issue in this
18  case.  She cannot claim injury when she finds one.

19         There are several reasons to dismiss Plaintiff's Complaint.  But, underlying
20  them all, is the same issue: Plaintiff's Complaint is simply another attempt by a high

21
22
23
24
25
26
27
28

2

frequency litigant[1] and her attorney[2] to drum up a claim where none exists.[3]  As one court put it, "[t]his is one of the many, low-dollar, boilerplate lawsuits filed by [Plaintiff and] the same law firm."  *Sanchez v. Marriott Int'l, Inc.*, No. 2:24-CV-04882-SB-AGR, 2024 WL 3598821, at *1 (C.D. Cal. July 31, 2024) (discussing complaint for damages under CIPA 638.51 filed by Scott Ferrell).  For the reasons detailed below, AFHI's motion to dismiss should be granted.

## II.   PLAINTIFF'S ALLEGATIONS

Despite her Complaint spanning 9 pages and forty-two paragraphs, the allegations relevant to Plaintiff's sole cause of action—violation of the Trap-and-Trace Statute—can be summarized in four sentences.  Plaintiff, a "resident and citizen of California" [Dkt. No. 1-1, ¶ 10], visited the Site "several times, most recently in mid-2024," [*id.* at ¶ 6].  At the time she visited the Site, AFHI had installed on the Site "code or 'scripts'" (the "Meta Tracker") that sent "user details to Meta," including "device and browser information, geographic information, referral

---

[1] Although specific to construction-related accessibility violation cases, California recognizes that there is a distinction between an injured person and a serial litigant. Indeed, under California Code of Civil Procedure section 425.55 a plaintiff is a "high frequency litigant" after they have "filed 10 or more complaints alleging a [] violation within the 12-month period immediately preceding the filing of the current complaint" alleging the same violation. Cal. Code Civ. Proc. § 425.55. "[T]hese lawsuits are frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the [] violation." High Frequency Litigants Filing Construction Disability Claims., 3 Witkin, Cal. Proc. 6th Actions § 402 (2025).  Here, in addition to filing this Complaint against Defendant on March 24, 2025, Plaintiff has filed at least 42 more against other companies for alleged CIPA violations. Declaration of Matthew Pearson, Esq. ("Pearson Decl.") ¶ 3, **Ex. 1**.

[2] "[T]he Court acknowledges the central dynamic in this litigation, underscoring all of the deficiencies in the Complaint: Plaintiff, and his counsel, Scott Ferrell, are serial litigants bringing numerous 'cookie cutter' lawsuits under CIPA against various businesses that operate websites. Mr. Ferrell appears to have filed over 60 (and likely more) of these virtually identical lawsuits in the last year, with more seemingly filed every week." *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 963–64 (C.D. Cal. 2023) (granting out-of-state website's motion to dismiss for lack of personal and subject matter jurisdiction).

[3] Plaintiff's reliance on *Langer v. Kiser* in paragraph 19 of her Complaint is improper; its facts involve claimed ADA violations and are, thus, distinguishable from the claims in this action. 57 F.4th 1085, 1095 (9th Cir. 2023) (reversing trial court's judgment that parking lot user with paraplegia who brought action against owner of mixed-use real property arising from lack of van-accessible parking lacked standing under the ADA and California Unruh Civil Rights Act because they were a serial litigant).

3

tracking, and url tracking." [*Id.* at ¶ 14.] Indeed, according to Plaintiff, Meta receives "as much data as it can about an otherwise anonymous visitor to the Website" [*id.* at ¶ 13], such as "website visitor's phone numbers and email addresses" [*id.* at ¶ 17.]

Based on the above, Plaintiff asserts a single cause of action against AFHI for violation of the Trap-and-Trace Statute and seeks, on behalf of herself and the entire putative class, statutory damages in the amount of $5,000 per violation.

## III.  THE FACTS

### A.  AFHI

AFHI, which operates under the name AF Group, is a Michigan corporation with its principal place of business in Lansing, Michigan. [Declaration of Mickey Hadick ("Hadick Decl.), ¶ 2.] AFHI is a holding company whose affiliated insurance brands are premier providers of innovative, specialty insurance solutions. [*Id.* at ¶ 3.] One of those brands is CompWest Insurance. [*Id.* at ¶ 4.]

CompWest insurance has its own website, www.CompWestInsurance.com. [*Id.* at ¶ 5.] The Site is maintained by employees in Michigan and is hosted by servers housed in Michigan. [*Id.* at ¶ 6.] Anyone with internet access can visit the Site. [*Id.* at ¶ 7.] The Site does not distinguish between users from different states. [*Id.* at ¶ 8.] A user who visits the Site from California would experience the exact same thing as a user who visits the Site from Oregon. [*Id.* at ¶ 9.] AFHI does not determine the location of a Site visitor prior to his or her accessing the Site. [*Id.* at ¶ 10.]

AFHI employs no California residents and has no physical presence in California. [Declaration of Lupe Rangel ("Rangel Decl."), ¶¶ 8-10.] AFHI is not registered to do business in California. [*Id.* at ¶ 11.]

### B.  Plaintiff

Plaintiff identifies herself as a "consumer privacy advocate who works as a 'tester' to ensure that companies abide by the privacy obligations imposed by California law." [Dkt. No. 1-1, ¶ 19.] Plaintiff has, apparently, "tested" a lot of

websites, having filed at least forty-four separate complaints under CIPA since March 22, 2024.  A spreadsheet showing that names of, parties to, claims asserted in, case numbers of, and file dates of the forty-four cases is attached to the Declaration of Matthew D. Pearson ("Pearson Decl.") as **Exhibit 1**.

Of those forty-four filed complaints, thirty-nine include the exact claim asserted here: violation of the Trap-and-Trace Statute. [Pearson Decl., **Ex. 1**.] Further, the allegations in those complaints are similar, if not identical, to the allegations in the Complaint filed here. [*Id.* at **Ex. 1**.]

Although Plaintiff claims to have had a "genuine[] interest[] in the goods, services, and information available on" the Site, AFHI has been unable to locate in its possession any records of Plaintiff, whether as a customer, potential customer, or even just a Site visitor. [Rangel Decl., ¶¶ 2-7.]

## IV.   LEGAL STANDARDS

### A.   Rule 12(b)(2) Standard

Under Rule 12(b)(2), "[w]hen a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig. (Western States)*, 715 F.3d 716, 741 (9th Cir. 2013).  "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  However, "[b]ecause 'California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S Constitution,'" the Court's "inquiry centers on whether exercising jurisdiction comports with [constitutional] due process." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted).

"Federal due process permits a court to exercise personal jurisdiction over a nonresident defendant if that defendant has at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional

notions of fair play and substantial justice.'" *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)) (quotation marks omitted). "Those contacts may be so continuous and systematic as to render a defendant essentially at home in the forum state and amenable to any suit there. Alternatively, a court may exercise jurisdiction over 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id*. (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The Supreme Court has referred to these different bases for personal jurisdiction as 'general' and 'specific' jurisdiction." *Id*. at 1106-07 (citing *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017)). "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).

## B. Rule 12(b)(6) Standard

A court must dismiss a complaint for failure to state a claim if the complaint does not allege "sufficient facts" under a "cognizable legal theory." *See Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). Sufficient factual matter only exists if the facts alleged state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When ruling on a motion to dismiss, courts presume the truth of all well-pleaded facts. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013). However, no presumption of truth attaches to "threadbare recitals." *Iqbal*, 556 U.S. at 678. A court can consider certain materials, such as documents incorporated by referenced into a complaint, if "the

1  document forms the basis of the plaintiff's claim[]" without converting the motion to

2  dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903,

3  908 (9th Cir. 2003).

4  **V.    ARGUMENT**

5      **A.    The Court Lacks Personal Jurisdiction over AFHI.**

6      Personal jurisdiction over an out-of-state defendant, like AFHI, can be

7  established one of two ways. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir.

8  2025). The plaintiff can allege sufficient facts to prove that the defendant is

9  "essentially at home" in the forum state, thereby subjecting the defendant to personal

10  jurisdiction in the forum regardless of the claim (i.e., general personal jurisdiction).

11  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Or the

12  plaintiff can allege sufficient facts to prove that the defendant purposefully directed

13  its conduct toward the forum state, thereby subjecting the defendant to personal

14  jurisdiction in the forum for claims arising out of that conduct (i.e., specific personal

15  jurisdiction). *Briskin*, 135 F.4th at 751.  Here, Plaintiff has not established and cannot

16  establish either.

17          **1.    Defendant is not subject to general jurisdiction in California.**

18      Corporations are subject to general jurisdiction (1) in the state in which they

19  are incorporated, *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014), (2) in the state

20  in which they are headquartered, *id.*, and (3) in rare instances, in the state in which

21  "their contacts with a forum are so substantial that the defendant can be deemed to

22  be 'present' in that forum for all purposes," *Hendricks v. New Video Channel Am.,*

23  *LLC*, No. 2:14-CV-02989-RSWL-S, 2015 WL 3616983, at *4 (C.D. Cal. June 8,

24  2015) (internal quotations omitted).

25      Here, AFHI is incorporated and headquartered in Michigan, [Hadick Decl., ¶

26  2], and it does not have "substantial contacts" with California such that it can be

27  "deemed to be present" in California "for all purposes."  AFHI has no physical

28

presence in California, employs no individuals in California, and is not registered to do business in California. [Rangel Decl., ¶¶ 8-11.] Therefore, AFHI is not, and cannot be, subject to general personal jurisdiction in California. *Shisler v. Sanfer Sports Cars, Inc.*, 146 Cal. App. 4th 1254, 1259 (2006) (refusing to find general jurisdiction over an out-of-state corporation where it "ha[d] no physical presence in California" and was "not registered to do business [in California]").

### 2. Defendant is not subject to Specific Jurisdiction in California.

In California, corporations are subject to specific general jurisdiction if: (1) the corporation "purposefully direct[s its] activities or consummate[s] some transaction with the forum or resident thereof" ("Purposeful Direction") or "perform[s] some act by which [it] purposefully avails [itself] of the privilege of conducting activities in the forum" ("Purposeful Availment"); (2) the "claim…arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction…comport[s] with fair play and substantial justice, i.e., i[s]…reasonable." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 739 (N.D. Cal. 2023).

The plaintiff bears the burden of establishing the first two prongs. *Id.* If he meets his burden, the burden then shifts to the defendant to prove that the exercise of jurisdiction over it is unreasonable. *Id.*

Plaintiff here has not and cannot establish the second prong of personal jurisdiction. But even if he could and had, the Court would still need to dismiss the case because exercising personal jurisdiction over AFHI in this case in unreasonable. Plaintiff's Complaint should be dismissed.

### A. The Complaint does not allege that Defendant purposefully directed its activities to California.

The first prong of this Court's specific personal jurisdiction analysis requires application of either the "Purposeful Direction" test or the "Purposeful Availment" test. Where, as here, the plaintiff's claim sounds in tort, courts apply the "Purposeful

Direction" test. *Swarts,* 689 F. Supp. 3d at 740–41 ("Because Plaintiff's CIPA…claims sound in tort,…the Court applies a purposeful direction analysis.")

The Purposeful Direction Test, commonly referred to as the *Calder* Effects Test, also has three elements: (1) did the defendant commit an intentional act; (2) was that intentional act "expressly aimed" at the forum; and (3) did the intentional act "caus[e] harm that the defendant kn[ew was] likely to be suffered in the forum state"? *AMA Multimedia, LLC v. Wana*t, 970 F.3d 1201, 1209 (9th Cir. 2020), *overruled on different grounds by Briskin,* 135 F.4th 739. In cases like this, the analysis generally turns on the second prong: express aiming.

"Express aiming" can be demonstrated by showing that the defendant either targeted the plaintiff specifically or targeted the forum generally, knowing the effects of its conduct would be felt in the forum. *See, e.g., Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir. 1998), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199 (9th Cir. 2006) (finding the "purposeful [direction] requirement…satisfied" where the defendant targeted a California plaintiff by "engag[ing] in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision…in California where Panavision has its principal place of business"); *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F.3d 1082, 1088 (9th Cir. 2000), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199 (9th Cir. 2006) ("The presence of *individualized targeting* is what separates these cases from others in which we have found the effects test unsatisfied." (emphasis added)); *see also Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1020 (9th Cir. 2002) (finding purposeful direction where the defendant engaged in "an insistent marketing campaign directed toward" the forum state).

Here, Plaintiff does not allege that AFHI targeted her specifically, nor could she. As Plaintiff admits, she voluntarily chose to visit the Site from California. [Dkt.

9

No. 1-1, ¶ 6.] She does not allege that AFHI invited her to the Site or did anything to entice her to visit it. [*See generally id.*] And AFHI has no record—whatsoever—of any relationship with Plaintiff. [Rangel Decl., ¶¶ 5-7.] Therefore, in relation to AFHI, Plaintiff is no different than the hundreds of millions, if not billions, of people across the world who have access to the internet.

Given that AFHI did not target Plaintiff specifically, Plaintiff must show that AFHI aimed its conduct at California as a whole. In the internet context, courts have found that "maintain[ing] an interactive website that reaches potential customers in California does not," in and of itself, show that the defendant expressly aimed its conduct at California. *See, e.g., Elliot v. Cessna Aircraft Co., No. 820CV00378SBADSX, 2021 WL 2153820, at \*3 (C.D. Cal. May 25, 2021).* "Something more" is required. *Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156 (9th Cir. 2006).*

What that "something more" is largely depends on the facts of the case. But the Ninth Circuit has found specific personal jurisdiction valid where: (1) the subject matter of the website was "forum-specific," *Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1230 (9th Cir. 2011)*; (2) the defendant actively tried to drive forum residents to the website, *id.*; or (3) the website was configured in a way to make access in the forum easier, *Will Co. v. Lee, 47 F.4th 917, 924 (9th Cir. 2022), overruled on other grounds by Briskin, 135 F.4th 739* (noting that the defendant located its website server to increase the accessibility of its site in the forum). Plaintiff alleges that AFHI engaged in none of those things here. She simply alleges that AFHI operates a nationally accessible website—a claim that has been repeatedly rejected as grounds for exercising personal jurisdiction. *See, e.g. Cody v. E. Gluck Corp., No. 23-CV-02286-HSG, 2024 WL 4314187, at \*1 (N.D. Cal. Sept. 26, 2024)* (noting that plaintiff's complaint did not establish purposeful direction where out-of-state defendant operated a nationally available website and plaintiff did not allege

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS COMPLAINT

1 that website "specifically targeted California consumers over any other market").

2     Further, the Ninth Circuit has definitively stated that personal jurisdiction
3 cannot rest exclusively on the fact that the defendant's conduct had "possible
4 foreseeable effects" in California. *Pebble Beach*, 453 F.3d at 1158.  Indeed, as the
5 Ninth Circuit noted, whether and to what extent the defendant's acts had an effect on
6 people within California goes to the "foreseeable effect prong of the 'effects test' and
7 is not an independent act that can be interpreted as being expressly aimed at
8 California." *Id.*

9     Just last month, in *Briskin v. Shopify, Inc*., 135 F.4th 739 (9th Cir. 2025), the
10 Ninth Circuit, sitting *en banc*, analyzed personal jurisdiction over an out-of-state
11 defendant in a CIPA case, finding that the defendant had, in fact, purposefully
12 directed its activities toward California.  Despite the court finding personal
13 jurisdiction in *Briskin*, the facts that led the court to reach that conclusion demonstrate
14 why exercising personal jurisdiction over AFHI is improper here.

15     In *Briskin*, the Ninth Circulated isolated and focused on two facts.  First, the
16 Ninth Circuit noted that "Shopify [had] concede[d] that its geolocation technology
17 allowed it to know that Briskin's device was located in California when it installed
18 cookies on Briskin's device." *Id.* at 746.  Second, the Ninth Circuit focused on
19 Shopify's alleged installation of a piece of software on Briskin's device while he was
20 in California, likening Shopify to "a third party who physically entered a
21 Californian's home by deceptive means to take personal information from the
22 Californian's files for its own commercial gain." *Id.* at 756. Shopify's knowledge of
23 the plaintiff's location, coupled with Shopify's alleged intrusion into Plaintiff's
24 device, compelled the Ninth Circuit to conclude that Shopify had, in fact, aimed its
25 activities at California. *Id.* at 759 (finding specific personal jurisdiction based on
26 Shopify's "deliberately reach[ing] out beyond its home state…[and] knowingly
27 installing tracking software onto unsuspecting Californians' phones").

28

That is not the case here.  Plaintiff does not allege in the Complaint that AFHI knew she was a California resident before she visited the Site. [*See generally* Dkt. No. 1-1.] In fact, AFHI has expressly declared that it does not know any website visitor's location before he or she visits the Site. [Hadick Decl., ¶ 10.] On top of that, Plaintiff does not allege that Defendant installed anything on ***her device***.  In fact, she admits the opposite.  She alleges multiple times that AFHI "installed ***on its Website*** a spyware pixel created by Meta in order to identify website visitors." [Dkt. No. 1-1, ¶ 12 (emphasis added); *see also id.* at ¶¶ 22 ("The Meta pixel allows Defendant to link to a visitors Facebook account by placing a small piece of code ***on the website*** that tracks visitor activity and reports it to Meta." (emphasis added)), 39 ("Defendant uses a trap and trace process ***on its Website*** by deploying the Meta Spyware ***on its Website***[.]" (emphasis added)).]  Therefore, unlike Shopify in *Briskin*, not only did AFHI not know that Plaintiff was located in California when she visited the Site, but it also did not "deliberately reach out beyond its home state."  Any allegedly unlawful conduct that occurred occurred ***in Michigan***, where the Site is maintained and housed.  [Hadick Decl., ¶ 6.]

Multiple federal courts have rejected personal jurisdiction over out-of-state defendants for this reason.  *See, e.g.,* [*Conohan v. Gen Digital Inc,* No. 2:24-CV-06894-MCS-PVC, 2025 WL 864655, at \*3 (C.D. Cal. Feb. 19, 2025)](dismissing for lack of personal jurisdiction trap and trace claim against Arizona defendant); [*Rounds v. Case-Mate Inc.,* No. 2:24-cv-08531-WLH-RAO, 2025 U.S. Dist. LEXIS 48225, at \*14 (C.D. Cal. Mar. 14, 2025)](same against Georgia defendant).  So, too, have California state courts. *See, e.g.,* [*Licea v. Blue Apron, LLC*, 2025 Cal. Super. LEXIS 744, \*8](dismissing for lack of personal jurisdiction trap and trace claim against a Delaware defendant).

The only "connection" to California that Plaintiff identifies in the Complaint is her location at the time she visited the Site. But Plaintiff's location is not dispositive

of AFHI's contacts with California—Plaintiff could just as easily been in Arizona, Florida, Texas, or even outside of the United States when she visited the Site. *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (explaining that the Nevada plaintiffs' injury in Nevada did not create personal jurisdiction because the plaintiffs "would have experienced th[e] same lack of access" to seized funds "in California, Mississippi, or wherever else they might have traveled and found themselves wanting more money than they had"); [Hadick Decl., ¶ 7 (stating that anyone with internet access can visit the Site).] Thus, to the extent Plaintiff's location at the time she visited the Site could constitute an AFHI contact with California (it cannot), that contact was "random, isolated, or fortuitous." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) 359. And "random, isolated, or fortuitous" contacts with a forum do not form the basis for specific personal jurisdiction. *See, e.g., Soelect, Inc. v. Hyundai Motor Co*., No. 23-CV-05405-CRB, 2024 WL 4293911, at *5 (N.D. Cal. Sept. 24, 2024)* ("[A] defendant does not purposefully direct its activities at the forum state when the unilateral activity of the plaintiff or a third party is all that connects the defendant to the forum state.").

Plaintiff has failed to allege that AFHI expressly aimed its conduct either at her personally or at California generally. Therefore, this Court lacks personal jurisdiction over AFHI and must dismiss the Complaint.

        **B.**    <u>Exercising Jurisdiction Over Defendant Would Be Unreasonable.</u>

Even if the Court were to find that AFHI purposefully directed its activities at California, exercising jurisdiction would still be unreasonable. The Court considers seven factors when assessing reasonableness: "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution

of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Panavision Intern., L.P.*, 141 F.3d 1316, 1323 (9th Cir. 1998) (citation omitted).

Nearly every one of these factors militates against finding personal jurisdiction here. AFHI did not "purposefully interject" itself into California at all; it merely operated a globally accessible website. [Hadick Decl., ¶¶ 2-10.] *See also Dole Food Co. v. Watts,* 303 F.3d 1104, 1114 (9th Cir. 2002) (likening "purposeful[] interject[ion]" to "express aiming" and focusing on the degree of interjection). With no physical presence in California [Rangel Decl., ¶¶ 8-10), the burden on AFHI in defending this lawsuit in California would be substantial. Michigan clearly has an interest in protecting its corporate citizens from serial litigants in foreign states, [Pearson Decl., **Ex. 1** (listing 44 CIPA cases filed by Plaintiff)] whereas with Plaintiff being a "tester" who actively seeks out alleged CIPA violations, California has little, if any, interest in protecting her from the conduct she tries to find, [Dkt. No. 1-1, ¶ 19]. *See also Michael Grecco Prods., Inc. v. Wenn Rts. Int'l Ltd.,* No. 2:24-CV-06449-RGK-BFM, 2025 WL 575356, at *3 (C.D. Cal. Jan. 6, 2025) (noting that "states have strong interests in protecting [their] corporations from [actions] by foreign entities"). And Michigan provides an alternative forum, which, if Plaintiff is as motivated in her efforts to enforce CIPA as she claims to be, should not be unduly burdensome on her. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1133–34 (9th Cir. 2003) ("The plaintiff bears the burden of proving the unavailability of an alternative forum[.]").

Exercising personal jurisdiction over AFHI in this case would be unreasonable. The Court should grant this motion.

### B.    Plaintiff Has Failed to State an Actionable Claim Against AFHI.

CIPA makes it unlawful for any person to "install or use…a trap and trace device without first obtaining a court order[.]" Cal. Penal Code § 638.51(a). It further

provides that "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation[.]" *Id.* at § 637.2(a). Read together, these two provisions require Plaintiff here to allege both that AFHI unlawfully installed or used a trap and trace device and that its installation or use injured her. Plaintiff has alleged neither. Her Complaint should be dismissed.

### 1.    CIPA Was Never Intended to Apply to Situations Like This.

Historically, trap and trace devices were used by law enforcement personnel to identify the telephone numbers used to call a person of interest. *See In re United States*, 441 F. Supp. 2d 816, 818 (S.D. Tex. 2006) ("[T]rap and trace devices… capture phone numbers of incoming calls.")*; In re Application for Pen Reg. & Trap/Trace Device with Cell Site Location Auth.* 396 F. Supp. 2d 747, 752 (S.D. Tex. 2005) ("A trap and trace device captures the numbers of calls made to the target phone.").) But, following a 2023 decision by the United States District Court for the Southern District of California—*Greenley v. Kochava*, No. 22-cv-01327-BAS-AHG, 2023 WL 4833466 (S.D. Cal. July 27, 2023)—plaintiffs' counsel have sought to expand the reach of CIPA § 638.51 beyond investigatory uses by law enforcement and into nearly ubiquitous internet technologies, like the Meta Tracker here.

Given CIPA § 638.51's intended purpose and the nascency of these newly concocted claims, there is little, if any, binding case law—whether from California or federal courts—discussing what does or does not qualify as a trap and trace device. Indeed, in most, if not all, instances, a court is merely being asked to approve the use of a trap and trace device, not determine whether a trap and trace device is being used in the first place.

That said, at least one case—decided under the substantively identical federal Pen/Trap statute—has analyzed a process like the one at issue here and has found that it was not a trap and trace device. In *In re the Application of the U.S. for an Ord. Authorizing the Installation & Use of a Pen Reg. & Trap & Trace Device*, 890 F.

Supp. 2d 747 (S.D. Tex. 2012), the court considered whether a device, known as a "stingray," could be considered either a pen register or a trap and trace device. *Id.* at 748. There, the "stingray" was capable of "detect[ing] radio signals emitted from wireless telephone numbers in the vicinity of the [subject of the investigation]" and "identify[ing] the telephones (e.g., by transmitting the telephone's serial number and phone number to the network for authentication)," in order to ultimately identify "the telephone number corresponding to the [Subject's] Telephone." *Id.* at 748.

In deciding whether the "stingray" was, in fact, a "trap and trace device," the court focused on the plain language of the Pen/Trap statute, including what was required for the court to issue an order authorizing its use, and found that it was not. Looking to Congress's "mandate" that "the telephone number or other such identifier" associated with the target of the trap and trace device be included in the order, the court questioned how it could possibly include such an identifier if the alleged trap and trace device was being used to identify the target telephone number in the first place. *Id.* at 751. That is, unless a trap and trace device is attached or assigned to a specific device (i.e., telephone number, email account, IP address, etc.), as opposed to all devices in the general vicinity, it is not a trap and trace device.

That is the exact situation here. Plaintiff does not allege that AFHI attached or assigned to her computer a trap and trace device. In fact, she does not even allege that that trap and trace device was installed on anything associated with her. Instead, she claims that AFHI "has installed on its website" the Meta Tracker. [Dkt. No. 1-1, ¶ 12.] Plaintiff cannot legitimately claim that AFHI violated her rights under CIPA by installing a trap and trace device on itself. *Aviles v. Liveramp*, Inc., 2025 Cal. Super. LEXIS 776, *6 (sustaining demurrer to trap and trace claim because "Plaintiff at most alleges that Defendant's Website collects the IP addresses and other information of visitors incoming to the website — the equivalent of if Defendant had used a trap and trace device on its *own* website, rather than on Plaintiff's device"

1   (emphasis in original)).

2       A plain reading of CIPA supports this conclusion, as well. First, the statutory

3   section setting forth the information necessary to obtain an order authorizing the

4   installation/use of a trap and trace device—Cal. Penal Code § 638.52(d)—makes

5   clear that a trap and trace device does not indiscriminately collect information;

6   instead, it collects from a specific source certain incoming information. For example,

7   an order authorizing the use of a trap and trace device requires the applicant to

8   provide "(1) [t]he identity, if known, of the person to whom is leased or in whose

9   name is listed the telephone line to which the pen register or trap and trace device is

10   to be attached" and "(2) [t]he identity, if known, of the person who is the subject of

11   the criminal investigation." Applied to AFHI and the Meta Tracker, provision of that

12   information would be impossible because AFHI has no way of knowing who is going

13   to visit the Site in the future.

14       Similarly, an order authorizing the use of a trap and trace device requires "(3)

15   [t]he number and, if known, physical location of the telephone line to which the pen

16   register or trap and trace device is to be attached and, in the case of a trap and trace

17   device, the geographic limits of the trap and trace order." Again, in this case, AFHI

18   would have no way of knowing the number or IP address of persons visiting the Site

19   because it has no way of knowing who is going to visit the Site on any given day.

20       By suing AFHI for unlawfully using a trap and trace device, Plaintiff has tried

21   to jam a square peg into a round hole.  But no matter hard she pushes, it does not fit.

22   Plaintiff's complaint should be dismissed.

23          **2.**    **The Meta Tracker Is Not a Trap and Trace Device.**

24       Even focusing exclusively on the language of CIPA, it is clear that Plaintiff

25   has not alleged a violation.  CIPA defines a "trap and trace device" as "a device or

26   process that captures the incoming electronic or other impulses that identify the

27   originating number or other dialing, routing, addressing, or signaling information

28

reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50 (c). Broken down, the definition has four elements: (1) a device or process that (2) captures (3) the incoming electronic or other impulses that identify the originating number or other DRAS Information reasonably likely to identify the source of a wire or electronic communication but (4) does not collect the contents of a communication.  Plaintiff here has failed to allege the necessary facts to establish that the Meta Tracker is a trap and trace device because the Meta Tracker does not "capture" any information and because the Meta Tracker receives more than just DRAS Information.

### A.    The Meta Tracker Does Not "Capture" Information.

Under CIPA, a trap and trace device must, among other things, "***capture***[] the incoming electronic or other impulses that identify the originating number. . . ." Cal. Penal Code § 638.50(c) (emphasis added). "Capture" is the key word. To "capture" means "to take and hold (someone or something) as a captive or prisoner; to gain control of especially by force; to gain or win especially through effort."[4] [*See* Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/capture (last visited: June 9, 2025).] Regardless of which of the three definitions is used, one thing is clear: to "capture" means to obtain something not otherwise freely provided. That is not the case here. Neither AFHI nor Meta "captured" Plaintiff's "device and browser information, geographic information, referral tracking, and URL tracking." That information was freely and voluntarily provided by Plaintiff.

For example, with regard to AFHI, had Plaintiff not provided her IP address, she never would have been able to visit the Site in the first place. (*See, e.g., Capitol*

---

[4] See *City of Los Angeles v. Barr*, 941 F.3d 931, 940 (9th Cir. 2019) ("Where the statute does not define the relevant terms, we give them their ordinary, contemporary, common meaning, and may consult dictionary definitions." (internal quotations omitted); *see also Dep't of Fin. v. Comm'n on State Mandates*, 85 Cal. App. 5th 535, 567 (2022), review denied (Mar. 1, 2023) ("We may look to dictionary definitions to determine the usual and ordinary meaning of a statutory term.").

*Recs. Inc. v. Thomas-Rasset* No. CIV 06-1497(MJD/RLE), 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) ("[T]he Pen Register Act cannot be intended to prevent individuals. . .from recording the IP information sent to them. If it did apply in those cases, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet.").) And, clearly, Plaintiff conveyed to AFHI the URLs of the webpages she visited on the Site, given that it was AFHI's website she was visiting.

The same is true for Meta, albeit for different reasons. As numerous courts have explained, trackers, like Meta's, do not intercept a user's transmission to the website operator. Instead, they instruct a user's browser to send an entirely ***separate transmission*** to a third party. For example:

1. "When a user visits a website, the user's browser sends a 'GET' request to the website to retrieve it." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 919 (N.D. Cal. 2023).

2. "The [website] server responds by sending HTML code to the user's browser." *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 945 (N.D. Cal. 2023), *motion to certify appeal denied*, No. 23CV02500EMCEMC, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024).

3. If the HTML code sent back to the user['s browser] includes a tracker's JavaScript, that JavaScript "directs the user's browser to send a ***separate communication*** to [the third party]." *Brown*, 685 F. Supp. 3d at 919 (emphasis added).

There are, therefore, two lines of transmissions in this case: one between Plaintiff and AFHI and one between Plaintiff and Meta. [Dkt. No. 1-1, ¶ 15 ("visual depiction" of the process showing information being sent from the user's browser directly to Meta).]

Because Plaintiff is actively sending the information in question to Meta, there

is no "capture," just receipt, and, under CIPA's definition, receipt of information does not constitute a trap and trace device. If it did, nearly every website, including the United States District Court for the Northern District of California's, would be liable for operating a trap and trace device.

| Northern District's Website | Figure 7 of the Complaint |
|---|---|
|  |  |

[*Compare* Transmission to Google Analytics from Northern District of California's Website, available at www.cand.uscourts.gov (last visited: May 9, 2025) *with* Dkt. No. 1-1, ¶ 20.]

    B.    <u>The Meta Tracker Cannot Be a Trap and Trace Device Because It Receives More Than Just DRAS Information.</u>

Although CIPA does not affirmatively define DRAS Information, CIPA does state what it ***cannot be***—namely, "the contents of a communication." Cal. Penal Code § 638.50(b). CIPA likewise does not define "contents of a communication," but its federal counterpart—the Wiretap Act—does. The Wiretap Act, upon which California courts frequently rely when interpreting CIPA[5], states that "'contents',

---

[5] *See, e.g., Brodsky v. Apple Inc.,* 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." (internal quotations omitted).)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS COMPLAINT

when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). Put simply, content is "the words spoken in a phone call," *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012), that are "transmitted to or received by the parties to [the]…call," *United States v. Reed*, 575 F.3d 900, 916 (9th Cir. 2009).

Therefore, if a "device or process" "captures" "any information concerning the substance, purport, or meaning of [a] communication," ***it cannot be a trap and trace device.*** *See In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap On (XXX) Internet Serv. Acct./User Name, (xxxxxxxx@xxx.com)*, 396 F. Supp. 2d 45, 48 (D. Mass. 2005) ("[G]enerally speaking, routine…trap and trace devices installed on telephones record only the numbers…dialed in and not the contents of any communication.").

Even assuming that Plaintiff had alleged that the Meta Tracker "captures" anything (she has not), Plaintiff has still failed to plausibly allege that the Meta Tracker is a trap and trace device because, as Plaintiff admits, her browser transmitted far more information to Meta than just DRAS Information.

Public IP addresses have been held to be DRAS Information. *See, e.g., In re Zynga Priv. Litig.,* 750 F.3d 1098, 1108 (9th Cir. 2014) ("IP addresses constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers." (internal quotations omitted).) And Plaintiff does allege that the Meta Tracker received her public IP address. [Dkt. No. 1-1, ¶ 2.]  But just because a device or process receives DRAS Information does not mean that the "device or process" *is* a trap and trace device.  If it did, every device connected to the internet would be a trap and trace device.  *Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 1408896, at *3 (N.D. Cal. May 13, 2025) ("When internet users visit a website, their devices automatically send their IP

21

addresses to the website's server as part of the communication process."). Plaintiff must also plead that the "device or process"—here, the Meta Tracker— does **not** receive "any information concerning the substance, purport, or meaning" of the communication to which the DRAS Information relates. *Price v. Headspace, Inc.,* No. 24STCV19921, 2025 WL 1237977, at *3 (Cal.Super. Apr. 01, 2025) ("[T]he crucial distinction from other devices is that…'trap and trace device[s]'…are designed to capture *information about the communication*, but *not* the content of the communication itself." (emphasis added)).

In fact, on April 1, 2025, the Superior Court of California, County of Los Angeles dismissed a CIPA § 638.51(a) claim because the plaintiff alleged that the tracker captured not only the user's IP address, but also "as much data as it can about an otherwise anonymous visitor to the Website." *Price*, 2025 WL 1237977, at *3. And, according to the Court, "if the device is capturing the content of the communications, it is definitionally not a trap and trace device." *Id.*

The same is true here. Plaintiff does not allege that the Meta Track received **only** IP addresses; she alleges that the Meta Tracker received IP addresses; "device and browser information, geographic information, referral tracking, and url tract. No. 1-1, ¶ 14]; potentially "website visitor's phone numbers and email addresses" [*id.* at ¶ 17]; and, indeed, "as much data as it can about an otherwise anonymous visitor to the Website" [*id.* at ¶ 13]. That information is not DRAS Information. *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *2 (Cal.Super. Jan. 28, 2025). (noting that the "dialing, routing, addressing, or signaling information" is "the IP address and related information of a website accessed by a computer - but not the computer's own IP address or identifying information"). Therefore, the Meta Tracker is, definitionally, not a trap and trace device.

Plaintiff has failed to allege that the Trackers are pen registers. Therefore, her Complaint must be dismissed.

### 3.    Plaintiff Was Not "Injured by a Violation" of CIPA.

Even if Plaintiff had plausibly alleged that AFHI installed a trap and trace device in violation of CIPA (she has not), Plaintiff's claim would still fail because Plaintiff lacks statutory standing to bring suit.[6]

CIPA provides a private right of action to "[a]ny person who has been injured by a violation of this chapter." Cal. Penal Code § 637.2 (a).  Courts have interpreted similar statutory-standing provisions to require something beyond a mere violation of the law.  For example, when interpreting the statutory-standing provision under California Civil Code § 1798.84, which states that "[a]ny customer injured by a violation of this title may institute a civil action to recover damages," *id.* at § 1798.84(c), the United States District Court for the Central District of California found that the private right of action "does not allow a cause of action based solely upon a failure to comply with the statute" but, instead, "expressly requires an injury resulting from a violation." *Boorstein v. Men's J. LLC*, No. CV 12-771 DSF EX, 2012 WL 2152815, at *3 (C.D. Cal. June 14, 2012).  The same is true under CIPA. *See Cody*, 2024 WL 4314187, at *2 ("The Court further cautions Plaintiff's counsel that they will need to do more than simply assert that Defendant violated CIPA to allege a concrete injury for purposes of Article III.").

That does not mean, however, that the injury required under CIPA must come in the form of "actual damages."  In fact, CIPA expressly states that, to be injured under the statute, the plaintiff need not have "suffered, or be[en] threatened with,

---

[6]  To be clear, AFHI is not arguing, at this point in the case, that Plaintiff lacks Article III standing. "Article III standing and statutory standing are distinct legal analyses." *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1005 (S.D. Cal. 2021). Unlike Article III standing, statutory standing is not jurisdictional. *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 n. 4 (9th Cir. 2011). Instead, statutory standing requires consideration of the merits of the plaintiff's claim and asks: has the plaintiff "been granted a right to sue by the specific statute under which he or she brings suit"? *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004) (internal quotations omitted). Any plaintiff who fails to establish statutory standing has failed to state a cause of action upon which relief can be granted. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of statutory standing requires dismissal for failure to state a claim").

actual damages." Cal. Penal Code § 637.2(c). That is, injury under CIPA does not require "special damages for proven pecuniary loss." *See F.A.A. v. Cooper,* 566 U.S. 284, 298, 304 (2012) (interpreting "actual damages" in the privacy context to mean "special damages for proven pecuniary loss").

Read together, these two provisions of CIPA mean that while a bare violation of CIPA will not give rise to statutory standing, a plaintiff need not have suffered pecuniary loss before bringing suit under CIPA, either. Put simply, statutory standing under CIPA is similar, if not identical, to standing under Article III. *See Spokeo, Inc. v. Robins,* 578 U.S. 330, 341 (2016), as revised (May 24, 2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."); *see also Brace v. Lifeguard, Inc*., No. CIV. 92-20509 SW, 1995 WL 32868, at *3 (N.D. Cal. Jan. 25, 1995) ("An injury-in-fact need not be monetary, but it must be distinct and palpable, and of a type redressible by the court.").

Plaintiff here identifies no injury separate and apart from AFHI's alleged violation of CIPA. [*See generally* Dkt. No. 1-1.] Based on that fact alone, the Court should dismiss the Complaint. But even if Plaintiff were to claim that AFHI's installation of the Meta Tracker violated her privacy, she would be wrong, for multiple reasons.

A.    Plaintiff Had No Expectation of Privacy in the Information at Issue.

Whether and to what extent a plaintiff has been injured by an alleged invasion of privacy "depend[s] on the plaintiff's reasonable expectations."    *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787 at *1 (CD Cal. April 4, 2025, R. Gary Klausner). That is, to adequately allege an injury arising from an invasion of privacy, the plaintiff must allege: (1) a legally protected privacy interest (2) in which she has a reasonable expectation of privacy, and (3) serious invasion of privacy. *Hill v. Nat'l Collegiate Athletic Assn*., 7 Cal. 4th 1, 37 (1994). Plaintiff here alleges none of these

three elements.

Plaintiff does not assert a legally protected privacy interest. She does not allege that she purchased insurance from AFHI. She does not allege that she entered her name, phone number, email address, or any other personally identifiable information on the Site. She doesn't even allege that AFHI installed a trap and trace on her device. Instead, she asserts that the Meta Tracker was installed *on Defendant's website*— which Plaintiff voluntarily entered. [*See* Dkt. No. 1-1, ¶¶ 12-15. At most, Plaintiff has alleged that the Meta Tracker recorded her IP address.

California state courts have repeatedly held that individuals do not have a legally protected interest their IP address. *See, e.g. Sanchez v. Cars.Com Inc.*, 2025 Cal. Super. LEXIS 710, *11 ("Plaintiff has no reasonable expectation in the privacy of her computer's IP address since she chose to access the Website."). Federal courts similarly agree an IP address is not protected by CIPA and its disclosure does not give rise to a viable claim under CIPA. *See, e.g., U.S. v. Forrester*, 512 F.3d 500, 503 (9th Cir. 2008) (no expectation of privacy in IP addresses when visiting websites because plaintiffs "should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information."); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("no legally protected privacy interest in IP addresses."); *Esparza v. Kohls*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (IP address, personal details, and browsing history are "insufficient to demonstrate that Defendant's conduct constituted a serious invasion of a protected privacy interest."). Indeed, an "IP address can be determined with relative ease because it is always attached, like a 'return address,' to every 'envelope' of information exchanged back and forth by computers that are actively communicating with each other over the internet." *United States v. Jean*, 207 F. Supp. 3d 920, 928-929 (W.D. Ark. 2016), aff'd, 891 F.3d 712 (8th Cir. 2018). Plaintiffs do not have a privacy interest in a data point that does not belong to them

and is not associated with a particular individual. *See id*. at 932 (IP address "is not associated with the user's personal property"); *see also United States v. Felton*, 367 F. Supp. 3d 569, 574 (W.D. La. 2019) (same).

Further, "[a] plaintiff cannot have a reasonable expectation of privacy if she consented to the intrusion." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 524 (C.D. Cal. 2021). Indeed, "[w]ithout alleging that Defendant installed software on Plaintiff's device or browser that collected incoming contact information to Plaintiff's device, Plaintiff has not alleged anything above and beyond how the internet normally works." *Aviles,* 2025 WL 487196, at *3.

Plaintiff does not argue that she believed the information purportedly collected by the Meta Tracker was private. Plaintiff readily admits that she is a "tester," which, as this Court has recognized, means she "visited and entered information into Defendant's website expecting the information to be accessed, recorded, and disclosed[…]." *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) Any claim by Plaintiff that she reasonably expected that information to be private would be a farse—as a "tester," Plaintiff has a thorough understanding of how the Internet works. As the Ninth Circuit has recognized:

> [E]-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information. Like telephone numbers, which provide instructions to the 'switching equipment that processed those numbers,' e-mail to/from addresses and IP addresses are not merely passively conveyed through third party equipment, but rather are voluntarily turned over in order to direct the third party's servers.

*Forrester*, 512 F.3d at 510.

Here, Plaintiff absolutely expected her information to be accessed, recorded, and disclosed when she visited the Site—it's why she went there in the first place.

26

Of the 44 complaints she has filed since March 2024, Plaintiff admits to being a "tester" in 39, and in all of them, she has requested monetary damages. Even without doing the math, it is obvious what Plaintiff expected when she visited the Site: *she expected to make money*.

In effect, any expectation that Plaintiff purports to have had regarding the information she claims AFHI "trapped and traced" would necessarily be unreasonable—she <u>filed</u>[7] thirty-seven complaints against website owners for violating section 638.51 before filing the Complaint against Defendant. [Pearson Decl. ¶ 4, Exh. 1.] Even interpreting the allegations in the Complaint in a light most-favorable to Plaintiff—that she visited Defendant's website "most recently in mid-2024"—by mid-2024, she had already filed at least nineteen lawsuits alleging this identical cause of action. [*Id.* at ¶ 5.] Accordingly, "she cannot claim an injury when her expectations were ultimately met." *Autotrader*, 2025 WL 1085787 at *1.

Plaintiff has failed to state an actionable cause of action against AFHI. Her Complaint must be dismissed.

## C. <u>The Rule of Lenity Compels This Court to Dismiss Plaintiff's Complaint.</u>

The rule of lenity "generally requires that 'ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." *People v. Reynoza*, 15 Cal. 5th 982, 1012 (Cal. 2024) (quoting *People v. Nuckles,* 56 Cal. 4th 601, 611 (Cal. 2013).) The rule of lenity is intended to ensure that before defendants are held liable under a criminal statute, they are given reasonable notice of the consequences of their actions. *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012); *United States v. Simpson*, 319 F.3d 81, 86–87 (2d Cir. 2002) ("'The purposes underlying the rule of lenity [are] to promote fair notice to those subject to the criminal laws, to minimize the risk of

---

[7] This number, of course, excludes any threatened litigation that was resolved prior to filing.

selective or arbitrary enforcement, and to maintain the proper balance between Congress, prosecutors, and courts...."" (quoting *United States v. Kozminski*, 487 U.S. 931, 952 (1988)).)

CIPA and its Trap-and-Trace Statute are criminal laws subject to criminal punishment. *See* Cal. Penal Code § 638.51(c) ("A violation of this section is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both that fine and imprisonment."). The rule of lenity, therefore, applies fully to the Trap-and-Trace Statute, regardless of whether it is being enforced in a criminal or civil setting. *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 518 (1992) (applying rule of lenity in civil action because "although it is a tax statute that we construe now in a civil setting, the [statute] has criminal applications"); *Crandon v. United States*, 494 U.S. 152, 158 (1990) ("[B]ecause the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage.").

Under the rule of lenity, where a criminal statute "is ambiguous," courts must "resolv[e] the ambiguity strictly to apply only to conduct clearly covered." *United States v. Balint*, 201 F.3d 928, 934 (7th Cir. 2000).

As shown above, California court cannot even agree on what the Trap-and-Trace Statute applies to and whom it regulates.  And if California courts cannot agree, how is AFHI expected to be on "fair notice of what is and is not criminal"? *United States v. Saathoff*, 708 F. Supp. 2d 1020, 1036 (S.D. Cal. 2010). As the United States Supreme Court stated "[i]n these circumstances, the rule of lenity, not to mention a dose of common sense, favors a strict construction." *Bittner v. United States*, 598 U.S. 85, 103 (2023); *see also United States v. Santos*, 553 U.S. 507, 514 (2008*)* ("[N]o citizen should be held accountable for a violation of a statute whose

commands are uncertain[.]").

In a case involving internet browsing, another court recently applied the rule of lenity to a civilly enforced, criminal privacy statute. In late 2024, the Supreme Judicial Court of Massachusetts held in *Vita v. New England Baptist Hosp.*, No. SJC-13542, 2024 WL 4558621 (Mass. Oct. 24, 2024), that because it could not conclude that "browsing and other similar website interactions of the kind [plaintiff] alleges she engaged in on the hospitals' websites are 'wire communication[s]' under the wiretap act," the rule of lenity required the court to find that they were not and to dismiss the claim. *Id.* at *15.

This Court should do the same and find that the Trap-and-Trace Statute cannot be enforced against AFHI's conduct here. Plaintiff's Complaint should be dismissed.

## VI.    **CONCLUSION**

Plaintiff's Complaint is riddled with flaws, none of which could be cured by amendment.  Accordingly, AFHI respectfully asks the Court to dismiss Plaintiff's Complaint, with prejudice.  *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (explaining that leave to amend should be denied if futile).

Respectfully submitted,

Dated:  June 23, 2025                **WOMBLE BOND DICKINSON (US) LLP**

By:  */s/ Matthew D. Pearson*
          MATTHEW D. PEARSON

*Attorneys for Defendant*
Accident Fund Holdings, Inc., d/b/a
www.compwestinsurance.com

29