Matthew D. Pearson (SBN 294302)
Matthew.Pearson@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
400 Spectrum Center Drive, Suite 1700
Irvine, California 92618
Telephone: (714) 557-3800
Facsimile: (714) 557-3347

*Attorneys for Defendant*
ACCIDENT FUND HOLDINGS, INC.
(erroneously sued as ACCIDENT FUND HOLDINGS, INC., D/B/A WWW.COMPWESTINSURANCE.COM)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMILY RODRIGUEZ, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACCIDENT FUND HOLDINGS, INC., d/b/a www.compwestinsurance.com,<br><br>Defendant. | Case No.: 2:25-cv-03920-SK<br><br>**DEFENDANT'S NOTICE AND MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[Filed Concurrently with Declarations of Mickey Hadick, Lupe Rangel and Matthew D. Pearson; and [Proposed] Order]<br><br>Action Filed: March 24, 2025<br>Action Served: April 3, 2025<br>Action Removed: May 2, 2025<br>FAC Filed: July 14, 2025<br><br>**DATE: DECEMBER 3, 2025**<br>**TIME: 10:00 A.M.**<br>**COURTROOM: 540, 5TH FLOOR** |

## NOTICE OF MOTIONS

**NOTICE IS HEREBY GIVEN** that on December 3, 2025, at 10:00 a.m. in Courtroom 540, 5th Floor of the United States District Court, Central District of California, located at 255 E. Temple Street, Los Angeles, California 90012, Defendant Accident Fund Holdings, Inc. (erroneously sued as Accident Fund Holdings, Inc. dba www.compwestinsurance.com) ("AFHI") will and hereby does move, pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6) for an order dismissing Plaintiff Emily Rodriguez's ("Plaintiff") First Amended Class-Action Complaint ("FAC"), and will further move, pursuant to Fed. R. Civ. P. 12(f) to strike certain portions of Plaintiff's FAC in which she requests punitive damages.

This motion is made on the grounds that Plaintiff has failed to state against AFHI a plausible claim under California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51(a), because Plaintiff has not plausibly alleged (1) that AFHI installed or used a pen register or trap and trace device; (2) that Plaintiff was injured by AFHI's alleged installation or use of a pen register or trap and trace device; and (3) that CIPA § 638.51(a) should apply to AFHI's conduct, as alleged in the FAC.

Further, this motion is made on the grounds that Plaintiff's request for punitive damages under California Penal Code section 3294 is immaterial to her California Penal Code section 638.51 claim and is also not supported by the ultimate facts pleaded in the FAC.

This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declarations of Matthew D. Pearson, Mickey Hadick, and Lupe Rangel; the Court's file and records in this action; and

///

///

///

///

///

such other evidence and arguments as may be made or presented at or before the hearing on this Motion.

Dated: August 11, 2025

Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/ Matthew D. Pearson*
MATTHEW D. PEARSON

*Attorney for Defendant,* ACCIDENT FUND HOLDINGS, INC. (erroneously sued as Accident Fund Holdings, Inc. dba www.compwestinsurance.com)

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1
I. INTRODUCTION .......... 1
II. PLAINTIFF'S ALLEGATIONS .......... 3
III. THE FACTS .......... 4
A. AFHI .......... 4
B. Plaintiff .......... 5
IV. LEGAL STANDARDS .......... 5
A. Rule 12(b)(2) Standard .......... 5
B. Rule 12(b)(6) Standard .......... 6
C. Rule 12(f) Standard .......... 6
V. ARGUMENT .......... 7
A. The Court Lacks Personal Jurisdiction over AFHI .......... 7
1. Defendant is not subject to general jurisdiction in California .......... 7
2. Defendant is not subject to Specific Jurisdiction in California .......... 9
B. Plaintiff Has Failed to State an Actionable Claim Against AFHI .......... 14
C. Plaintiff's Request for Punitive Damages Should be Stricken .......... 25
VI. CONCLUSION .......... 25

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) .......... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6

*Aviles v. Liveramp, Inc.*,
No. 24STCV19869, 2025 WL 487196 (Cal.Super. Jan. 28, 2025) .......... 17, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6

*Boorstein v. Men's J. LLC*,
No. CV 12-771 DSF EX, 2012 WL 2152815 (C.D. Cal. June 14, 2012) .......... 21

*Brace v. Lifeguard, Inc.*,
No. CIV. 92-20509 SW, 1995 WL 32868 (N.D. Cal. Jan. 25, 1995) .......... 22

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .......... 7, 11, 12

*Bristol-Myers Squibb Co. v. Super. Ct.*,
582 U.S. 255 (2017) .......... 6

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 15

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) .......... 6

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 20

*Cannon Mfg. Co. v. Cudahy Packing Co.*,
267 U.S. 333 (1925) .......... 8

*Capitol Recs. Inc. v. Thomas-Rasset*,
No. CIV 06-1497(MJD/RLE), 2009 WL 1664468 (D. Minn. June 11, 2009)..... 19

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) .......... 21

*City of Los Angeles v. Barr*,
941 F.3d 931 (9th Cir. 2019) .......... 19

*Cody v. E. Gluck Corp.,*
No. 23-CV-02286-HSG, 2024 WL 4314187 (N.D. Cal. Sept. 26, 2024) ............ 21

*Conohan v. Gen Digital Inc,*
No. 2:24-CV-06894-MCS-PVC, 2025 WL 864655 (C.D. Cal. Feb. 19, 2025)... 13

*Corbett v. Pharmacare U.S., Inc*.,
544 F. Supp. 3d 996 (S.D. Cal. 2021) .......... 21

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).......... 7

*Dep't of Fin. v. Comm'n on State Mandates*,
85 Cal. App. 5th 535 (2022) .......... 19

*Dole Food Co. v. Watts,*
303 F.3d 1104 (9th Cir. 2002) .......... 13

*Elliot v. Cessna Aircraft Co*.,
No. 820CV00378SBADSX, 2021 WL 2153820 (C.D. Cal. May 25, 2021) ....... 11

*Esparza v. Kohls*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 23

*F.A.A. v. Coope*r,
566 U.S. 284 (2012).......... 22

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir.1993) .......... 6

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021).......... 11

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
972 F.3d 1101 (9th Cir. 2020) .......... 5, 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......... 6, 7

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) .......... 14

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 23

*Hendricks v. New Video Channel Am.*, LLC,
No. 2:14-CV-02989-RSWL-S, 2015 WL 3616983 (C.D. Cal. June 8, 2015) .......... 7

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) .......... 23

*In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap On (XXX) Internet Serv. Acct./User Name, (xxxxxxxx@xxx.com)*,
396 F. Supp. 2d 45 (D. Mass. 2005) .......... 16

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 15

*In re W. States Wholesale Nat. Gas Antitrust Litig. (Western States)*,
715 F.3d 716 (9th Cir. 2013) .......... 5

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 16

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 20

*Jewel v. Nat'l Sec. Agency*,
673 F.3d 902 (9th Cir. 2011) .......... 21

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) .......... 8

*Khamooshi v. Politico LLC*,
No. 24-CV-07836-SK, 2025 WL 1408896 (N.D. Cal. May 13, 2025)................16

*Langer v. Kiser*,
57 F.4th 1085 (9th Cir. 2023)........................................................................3

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008)........................................................................26

*Licea v. Blue Apron, LLC*,
2025 Cal. Super., LEXIS 744, *8....................................................................13

*Licea v. Caraway Home Inc.*,
655 F. Supp. 3d 954 (C.D. Cal. 2023)...............................................................3

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011)........................................................................21

*Michael Grecco Prods., Inc. v. Wenn Rts. Int'l Ltd.*,
No. 2:24-CV-06449-RGK-BFM, 2025 WL 575356 (C.D. Cal. Jan. 6, 2025).....14

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998)...................................................................10, 13

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006)........................................................................11

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015)..........................................................................5

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Cal.Super. Apr. 01, 2025).............16, 17

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002)........................................................................10

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (CD Cal. April 4, 2025, R. Gary Klausner) ....................22, 24

*Rounds v. Case-Mate Inc.*,
No. 2:24-cv-08531-WLH-RAO, 2025 U.S. Dist. LEXIS 48225 (C.D. Cal. Mar. 14, 2025) ........ 13

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ........ 24

*Sanchez v. Cars*.Com Inc.,
2025 Cal. Super. LEXIS 710 ........ 23

*Sanchez v. Marriott Int'l, Inc.*,
No. 2:24-CV-04882-SB-AGR, 2024 WL 3598821 (C.D. Cal. July 31, 2024) ........ 3

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........ 6

*Shisler v. Sanfer Sports Cars, Inc.*,
146 Cal. App. 4th 1254 (2006) ........ 8

*Soelect, Inc. v. Hyundai Motor Co*.,
No. 23-CV-05405-CRB, 2024 WL 4293911 (N.D. Cal. Sept. 24, 2024) ........ 11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 22

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 9, 10

*U.S. v. Forrester,*
*512 F.3d 500 (9th Cir. 2008*) ........ 23

*United States v. Devorce*,
526 F. Supp. 191 (D. Conn. 1981) ........ 18

*United States v. Dote*,
371 F.2d 176 (7th Cir. 1966) ........ 18

*United States v. Felton*,
367 F. Supp. 3d 569 (W.D. La. 2019) ........ 23

*United States v. Jean*,
207 F. Supp. 3d 920 (W.D. Ark. 2016) .......... 23

*United States v. Kail*,
612 F.2d 443 (9th Cir. 1979) .......... 18

*United States v. Reed*,
575 F.3d 900 (9th Cir. 2009) .......... 16

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 11

*Williams v. Yamaha Motor Co.*
851 F.3d 1015 (9th Cir. 2017) .......... 9

*Woods v. U.S. Bank N.A.*,
831 F.3d 1159 (9th Cir. 2016) .......... 8

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
433 F.3d 1199 (9th Cir. 2006) .......... 11

**Statutes**

18 U.S.C. § 2510 (8) .......... 15

Cal. Civil Code § 3294 .......... 25

Cal. Civil Code § 3294 (a) .......... 25

Cal. Civil Code § 3294 (b) .......... 25

Cal. Penal Code § 637.2 (a) .......... 21

Cal. Penal Code § 637.2 (c) .......... 22

Cal. Penal Code § 638.50 (b) .......... 15, 17, 18

Cal. Penal Code § 638.50 (c) .......... 15, 18, 19

Cal. Penal Code § 638.51 .......... 1

Cal. Penal Code § 638.51 (a) .......... 1, 14, 17

Cal. Penal Code § 3294 .......... 1

Cal. Civil Code § 1798.84 .......... 21

Cal. Code of Civil Procedure § 425.55 .......... 3

**Rules**

Fed. R. Civ. P. 12(b)(2) .......... 1

Fed. R. Civ. P. 12(b)(6) .......... 1

Fed. R. Civ. P. 12(f) .......... 1, 6

**Other Authorities**

3 Witkin, Cal. Proc. 6th Actions § 402 (2025) .......... 3

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I. INTRODUCTION**

Through her First Amended Complaint ("FAC"), Plaintiff Emily Rodriguez ("Plaintiff") seeks to haul into California court Defendant Accident Fund Holdings, Inc. (erroneously sued as Accident Fund Holdings, Inc. dba www.CompWestInsurance.com) ("AFHI"), a Michigan-incorporated-and-headquartered holding company that owns insurance providers, for allegedly violating an antiquated California criminal law—the Invasion of Privacy Act ("CIPA")—that was never intended to regulate, and does not regulate, the conduct at issue here. Needless to say, her FAC should be dismissed, for many reasons.

**First and foremost**, Plaintiff's FAC should be dismissed because this Court lacks personal jurisdiction over AFHI in this case. Plaintiff alleges that AFHI installed on www.CompWestInsurance.com (the "Site") JavaScript that collected and sent to a third party—Meta Systems, Inc.—certain information about her interactions on the Site. From this, Plaintiff concludes that the JavaScript qualified as either a "pen register" or "trap and trace device" under California law and that, because AFHI did not obtain a court order prior to installing the device, AFHI violated California Penal Code § 638.51 (the "PR/TT Statute").

Setting aside, for now, the numerous errors in Plaintiff's logic, Plaintiff's FAC lacks any allegations that would suggest, let alone establish, that AFHI did anything to target her specifically or California generally. She merely alleges that AFHI operates a globally-accessible website that she, a California resident, happened to visit. Merely operating a website is not an act "purposefully directed" at California and, as such, is not grounds upon which this Court can exercise personal jurisdiction. For that reason alone, Plaintiff's FAC should be dismissed.

**Second**, Plaintiff's FAC should be dismissed because she has failed to plausibly allege that AFHI violated the PR/TT Statute at all. The PR/TT Statute was intended to regulate the surreptitious collection of "dialing, routing, addressing, and

signaling information" ("DRAS Information") of either an outgoing (pen register) or incoming (trap and trace device) communication by a non-participant to the communication. That is not what occurred here.

Plaintiff was not "unsuspecting;" she anticipated and, indeed, hoped that the Site was running the JavaScript. As a self-described website "tester" who, since March 2024, has filed **forty-eight** actions under CIPA (forty-three of which included a claim under the Trap-and-Trace Statute), Plaintiff was not surprised to find that the Site was running JavaScript. She was looking for it. Moreover, Meta was not a "non-participant" to the communication; Plaintiff's browser sent the transmission at issue in this case directly to Meta. And the JavaScript did not collect just DRAS; Plaintiff herself alleges that it captured more.

**Third**, Plaintiff's FAC should be dismissed because she lacks statutory standing under CIPA. Only persons "injured by a violation" of CIPA are entitled to bring suit. Plaintiff does not allege to have suffered any injury from AFHI's alleged installation of a trap and trace device, and how could she? Plaintiff actively surfs the internet in the hopes of finding a website running the very technology at issue in this case. She cannot claim injury when she finds one.

**Finally**, that Plaintiff included in her FAC a request for punitive damages strains credulity. An award of punitive damages requires a finding of "oppression, fraud, or malice." None of those things are present here. AFHI operates a globally accessible website on which certain JavaScript is running. This JavaScript, as discussed below, injured neither Plaintiff nor any other Site user. There was no nefarious intent behind installing or using the JavaScript. Its only purpose was routine commercial behavior.

There are several reasons to dismiss Plaintiff's FAC. But, underlying them all, is the same issue: Plaintiff's FAC is simply another attempt by a high frequency

litigant[1] and her attorney[2] to drum up a claim where none exists.[3] As one court put it, "[t]his is one of the many, low-dollar, boilerplate lawsuits filed by [Plaintiff and] the same law firm." *Sanchez v. Marriott Int'l, Inc.*, No. 2:24-CV-04882-SB-AGR, 2024 WL 3598821, at *1 (C.D. Cal. July 31, 2024) (discussing complaint for damages under CIPA 638.51 filed by Scott Ferrell). For the reasons detailed below, AFHI's motion to dismiss should be granted.

## II. PLAINTIFF'S ALLEGATIONS

Despite her FAC spanning 33 pages and 129 paragraphs, the allegations relevant to Plaintiff's sole cause of action—violation of the Trap-and-Trace Statute—can be summarized as follows: Plaintiff, a "resident and citizen of California" [Dkt. No. 13, ¶ 14] "visited the Website" at an unspecified date [*id.* at ¶ 7]. At the time she visited the Site, AFHI had installed on the Site "code or 'scripts'" (the "Meta Tracker") that sent "user details to Meta," including "device and browser

[1] Although specific to construction-related accessibility violation cases, California recognizes that there is a distinction between an injured person and a serial litigant. Indeed, under California Code of Civil Procedure section 425.55 a plaintiff is a "high frequency litigant" after they have "filed 10 or more complaints alleging a [] violation within the 12-month period immediately preceding the filing of the current complaint" alleging the same violation. Cal. Code Civ. Proc. § 425.55. "[T]hese lawsuits are frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the [] violation." High Frequency Litigants Filing Construction Disability Claims., 3 Witkin, Cal. Proc. 6th Actions § 402 (2025). Here, in addition to filing her initial Complaint and this FAC against Defendant, Plaintiff has filed at least 47 more against other companies for alleged CIPA violations. Declaration of Matthew Pearson, Esq. ("Pearson Decl.") ¶ 3, **Ex. 1**.

[2] "[T]he Court acknowledges the central dynamic in this litigation, underscoring all of the deficiencies in the Complaint: Plaintiff, and his counsel, Scott Ferrell, are serial litigants bringing numerous 'cookie cutter' lawsuits under CIPA against various businesses that operate websites. Mr. Ferrell appears to have filed over 60 (and likely more) of these virtually identical lawsuits in the last year, with more seemingly filed every week." *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 963–64 (C.D. Cal. 2023) (granting out-of-state website's motion to dismiss for lack of personal and subject matter jurisdiction).

[3] Plaintiff's reliance on *Langer v. Kiser* in paragraph 14 of her FAC is improper; its facts involve claimed ADA violations and are, thus, distinguishable from the claims in this action. 57 F.4th 1085, 1095 (9th Cir. 2023) (reversing trial court's judgment that parking lot user with paraplegia who brought action against owner of mixed-use real property arising from lack of van-accessible parking lacked standing under the ADA and California Unruh Civil Rights Act because they were a serial litigant).

information, geographic information, referral tracking, and url tracking." [*Id.* at ¶ 79.] Indeed, according to Plaintiff, Meta receives "as much data as it can about an otherwise anonymous visitor to the Website" [*id.* at ¶ 78] like a user's "unique IP address, the Website user's operating system name, operating system version number, browser name, browser version number, browser language, screen resolution, geolocation data, email address, mobile ad IDs, embedded social media identities, customer and/or loyalty IDs, cookies and device signature – as well as the connections between them," [*id.* at ¶ 78].

Based on the above, Plaintiff asserts a single cause of action against AFHI for violation of the Trap-and-Trace Statute and seeks, on behalf of herself and the entire putative class, statutory damages in the amount of $5,000 per violation.

## III. THE FACTS

### A. AFHI

AFHI, which operates under the name AF Group, is a Michigan corporation with its principal place of business in Lansing, Michigan. [Declaration of Mickey Hadick ("Hadick Decl.), ¶ 2.] AFHI is a holding company whose affiliated insurance brands are premier providers of innovative, specialty insurance solutions. [*Id.* at ¶ 3.] One of those brands is CompWest Insurance. [*Id.* at ¶ 4.]

CompWest insurance has its own website, www.CompWestInsurance.com. [*Id.* at ¶ 5.] The Site is maintained by employees in Michigan and is hosted by servers housed in Michigan. [*Id.* at ¶ 6.] Anyone with internet access can visit the Site. [*Id.* at ¶ 7.] The Site does not distinguish between users from different states. [*Id.* at ¶ 8.] A user who visits the Site from California would experience the exact same thing as a user who visits the Site from Oregon. [*Id.* at ¶ 9.] AFHI does not determine the location of a Site visitor prior to his or her accessing the Site. [*Id.* at ¶ 10.]

AFHI employs no California residents and has no physical presence in California. [Declaration of Lupe Rangel ("Rangel Decl."), ¶¶ 8-10.] AFHI is not registered to do business in California. [*Id.* at ¶ 11.]

**B. Plaintiff**

Plaintiff identifies herself as a "consumer privacy advocate who works as a 'tester' to ensure that companies abide by the privacy obligations imposed by California law." [Dkt. No. 13, ¶14.] Plaintiff has, apparently, "tested" a lot of websites, having filed at least forty-eight separate complaints under CIPA since March 22, 2024. [*See* Declaration of Matthew D. Pearson ("Pearson Decl."), **Ex. 1**.]

Of those forty-eight filed complaints, forty-three include the exact claim asserted here: violation of the Trap-and-Trace Statute. [*Id.* at **Ex. 1**.] Further, the allegations in those complaints are similar, if not identical, to the allegations in the FAC filed here. [*Id.* at **Ex. 1**.]

Although Plaintiff claims to be "generally interested in an employment opportunity with Defendant," [Dkt. No. 13, ¶14] AFHI has been unable to locate in its possession any records of Plaintiff visiting the Site in any capacity. [Rangel Decl., ¶¶ 2-7.]

**IV. LEGAL STANDARDS**

**A. Rule 12(b)(2) Standard**

Under Rule 12(b)(2), "[w]hen a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig. (Western States)*, 715 F.3d 716, 741 (9th Cir. 2013). "Because 'California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S Constitution,'" the Court's "inquiry centers on whether exercising jurisdiction comports with [constitutional] due process." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted).

"Federal due process permits a court to exercise personal jurisdiction over a nonresident defendant if that defendant has at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Glob. Commodities Trading Grp., Inc.*

*v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)) (quotation marks omitted). "Those contacts may be so continuous and systematic as to render a defendant essentially at home in the forum state and amenable to any suit there. Alternatively, a court may exercise jurisdiction over 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id*. (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The Supreme Court has referred to these different bases for personal jurisdiction as 'general' and 'specific' jurisdiction." *Id*. at 1106-07 (citing *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017)).

**B. Rule 12(b)(6) Standard**

A court must dismiss a complaint for failure to state a claim if the complaint does not allege "sufficient facts" under a "cognizable legal theory." *See Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). Sufficient factual matter only exists if the facts alleged state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When ruling on a motion to dismiss, courts presume the truth of all well-pleaded facts. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013). However, no presumption of truth attaches to "threadbare recitals." *Iqbal*, 556 U.S. at 678.

**C. Rule 12(f) Standard**

Federal Rule of Civil Procedure 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The essential function of a 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984

F.2d 1524, 1527 (9th Cir.1993), rev'd on other grounds, 510 U.S. 517 (1994).

## V. ARGUMENT

### A. The Court Lacks Personal Jurisdiction over AFHI.

Personal jurisdiction over an out-of-state defendant, like AFHI, can be established one of two ways. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025). The plaintiff can allege sufficient facts to prove that the defendant is "essentially at home" in the forum state, thereby subjecting the defendant to personal jurisdiction in the forum regardless of the claim (i.e., general personal jurisdiction). *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Or the plaintiff can allege sufficient facts to prove that the defendant purposefully directed its conduct toward the forum state, thereby subjecting the defendant to personal jurisdiction in the forum for claims arising out of that conduct (i.e., specific personal jurisdiction). *Briskin*, 135 F.4th at 751. Here, Plaintiff has not established and cannot establish either.

#### 1. Defendant is not subject to general jurisdiction in California.

Corporations are subject to general jurisdiction (1) in the state in which they are incorporated, *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014), (2) in the state in which they are headquartered, *id.*, and (3) in rare instances, in the state in which "their contacts with a forum are so substantial that the defendant can be deemed to be 'present' in that forum for all purposes," *Hendricks v. New Video Channel Am., LLC*, No. 2:14-CV-02989-RSWL-S, 2015 WL 3616983, at *4 (C.D. Cal. June 8, 2015) (internal quotations omitted).

Here, AFHI is incorporated and headquartered in Michigan, [Hadick Decl., ¶ 2], and it does not have "substantial contacts" with California such that it can be "deemed to be present" in California "for all purposes." AFHI has no physical presence in California, employs no individuals in California, and is not registered to do business in California. [Rangel Decl., ¶¶ 8-11.] Therefore, AFHI is not, and cannot be, subject to general personal jurisdiction in California. *Shisler v. Sanfer Sports*

*Cars, Inc.*, 146 Cal. App. 4th 1254, 1259 (2006) (refusing to find general jurisdiction over an out-of-state corporation where it "ha[d] no physical presence in California" and was "not registered to do business [in California]").

In the FAC, Plaintiff alleges the following three facts about ***CompWest Insurance Company*** in the hopes of establishing jurisdiction of ***AFHI***.

- CompWest provides "workers' compensation insurance in California and select Western states[.]" [Dkt. No. 13, ¶ 10.]
- CompWest is "a corporation that was formed in the state of California" whose physical address is in La Palma, California [*Id.* at ¶ 10.]
- CompWest's website includes California-specific policies. [*Id.* at ¶¶ 10, 11.]

Plaintiff, however, did not sue CompWest; she sued AFHI. Thus, even *assuming arguendo* that the Court has personal jurisdiction over CompWest, that does not mean it has jurisdiction over AFHI. *See, e.g.*, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("In addition to Hustler Magazine, Inc., Larry Flynt, the publisher, editor and owner of the magazine, and L.F.P., Inc., Hustler's holding company, were named as defendants in the District Court. It does not of course follow from the fact that jurisdiction may be asserted over Hustler Magazine, Inc., that jurisdiction may also be asserted over either of the other defendants."); *see also* *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335–37 (1925) (affirming dismissal of parent for lack of personal jurisdiction; that court could exercise personal jurisdiction over wholly owned subsidiary did not mean that it could exercise jurisdiction over parent corporation).

For example, in *Williams v. Yamaha Motor Co.*, the Court agreed with the trial court that California had no general or specific personal jurisdiction over a holding company, because it was incorporated in Japan, its principal place of business was in Japan, it had no offices or employees in California, California sales made up only a portion of its revenue, it conducted no activities in California, it did not target California via marketing or advertising, and its only connection to California was the

company that it held. 851 F.3d 1015, 1021–22 (9th Cir. 2017) (internal citations omitted) (affirming trial court's order granting motion to dismiss for lack of personal jurisdiction over holding company). Similarly, here, AFHI is a foreign corporation with no physical presence in California that has multiple brands to generate income. [*See* Hadick Decl.]

Plaintiff has failed to establish general jurisdiction over AFHI.

**2. Defendant is not subject to Specific Jurisdiction in California.**

In California, corporations are subject to specific general jurisdiction if: (1) the corporation "purposefully direct[s its] activities or consummate[s] some transaction with the forum or resident thereof" ("Purposeful Direction") or "perform[s] some act by which [it] purposefully avails [itself] of the privilege of conducting activities in the forum" ("Purposeful Availment"); (2) the "claim…arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction…comport[s] with fair play and substantial justice, i.e., i[s]…reasonable." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 739 (N.D. Cal. 2023).

The plaintiff bears the burden of establishing the first two prongs. *Id*. If she meets her burden, the burden then shifts to the defendant to prove that the exercise of jurisdiction over it is unreasonable. *Id*.

Plaintiff here has not and cannot establish the second prong of personal jurisdiction. But even if she could and had, the Court would still need to dismiss the case because exercising personal jurisdiction over AFHI in this case in unreasonable. Plaintiff's FAC should be dismissed.

A. The FAC does not allege that AFHI purposefully directed its activities toward California.

The first prong of this Court's specific personal jurisdiction analysis requires application of either the "Purposeful Direction" test or the "Purposeful Availment" test. Where, as here, the plaintiff's claim sounds in tort, courts apply the "Purposeful Direction" test. *Swarts,* 689 F. Supp. 3d at 740–41 ("Because Plaintiff's

CIPA…claims sound in tort,…the Court applies a purposeful direction analysis.")

The Purposeful Direction Test, commonly referred to as the *Calder* Effects Test, also has three elements: (1) did the defendant commit an intentional act; (2) was that intentional act "expressly aimed" at the forum; and (3) did the intentional act "caus[e] harm that the defendant kn[ew was] likely to be suffered in the forum state"? *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020), *overruled on different grounds by Briskin*, 135 F.4th 739. In cases like this, the analysis generally turns on the second prong: express aiming.

"Express aiming" can be demonstrated by showing that the defendant either targeted the plaintiff specifically or targeted the forum generally, knowing the effects of its conduct would be felt in the forum. *See, e.g., Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir. 1998), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199 (9th Cir. 2006) (finding the "purposeful [direction] requirement…satisfied" where the defendant targeted a California plaintiff by "engag[ing] in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision…in California where Panavision has its principal place of business"); *see also Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1020 (9th Cir. 2002) (finding purposeful direction based on "insistent marketing campaign directed toward" the forum state).

Here, Plaintiff does not allege that AFHI targeted her specifically, nor could she. Indeed, Plaintiff chose to visit the Site. [Dkt. No. 13, ¶ 7.] She does not allege that AFHI invited her to the Site or did anything to entice her to visit it. [*See generally id.*] And AFHI has no record of any relationship with Plaintiff. [Rangel Decl., ¶¶ 5-7.] Therefore, in relation to AFHI, Plaintiff is no different than the hundreds of millions, if not billions, of people across the world who have access to the internet.

Given that AFHI did not target Plaintiff specifically, Plaintiff must show that AFHI aimed its conduct at California as a whole. In the internet context, courts have found that "maintain[ing] an interactive website that reaches potential customers in

California does not," in and of itself, show that the defendant expressly aimed its conduct at California. *See, e.g.*, *Elliot v. Cessna Aircraft Co.*, No. 820CV00378SBADSX, 2021 WL 2153820, at *3 (C.D. Cal. May 25, 2021). "Something more" is required. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006).

What that "something more" is largely depends on the facts of the case. But the Ninth Circuit has made clear that personal jurisdiction cannot rest exclusively on the fact that the defendant's conduct had "possible foreseeable effects" in California. *Pebble Beach*, 453 F.3d at 1158. Indeed, as the Ninth Circuit noted, whether and to what extent the defendant's acts had an effect on people within California goes to the "foreseeable effect prong of the 'effects test' and is not an independent act that can be interpreted as being expressly aimed at California." *Id.*

Similarly, Plaintiff's location is not dispositive—Plaintiff could just as easily been in Arizona, Florida, Texas, or even outside of the United States when she visited the Site. *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (explaining that the Nevada plaintiffs' injury in Nevada did not create personal jurisdiction because the plaintiffs "would have experienced th[e] same lack of access" to seized funds "in California, Mississippi, or wherever else they might have traveled and found themselves wanting more money than they had"); [Hadick Decl., ¶ 7 (stating that anyone with internet access can visit the Site).] Plaintiff's location is, at best, "random, isolated, or fortuitous." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) 359. And "random, isolated, or fortuitous" contacts do not give rise to specific personal jurisdiction. *See, e.g.*, *Soelect, Inc. v. Hyundai Motor Co.*, No. 23-CV-05405-CRB, 2024 WL 4293911, at *5 (N.D. Cal. Sept. 24, 2024) ("[A] defendant does not purposefully direct its activities at the forum state when the unilateral activity of the plaintiff…is all that connects the defendant to the forum state.").

Just a few months ago, in *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025), the Ninth Circuit, sitting *en banc*, analyzed personal jurisdiction over an out-

of-state defendant in a CIPA case, finding that the defendant had, in fact, purposefully directed its activities toward California. Despite the court finding personal jurisdiction in *Briskin*, the facts that led the court to reach that conclusion demonstrate why exercising personal jurisdiction over AFHI is improper here.

In *Briskin*, the Ninth Circulated isolated and focused on two facts. First, the Ninth Circuit noted that "Shopify [had] concede[d] that its geolocation technology allowed it to know that Briskin's device was located in California when it installed cookies on Briskin's device." *Id.* at 746. Second, the Ninth Circuit focused on Shopify's alleged installation of a piece of software on Briskin's device while he was in California, likening Shopify to "a third party who physically entered a Californian's home by deceptive means to take personal information from the Californian's files for its own commercial gain." *Id.* at 756. Shopify's knowledge of the plaintiff's location, coupled with Shopify's alleged intrusion into Plaintiff's device, compelled the Ninth Circuit to conclude that Shopify had, in fact, aimed its activities at California. *Id.* at 759 (finding specific personal jurisdiction based on Shopify's "deliberately reach[ing] out beyond its home state…[and] knowingly installing tracking software onto unsuspecting Californians' phones").

That is not the case here. Plaintiff does not allege in the FAC that AFHI knew she was a California resident before she visited the Site. [*See generally* Dkt. No. 13.] In fact, AFHI has expressly declared that it does not know any website visitor's location before he or she visits the Site. [Hadick Decl., ¶ 10.] On top of that, as Plaintiff repeatedly admits, the "PT/TT" was installed on the Website. [Dkt. No. 13, ¶¶ 61, fn. 14 (noting that "[t]hird-party trackers are snippets of code that are typically installed ***on multiple websites***" (emphasis added) 66 (alleging that "the PR/TT" was "installed….on [the] Website").] Therefore, unlike Shopify in *Briskin*, not only did AFHI not know that Plaintiff was located in California when she visited the Site, but it also did not "deliberately reach out beyond its home state." Any allegedly unlawful conduct would have occurred ***in Michigan***, where the Site is maintained and housed.

[Hadick Decl., ¶ 6.]

Multiple federal courts have rejected personal jurisdiction over out-of-state defendants for this reason. *See, e.g.*, *Conohan v. Gen Digital Inc,* No. 2:24-CV-06894-MCS-PVC, 2025 WL 864655, at *3 (C.D. Cal. Feb. 19, 2025) (dismissing for lack of personal jurisdiction trap and trace claim against Arizona defendant); *Rounds v. Case-Mate Inc.*, No. 2:24-cv-08531-WLH-RAO, 2025 U.S. Dist. LEXIS 48225, at *14 (C.D. Cal. Mar. 14, 2025) (same against Georgia defendant). So, too, have California state courts. *See, e.g.*, *Licea v. Blue Apron, LLC*, 2025 Cal. Super. LEXIS 744, *8 (finding lack of personal jurisdiction over Delaware defendant).

Plaintiff has failed to allege that AFHI expressly aimed its conduct either at her personally or at California generally. Therefore, this Court lacks personal jurisdiction over AFHI and must dismiss the FAC.

### B. Exercising Jurisdiction Over Defendant Would Be Unreasonable.

Even if the Court were to find that AFHI purposefully directed its activities at California, exercising jurisdiction would still be unreasonable. The Court considers seven factors when assessing reasonableness: "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Panavision Intern., L.P.*, 141 F.3d 1316, 1323 (9th Cir. 1998) (citation omitted).

Nearly every one of these factors militates against finding personal jurisdiction here. AFHI did not "purposefully interject" itself into California at all; it merely operated a globally accessible website. [Hadick Decl., ¶¶ 2-10.] *See also* *Dole Food Co. v. Watts,* 303 F.3d 1104, 1114 (9th Cir. 2002) (likening "purposeful[] interject[ion]" to "express aiming" and focusing on the degree of interjection). With

no physical presence in California [Rangel Decl., ¶¶ 8-10], the burden on AFHI in defending this lawsuit in California would be substantial. Michigan clearly has an interest in protecting its corporate citizens from serial litigants in foreign states, [Pearson Decl., **Ex. 1** (listing 48 CIPA cases filed by Plaintiff)] whereas with Plaintiff being a "tester" who actively seeks out alleged CIPA violations, California has little, if any, interest in protecting her from the conduct she tries to find, [Dkt. No. 13, ¶ 14]. [4] *See also* *Michael Grecco Prods., Inc. v. Wenn Rts. Int'l Ltd.*, No. 2:24-CV-06449-RGK-BFM, 2025 WL 575356, at *3 (C.D. Cal. Jan. 6, 2025) (noting that "states have strong interests in protecting [their] corporations from [actions] by foreign entities"). And Michigan provides an alternative forum, which, if Plaintiff is as motivated in her efforts to enforce CIPA as she claims to be, should not be unduly burdensome on her. *See* *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133–34 (9th Cir. 2003) ("The plaintiff bears the burden of proving the unavailability of an alternative forum[.]").

Exercising personal jurisdiction over AFHI in this case would be unreasonable. The Court should grant this motion.

**B. Plaintiff Has Failed to State an Actionable Claim Against AFHI.**

CIPA makes it unlawful for any person to "install or use a pen register or a trap and trace device without first obtaining a court order[.]" Cal. Penal Code § 638.51(a). It further provides that "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the

[4] The California legislature recognizes that lawsuits—like the one filed by Plaintiff here and in dozens more—are "abusive [and] do nothing to help consumer privacy. They use the same 'test plaintiffs' repeatedly – 60, 70, 80, or even 100+ times. The test plaintiff simply visits a website, looks to see if there are any cookies on the website, and if there is no corresponding opt-in consent mechanism, they send off a demand letter based on CIPA's $5000 per violation (read: per website visitor) and ask for, typically, between $20,000- $50,000 from a business (or non-profit). […] SB 690 seeks to stop these abusive lawsuits by clarifying that CIPA, the 50-year-old criminal eavesdropping statute, does not apply to modern, online business activities that are already intentionally, purposefully, and extensively regulated by the CCPA." 2025-2026 California Legislature, Regular Session, SB 690 Assembly Committee on Public Safety, Committee Report, p. 7 (July 1, 2025).

violation[.]" *Id.* at § 637.2(a). Read together, these two provisions require Plaintiff here to allege both that AFHI unlawfully installed or used a pen register or a trap and trace device and that their installation or use injured her. Plaintiff has alleged neither. Her FAC should be dismissed.

**1. Plaintiff's Allegations Make Clear That the Meta Tracker Is Neither a Pen Register Nor a Trap and Trace Device.**

CIPA defines a pen register to be "a device or process that records or decodes dialing, routing, addressing, or signaling information" ("DRAS Information") "transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Pen. Code § 638.50(b). Similarly, CIPA defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other [DRAS Information] reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50 (c). The commonality between them: both pen registers and trap and trace devices record, decode, and/or capture only DRAS Information. That is not what Plaintiff alleges the Meta Tracker did here.

Although CIPA does not affirmatively define DRAS Information, CIPA does state what it ***cannot be***—namely, "the contents of a communication." Cal. Penal Code § 638.50(b). CIPA likewise does not define "contents of a communication," but its federal counterpart—the Wiretap Act—does. The Wiretap Act, upon which California courts frequently rely when interpreting CIPA[5], states that "'contents', when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510 (8). Put simply, content is "the words spoken in a phone call," *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012), that are

[5] *See, e.g.*, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." (internal quotations omitted).)

"transmitted to or received by the parties to [the]…call," *United States v. Reed*, 575 F.3d 900, 916 (9th Cir. 2009).

Therefore, if a "device or process" "captures" "any information concerning the substance, purport, or meaning of [a] communication," ***it cannot be a trap and trace device.*** *See In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap On (XXX) Internet Serv. Acct./User Name, (xxxxxxxx@xxx.com)*, 396 F. Supp. 2d 45, 48 (D. Mass. 2005) ("[G]enerally speaking, routine…trap and trace devices installed on telephones record only the numbers…dialed in and not the contents of any communication."). Plaintiff here admits that her browser transmitted far more information to Meta than just DRAS Information.

Plaintiff alleges that the Meta Tracker received her public IP address, [Dkt. No. 13, ¶ 96], and, admittedly, public IP addresses have been held to be DRAS Information, *see, e.g., In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) ("IP addresses constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers." (internal quotations omitted).) But just because a device or process receives DRAS Information does not mean that the "device or process" ***is*** a pen register/trap and trace device. If it did, every device connected to the internet would be one. *Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 1408896, at *3 (N.D. Cal. May 13, 2025) ("When internet users visit a website, their devices automatically send their IP addresses to the website's server as part of the communication process."). Plaintiff must also plead that the "device or process"—here, the Meta Tracker— does **not** receive "any information concerning the substance, purport, or meaning" of the communication to which the DRAS Information relates. *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal.Super. Apr. 01, 2025) ("[T]he crucial distinction from other devices is that both 'pen registers' and 'trap and traced devices' are designed to capture ***information about the communication***, but ***not*** the content of the communication itself." (emphasis added)).

In fact, on April 1, 2025, the Superior Court of California, County of Los Angeles dismissed a CIPA § 638.51(a) claim because the plaintiff alleged that the tracker captured not only the user's IP address, but also "as much data as it can about an otherwise anonymous visitor to the Website." *Price*, 2025 WL 1237977, at *3. And, according to the Court, "if the device is capturing the content of the communications, it is definitionally not a [pen register or] trap and trace device." *Id.*

The same is true here. Plaintiff does not allege that the Meta Tracker received ***only*** IP addresses. She alleges that the Meta Tracker received IP addresses; "device and browser information, geographic information, referral tracking," [Dkt. No. 13, ¶ 79]; "website visitor's phone numbers and email addresses" [*id.* at ¶ 81]; and, indeed, "as much data as it can about an otherwise anonymous visitor to the Website" [*id.* at ¶ 78]. That information is not DRAS Information. *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *2 (Cal.Super. Jan. 28, 2025). (noting that the "dialing, routing, addressing, or signaling information" is "the IP address and related information of a website accessed by a computer - but not the computer's own IP address or identifying information"). Therefore, the Meta Tracker is, definitionally, neither a pen register nor a trap and trace device. Plaintiff's FAC must be dismissed.

**2. The Meta Tracker Is Not a Pen Register.**

As noted above, pen registers are, in part, defined by what they do: they must "record[] or decode[]" DRAS Information. Cal. Pen. Code § 638.50(b). Plaintiff here alleges that the Meta Tracker instructs a user's browser (1) to "store[] a beacon or cookie in the user's browser cache (2) to "to send the user's IP address to the PR/TT beacon's developer." [Dkt. No. 13, ¶¶ 96-97.] But as a line of JavaScript embedded in the Sites' HTML code, the Trackers can neither record nor decode anything. All they can do is provide instructions to a user's browser.

For example, Plaintiff alleges that the Trackers instructed her browser "to send …[her] IP address to the PR/TT beacon's developer." [*Id,.* at ¶ 54.] But Plaintiff does not allege that the Meta tracker "records" any of this information. For example, she

does ***not*** allege that the Meta Tracker, ***itself***, creates "a permanent and complete record of outgoing calls" (i.e., "GET" request), "as well as the numbers called on the particular line" (i.e., websites to which the GET requests are sent). *United States v. Dote*, 371 F.2d 176, 178 (7th Cir. 1966) (discussing the capabilities of a pen register). Nor does she allege that it "automatically record[s] telephone numbers dialed" (i.e., websites viewed). *United States v. Devorce*, 526 F. Supp. 191, 195 (D. Conn. 1981) (same). She merely alleges that the Meta Tracker tells her browser what to send.

Similarly, Plaintiff does ***not*** allege that the Meta Tracker "decodes" any information. Courts have described what it means for a pen register to "decode" information. In *United States v. Kail*, 612 F.2d 443 (9th Cir. 1979), the Ninth Circuit noted that a pen register "automatically translat[es] electrical impulses into the numbers dialed." *Id.* at 778. Similarly, in *Dote*, 371 F.2d 176, the Seventh Circuit explained that a pen register works by converting a "pulsation of the dial on a line to which the pen register is attached" to "the number dialed." *Id.* at 178. No similar "decoding" is alleged here. Indeed, Plaintiff includes in the Complaint screenshots of the information she alleges was sent from her browser directly to Meta. [*See generally* Dkt. 13.] She does not, however, allege whether, how, or when the Meta Tracker "decoded" it.

Absent any recording or decoding by the Meta Tracker itself, the Meta Tracker cannot be a pen register under the plain language of CIPA § 638.50(b).

**3. The Meta Tracker Is Not a Trap and Trace Device.**

That the Meta Tracker captures more than just DRAS Information is not the only reason the Meta Tracker is not a trap and trace device. As an initial matter, the Meta Tracker is not a trap and trace device because trap and trace devices capture incoming information, Cal. Penal Code § 638.50 (c), and Plaintiff alleges that the Meta Tracker "identifie[d] the ***outgoing*** 'routing, addressing, or signaling information' of the user." [Dkt. No. 13, ¶ 52 (emphasis added).]

Beyond that, the Meta Tracker is not a trap and trace device because it does

not "capture" anything. Under CIPA, a trap and trace device must, among other things, "***capture***[] the incoming electronic or other impulses that identify the originating number. . . ." Cal. Penal Code § 638.50(c) (emphasis added). "Capture" is the key word. To "capture" means "to take and hold (someone or something) as a captive or prisoner; to gain control of especially by force; to gain or win especially through effort."[6] [*See* Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/capture (last visited: June 9, 2025).] Regardless of which of the three definitions is used, one thing is clear: to "capture" means to obtain something not otherwise freely provided. That is not the case here. Neither AFHI nor Meta "captured" Plaintiff's "device and browser information, geographic information, referral tracking, and URL tracking." That information was freely and voluntarily provided by Plaintiff.

For example, with regard to AFHI, had Plaintiff not provided her IP address, she never would have been able to visit the Site in the first place. (*See, e.g., Capitol Recs. Inc. v. Thomas-Rasset* No. CIV 06-1497(MJD/RLE), 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) ("[T]he Pen Register Act cannot be intended to prevent individuals. . .from recording the IP information sent to them. If it did apply in those cases, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet.").) And, clearly, Plaintiff conveyed to AFHI the URLs of the webpages she visited on the Site, given that it was AFHI's website she was visiting. [*See* Pearson Decl. ¶6, **Exh. 2**, Order, *Anne Heiting v. HP Inc.*, Superior Court of California, County of Los Angeles, August 1, 2025, 24STCV29634, p.5 (noting that the Trap-and-Trace Statute "prohibits receiving unauthorized information about incoming

[6] See *City of Los Angeles v. Barr*, 941 F.3d 931, 940 (9th Cir. 2019) ("Where the statute does not define the relevant terms, we give them their ordinary, contemporary, common meaning, and may consult dictionary definitions." (internal quotations omitted); *see also Dep't of Fin. v. Comm'n on State Mandates,* 85 Cal. App. 5th 535, 567 (2022), review denied (Mar. 1, 2023) ("We may look to dictionary definitions to determine the usual and ordinary meaning of a statutory term.").

communications from other parties—not information that passes between plaintiff and defendant when plaintiff contacts the defendant").]

The same is true for Meta, albeit for different reasons. As numerous courts have explained, trackers, like Meta's, do not intercept a user's transmission to the website operator. Instead, they instruct a user's browser to send an entirely ***separate transmission*** to a third party. For example:

1. "When a user visits a website, the user's browser sends a 'GET' request to the website to retrieve it." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 919 (N.D. Cal. 2023).
2. "The [website] server responds by sending HTML code to the user's browser." *James v. Walt Disney Co*., 701 F. Supp. 3d 942, 945 (N.D. Cal. 2023), *motion to certify appeal denied*, No. 23CV02500EMCEMC, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024).
3. If the HTML code sent back to the user['s browser] includes a tracker's JavaScript, that JavaScript "directs the user's browser to send a ***separate communication*** to [the third party]." *Brown*, 685 F. Supp. 3d at 919 (emphasis added).

There are, therefore, two lines of transmissions in this case: one between Plaintiff and AFHI and one between Plaintiff and Meta. Because Plaintiff is actively sending the information in question to Meta, there is no "capture," just receipt, and, under CIPA's definition, receipt of information does not constitute a trap and trace device. If it did, nearly every website would be liable for operating a trap and trace device.

Indeed, as the Court in *Anne Heiting v. HP Inc.*, Superior Court of California, County of Los Angeles, August 1, 2025, 24STCV29634 stated:

> CIPA cannot reasonably be read as broadly as Plaintiff attempts to read it. Plaintiff's reading goes far afield from any concept of wiretapping. If CIPA broadly prohibits any process by which anyone identifies any 'originating number,' then every cell phone in the world—which identify the phone number of incoming calls—would be a prohibited trap and trace device. So would every website interaction that identifies electronic information

> about the user in a manner that allows the website to function. There is no indication that, in enacting the trap and trace device prohibition, the California Legislature meant to cover such devices.

[Pearson Decl. ¶6, **Exh. 2**, p. 5.]

### 4. Plaintiff Was Not "Injured by a Violation" of CIPA.

Even if Plaintiff had plausibly alleged that AFHI installed a pen register/trap and trace device in violation of CIPA (she has not), Plaintiff's claim would still fail because Plaintiff lacks statutory standing to bring suit.[7]

CIPA provides a private right of action to "[a]ny person who has been injured by a violation of this chapter." Cal. Penal Code § 637.2 (a). Courts have interpreted similar statutory-standing provisions to require something beyond a mere violation of the law. For example, when interpreting the statutory-standing provision under California Civil Code § 1798.84, which states that "[a]ny customer injured by a violation of this title may institute a civil action to recover damages," *id.* at § 1798.84(c), the United States District Court for the Central District of California found that the private right of action "does not allow a cause of action based solely upon a failure to comply with the statute" but, instead, "expressly requires an injury resulting from a violation." *Boorstein v. Men's J. LLC*, No. CV 12-771 DSF EX, 2012 WL 2152815, at *3 (C.D. Cal. June 14, 2012). The same is true under CIPA. *See Cody,* 2024 WL 4314187, at *2 ("The Court further cautions Plaintiff's counsel that they will need to do more than simply assert that Defendant violated CIPA to allege a concrete injury for purposes of Article III.").

[7]To be clear, AFHI is not arguing, at this point in the case, that Plaintiff lacks Article III standing. "Article III standing and statutory standing are distinct legal analyses." *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1005 (S.D. Cal. 2021). Unlike Article III standing, statutory standing is not jurisdictional. *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 n. 4 (9th Cir. 2011). Instead, statutory standing requires consideration of the merits of the plaintiff's claim and asks: has the plaintiff "been granted a right to sue by the specific statute under which he or she brings suit"? *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004) (internal quotations omitted). Any plaintiff who fails to establish statutory standing has failed to state a cause of action upon which relief can be granted. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of statutory standing requires dismissal for failure to state a claim").

That does not mean, however, that the injury required under CIPA must come in the form of "actual damages." In fact, CIPA expressly states that, to be injured under the statute, the plaintiff need not have "suffered, or be[en] threatened with, actual damages." Cal. Penal Code § 637.2(c). That is, injury under CIPA does not require "special damages for proven pecuniary loss." *See F.A.A. v. Cooper,* 566 U.S. 284, 298, 304 (2012) (interpreting "actual damages" in the privacy context to mean "special damages for proven pecuniary loss").

Read together, these two provisions of CIPA mean that while a bare violation of CIPA will not give rise to statutory standing, a plaintiff need not have suffered pecuniary loss before bringing suit under CIPA, either. Put simply, statutory standing under CIPA is similar, if not identical, to standing under Article III. *See Spokeo, Inc. v. Robins,* 578 U.S. 330, 341 (2016), as revised (May 24, 2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."); *see also Brace v. Lifeguard, Inc.*, No. CIV. 92-20509 SW, 1995 WL 32868, at *3 (N.D. Cal. Jan. 25, 1995) ("An injury-in-fact need not be monetary, but it must be distinct and palpable, and of a type redressible by the court.").

Here, Plaintiff identifies no injury separate and apart from AFHI's alleged violation of CIPA. [*See generally* Dkt. No. 13.] Based on that fact alone, the Court should dismiss the FAC. But even if Plaintiff were to claim that AFHI's installation of the Meta Tracker violated her privacy, she would be wrong, for multiple reasons.

### A. Plaintiff Had No Expectation of Privacy in the Information.

Whether and to what extent a plaintiff has been injured by an alleged invasion of privacy "depend[s] on the plaintiff's reasonable expectations." *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787 at *1 (CD Cal. April 4, 2025, R. Gary Klausner). That is, to adequately allege an injury arising from an invasion of privacy, the plaintiff must allege: (1) a legally protected privacy interest (2) in which she has a reasonable expectation of privacy, and (3) serious invasion of privacy. *Hill v. Nat'l*

*Collegiate Athletic Assn*., 7 Cal. 4th 1, 37 (1994). Plaintiff here alleges none of these three elements.

Plaintiff does not assert a legally protected privacy interest. She does not allege that she purchased insurance from AFHI or that she entered her name, phone number, email address, or any other personally identifiable information on the Site.

California state courts have repeatedly held that individuals do not have a legally protected interest their IP address. *See, e.g.* *Sanchez v. Cars.Com Inc.*, 2025 Cal. Super. LEXIS 710, *11 ("Plaintiff has no reasonable expectation in the privacy of her computer's IP address since she chose to access the Website."). Federal courts similarly agree an IP address is not protected and its disclosure does not give rise to a viable claim under CIPA. *See, e.g.,* *U.S. v. Forrester*, 512 F.3d 500, 503 (9th Cir. 2008) (no expectation of privacy in IP addresses when visiting websites because plaintiffs "should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information."); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("no legally protected privacy interest in IP addresses."); *Esparza v. Kohls*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (IP address, personal details, and browsing history are "insufficient to demonstrate that Defendant's conduct constituted a serious invasion of a protected privacy interest."). Indeed, an "IP address can be determined with relative ease because it is always attached, like a 'return address,' to every 'envelope' of information exchanged back and forth by computers that are actively communicating with each other over the internet." *United States v. Jean*, 207 F. Supp. 3d 920, 928-929 (W.D. Ark. 2016), aff'd, 891 F.3d 712 (8th Cir. 2018). Plaintiffs do not have a privacy interest in a data point that does not belong to them and is not associated with a particular individual. *See id*. at 932 (IP address "is not associated with the user's personal property"); *see also* *United States v. Felton*, 367 F. Supp. 3d 569, 574 (W.D. La. 2019) (same).

Further, "[a] plaintiff cannot have a reasonable expectation of privacy if she

consented to the intrusion." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 524 (C.D. Cal. 2021). Indeed, "[w]ithout alleging that Defendant installed software on Plaintiff's device or browser that collected incoming contact information to Plaintiff's device, Plaintiff has not alleged anything above and beyond how the internet normally works." *Aviles,* 2025 WL 487196, at *3.

Plaintiff does not argue that she believed the information purportedly collected by the Meta Tracker was private. Plaintiff readily admits that she is a "tester," which, as this Court has recognized, means she "visited and entered information into Defendant's website expecting the information to be accessed, recorded, and disclosed[…]." *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) Any claim by Plaintiff that she reasonably expected that information to be private would be a farse—as a "tester," Plaintiff has a thorough understanding of how the Internet works.

Here, Plaintiff absolutely expected her information to be accessed, recorded, and disclosed when she visited the Site—it's why she went there in the first place. Of the 48 complaints she has filed since March 2024, Plaintiff admits to being a "tester" in 44—and in all of them, she has requested monetary damages. Even without doing the math, it is obvious what Plaintiff expected when she visited the Site: *she expected to make money*.

In effect, any expectation that Plaintiff purports to have had regarding the information she claims AFHI allowed Meta to collect would necessarily be unreasonable—she filed[8] thirty-seven complaints against website owners for violating section 638.51 before filing her initial Complaint against Defendant. [Pearson Decl. ¶ 4, **Exh. 1**.] Accordingly, "she cannot claim an injury when her expectations were ultimately met." *Autotrader*, 2025 WL 1085787 at *1.

Plaintiff has failed to state an actionable cause of action against AFHI. Her FAC must be dismissed.

[8] Of course, this excludes any threatened litigation that was resolved prior to filing.

**C. Plaintiff's Request for Punitive Damages Should be Stricken.**

Under California law, punitive damages are only allowed "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). To establish "malice," the plaintiff must allege that the defendant engaged in "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Id. at § 3294(c)(1). "Oppression" requires "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Id. at § 3294(c)(2).

Here, Plaintiff alleges that, "[b]y knowingly violating a criminal statute and accessing Plaintiff's browser to install tracking software without Plaintiff's prior consent, Defendant acted with oppression and malice. As such, Defendant is liable for punitive damages pursuant to Civil Code section 3294." [Dkt. No. 13, ¶129.] This is improper. First, such an allegation is immaterial to Plaintiff's 638.51 claim. Further, the facts relied on by Plaintiff to in support of this request—in short, that AFHI operates a website, by which Plaintiff claims she was injured when she voluntarily visited as a self-proclaimed *tester*—come nowhere close to demonstrating that AFHI acted with malice or oppression. Plaintiff also fails to allege that an officer, director, or managing agent of AFHI had advance knowledge and conscious disregard, or authorized or ratification the alleged oppressive, fraudulent, or malicious conduct—as is required by section 3294 (b). Cal. Civ. Code § 3294 (b). Accordingly, Plaintiff's request for punitive damages in paragraph 129 of Plaintiff's FAC and paragraph (b) of the Prayer for Relief should be stricken or dismissed from the FAC.

## VI. CONCLUSION

Plaintiff's FAC is riddled with flaws, none of which could be cured by amendment. Accordingly, AFHI respectfully asks the Court to dismiss Plaintiff's

FAC, with prejudice. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (explaining that leave to amend should be denied if futile).

Respectfully submitted,

Dated: August 11, 2025

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/ Matthew D. Pearson*
MATTHEW D. PEARSON

*Attorneys for Defendant*
Accident Fund Holdings, Inc., d/b/a
www.compwestinsurance.com