Matthew D. Pearson (SBN 294302)
Matthew.Pearson@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
400 Spectrum Center Drive, Suite 1700
Irvine, California 92618
Telephone: (714) 557-3800
Facsimile: (714) 557-3347

*Attorneys for Defendant*
ACCIDENT FUND HOLDINGS, INC.
(erroneously sued as ACCIDENT FUND HOLDINGS, INC., D/B/A WWW.COMPWESTINSURANCE.COM)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMILY RODRIGUEZ, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACCIDENT FUND HOLDINGS, INC., d/b/a www.compwestinsurance.com,<br><br>Defendant. | Case No.: 2:25-cv-03920-SK<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Action Filed: March 24, 2025<br>Action Served: April 3, 2025<br>Action Removed: May 2, 2025<br>FAC Filed: July 14, 2025<br><br>**DATE: DECEMBER 3, 2025**<br>**TIME: 10:00 A.M.**<br>**COURTROOM: 540, 5TH FLOOR** |

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. ARGUMENT .......... 3
A. Plaintiff Lacks *Statutory Standing* to Sue Under CIPA .......... 3
1. Plaintiff's Privacy, By Law, Could Not Have Been Invaded .......... 4
a. There Is No Legally Protected Privacy Interest in the Information Collected. .......... 5
b. Plaintiff Lacked an Expectation of Privacy When She Visited the Site. .......... 6
B. Plaintiff's Internally Inconsistent Allegations Kill Her Claim. .......... 8
C. Plaintiff Has Failed to Establish Personal Jurisdiction Over AFHI. .......... 10
III. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

Cases

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ........ 10, 11, 12

*Britt v. Superior Ct. of Santa Clara Cnty.*,
58 Cal. 2d 469 (1962) ........ 6

*Carpenter v. United States*,
585 U.S. 296 (2018) ........ 9

*Cline v. Dan-Bunkering (Am.), Inc.*,
No. 24-CV-2081-JES-JLB, 2025 WL 1194076 (S.D. Cal. Apr. 23, 2025) ........ 12

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-CV-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........ 1

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........ 5

*Hill v. Nat'l Collegiate Athletic Assn.,*
7 Cal. 4th 1 (1994) ........ 4, 5

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025), appeal dismissed, No. 25-4452, 2025 WL 2943080 (9th Cir. Oct. 3, 2025) ........ 10

*Mitchener v. CuriosityStream, Inc.*,
No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ........ 6

*Moody v. Textron Inc.,*
No. 2:25-CV-01032-MWC-E, 2025 WL 2828109 (C.D. Cal. Sept. 24, 2025) ........ 11

*Naruto v. Slater*,
No. 15-CV-04324-WHO, 2016 WL 362231 (N.D. Cal. Jan. 28, 2016), aff'd, 888 F.3d 418 (9th Cir. 2018) ........ 4

*People v. Sneed*,
32 Cal. App. 3d 535 (Ct. App. 1973), disapproved of on other grounds by *People v. Cook*, 41 Cal. 3d 373 (1985) ........ 7

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......................................................... 6

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387 (C.D. Cal. Mar. 14, 2025)...... 7

*See Mount v. PulsePoint, Inc.,*
No. 13 CIV. 6592 (NRB), 2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016), aff'd, 684 F. App'x 32 (2d Cir. 2017), as amended (May 3, 2017)................................. 6

*Shah v. Hilton Worldwide Holdings Inc.,*
No. 25-CV-01018-EKL, 2025 WL 1683577 (N.D. Cal. June 11, 2025) ....... 11, 12

*Smith v. Maryland*,
442 U.S. 735 (1979)............................................................................................ 9

*Soldal v. Cook Cnty., Ill.*,
506 U.S. 56 (1992).............................................................................................. 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)............................................................................................ 3

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2007) .............................................................................. 6

*United States v. Jefferson*,
566 F.3d 928 (9th Cir. 2009) .............................................................................. 9

Statutes

Cal. Penal Code § 637.2(a) ..................................................................................... 4

Cal. Penal Code § 638.51(a) ................................................................................... 9

## I. INTRODUCTION

Online-data-collection cases, like the one Plaintiff Emily Rodriguez ("Plaintiff") brings here, often present complicated questions that hinge on the application of an antiquated statute—the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq*.—to modern-day technology that did not exist, and likely had not even been imagined, when the statute was enacted. Judge Chhabria of the Northern District recently summed up the difficulties cases like this one create:

> The language of CIPA is a total mess. It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's already-obtuse language to new technologies. Indeed, we have reached the point where it's often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute….The state of affairs with CIPA is untenable. Courts are issuing conflicting rulings, and companies have no way of telling whether their online business activities will subject them to liability….[I]t is imperative for the Legislature to bring CIPA into the modern age and to speak clearly about how the kinds of activities at issue in this case should be treated. Until that happens, courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation.[1]

The issues identified by Judge Chhabria apply with equal force and effect here. Plaintiff claims that by including a few lines of JavaScript in the HTML code of www.CompWestInsurance.com (the "Site"), Defendant Accident Fund Holdings, Inc. ("AFHI") used and/or installed a pen register or trap-and-trace device—devices historically used by law enforcement personnel during criminal investigations—in violation of California Penal Code § 638.51(a).

But while Plaintiff's claim effectively tries to jam a square peg into a round

[1] *Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561-VC, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025).

hole, the Court here need not engage in the "borderline impossible" act of "determin[ing] whether a [AFHI's] online conduct fits within the language of the statute" because Plaintiff has no right to bring a claim under CIPA in the first place.

Plaintiff, herself, admits that she visited the Site, at least in part, to determine whether the Site was engaging in conduct that she believes violates CIPA—that is, using JavaScript to collect Site users' IP addresses and device metadata. And, upon finding that the Site did, she brought suit, claiming that the exact conduct for which she was searching invaded her privacy. But a person who expects to have her privacy invaded suffers no invasion of privacy. The reason for this is simple. There can be no invasion of privacy where the person does not actually expect whatever she is doing to remain private.

Plaintiff spends the majority of her Opposition trying to muddy the waters on this point. She devotes pages to Article III standing despite the fact that AFHI did not challenge standing. She focuses on the "objective" nature of her expectation of privacy while ignoring entirely its "subjective" element. And she tries, at length, to convince this Court that "tester" plaintiffs have been welcomed with open arms by federal courts.

But the dispositive issue in this case is clear. In order to bring suit under CIPA, Plaintiff must have been "injured by a violation" of CIPA. The only "injury" identified by Plaintiff is an alleged invasion of her privacy. And Plaintiff could not have suffered an invasion of her privacy if she expected to occur what actually did occur.

As discussed in AFHI's Motion to Dismiss, there are numerous reasons why Plaintiff's First Amended Complaint ("FAC") should be dismissed, including that this Court lacks personal jurisdiction over AFHI.[2] But, at bottom, one fact

---

[2] Due to page limitations, AFHI has not responded here to each of the arguments in Plaintiff's Opposition. AFHI, however, has not waived those arguments and reserves the right to raise those arguments at the forthcoming hearing on AFHI's Motion to Dismiss.

definitively kills Plaintiff's claim. She sought out the very injury for which she now seeks to hold AFHI liable. That is not an invasion of privacy. Plaintiff's FAC should be dismissed in its entirety and with prejudice.[3]

## II. ARGUMENT

### A. Plaintiff Lacks *Statutory Standing* to Sue Under CIPA.

Plaintiff devotes the first five pages of her Opposition to establishing that she has Article III standing to sue in this Court. But Plaintiff's Article III arguments and the cases upon which she relies in support of them have no application to the instant Motion because AFHI did not challenge Plaintiff's Article III standing in its Motion to Dismiss. In fact, to avoid the very confusion Plaintiff seems to suffer from here, AFHI stated in footnote 7 of its Motion to Dismiss that it "is not arguing, at this point in the case, that Plaintiff lacks Article III standing." [Dkt. No. 17, p. 5 n.7.] Instead, AFHI challenged Plaintiff's statutory standing to bring suit under CIPA, which, as AFHI explained, requires a "different legal analys[is]" than Article III standing and which, if lacking, results in a finding that Plaintiff has "fail[ed] to state a claim." [*Id.*]

Article III standing and statutory standing differ in, among other things, purpose. Article III is intended to protect the separation of powers, ensuring that federal courts only adjudicate "actual cases and controversies" and do not provide advisory opinions that could shape current or future legislative action. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422-23 (2021). In other words, Article III standing asks whether the plaintiff can sue in federal court.

Statutory standing, in contrast, is forum agnostic. It looks to the intent of the legislature that enacted the statute allegedly violated and asks whether the legislature intended to grant the plaintiff the right to sue under it. *Naruto v. Slater*,

---

[3] Plaintiff does not actually oppose AFHI's Motion to Strike her claim for punitive damages. She merely states that she currently lacks the facts necessary to adequately allege her claim for punitive damages.[Dkt. No. 20, p. 24.] That admission, alone, is sufficient to grant the motion to strike.

No. 15-CV-04324-WHO, 2016 WL 362231, at *2 (N.D. Cal. Jan. 28, 2016), aff'd, 888 F.3d 418 (9th Cir. 2018) ("Statutory standing exists 'when a particular plaintiff has been granted a right to sue by the specific statute under which he or she brings suit,'" and the legislature "must 'make its intentions clear before [the courts] will construe a statute to confer standing on a particular plaintiff'"). Thus, a plaintiff could have Article III standing but lack statutory standing, just as a plaintiff could lack Article III standing but have statutory standing.

Here, CIPA's statutory-standing requirement, located in California Penal Code § 637.2, states that "[a]ny person ***who has been injured by a violation of this chapter*** may bring an action against the person who committed the violation…." Cal. Penal Code § 637.2(a) (emphasis added). Therefore, to bring suit under CIPA, a plaintiff must demonstrate (1) that she was "injured" and (2) that her injury resulted from the defendant's alleged violation of CIPA.

In the FAC, Plaintiff identifies a single "injury" that she claims she suffered as a result of AFHI using the third-party JavaScript code: invasion of privacy. [Dkt. No. 13, ¶¶ 91 ("The collection of Plaintiff's personally identifying, non-anonymized information through Defendant's installation and use of the PR/TT beacon constitutes an invasion of privacy."), 105 ("Plaintiff suffered an injury to her dignity caused by the invasion of her privacy attributable to Defendant's wrongdoing and the wrongdoing of the aforementioned third parties.").] This injury, however, is belied by Plaintiff's own allegations.

**1. <u>Plaintiff's Privacy, By Law, Could Not Have Been Invaded.</u>**

There can be no invasion of privacy unless the plaintiff (1) possesses a legally recognized "privacy interest" in the information collected and (2) has a subjective expectation of privacy in the information that is reasonable under the circumstances. *See Hill v. Nat'l Collegiate Athletic Assn.,* 7 Cal. 4th 1, 35 (1994) ("The first essential element of a state constitutional cause of action for invasion of privacy is the identification of a specific, legally protected privacy interest."); *see*

*also id.* at 36 ("The second essential element of a state constitutional cause of action for invasion of privacy is a reasonable expectation of privacy on plaintiff's part."). Plaintiff has not established, and cannot establish, either.

**a. <u>There Is No Legally Protected Privacy Interest in the Information Collected.</u>**

There are two classes of legally recognized privacy interests: "(1) interests in precluding the dissemination or misuse of ***sensitive and confidential information*** ('informational privacy'); and (2) interests in ***making intimate personal decisions or conducting personal activities*** without observation, intrusion, or interference ('autonomy privacy')." *Hill*, 7 Cal. 4th at 35 (emphasis added). Plaintiff, here, alleges the former, stating that she "has an interest in maintaining control over Plaintiff's private and sensitive information, as well as an interest in preventing their [sic] misuse." [Dkt. No. 13, ¶ 105.]

The issue, however, is that Plaintiff does not allege that the third parties collected any "sensitive and confidential information" about her while she was on the Site. In fact, the only information that Plaintiff identifies in the FAC as actually being collected from the Site by the third parties is IP addresses, [Dkt. No. 13, ¶¶ 43, 52, 66, 93, 110, 124], and, potentially, unique cookie values [*id.* at ¶ 55].[4]

To AFHI's knowledge, no court has held that an individual has a legally protected privacy interest in the IP address she is using at the time the IP address is collected. Most have found the opposite. *See, e.g., Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("[T]here is no legally protected privacy

[4] Although Plaintiff generically refers to other data points that, on information and belief, the third parties "will" collect, she does not allege that the third parties collected that information about her. [Dkt No. 13, ¶ 97 ("Plaintiff is informed and believes, and thereon alleges, that the PR/TT beacon will collect and track a unique IP address, the Website user's operating system name, operating system version number, browser name, browser version number, browser language, screen resolution, geolocation data, email address, mobile ad IDs, embedded social media identities, customer and/or loyalty IDs, cookies and device signature."). Moreover, none of these categories of information are "sensitive and confidential."

interest in IP addresses."); *Mitchener v. CuriosityStream, Inc*., No. 25-CV-01471-NW, 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025) ("[I]t is well established in the Ninth Circuit that 'there is no legally protected privacy interest in IP addresses.'"); *R.C. v. Walgreen Co*., 733 F. Supp. 3d 876, 889 (C.D. Cal. 2024). [5]

The same is true for unique cookie values. Even if the Court accepts as true Plaintiff's allegation that the collection and transmission of the "c_user cookie…allows Facebook to identify the user's account that is visiting the Website," [Dkt. No. 17, ¶ 84], the only information disclosed is that Plaintiff—or, more accurately, someone using a device associated with Plaintiff—visited the Site. There is no privacy right in an individual visiting one website, especially one as mundane as the Site, just as there is no privacy right in an individual visiting one brick-and-mortar store. *See, e.g., See Mount v. PulsePoint, Inc.,* No. 13 CIV. 6592 (NRB), 2016 WL 5080131, at *13 (S.D.N.Y. Aug. 17, 2016), aff'd, 684 F. App'x 32 (2d Cir. 2017), as amended (May 3, 2017) (noting the lack of "any New York decisions suggesting a privacy right in anonymized browsing history")*; Britt v. Superior Ct. of Santa Clara Cnty*., 58 Cal. 2d 469, 472, (1962) (acknowledging that there is no privacy interest in "premises devoted to common use by the general public such as, for example, the shopping areas and public hallways and elevators of the department store").

Plaintiff has failed to establish that she had a legally protected privacy right in any of the information allegedly collected from the Site. She, therefore, has not suffered, and could not have suffered, an invasion of privacy.

**b. <u>Plaintiff Lacked an Expectation of Privacy When She Visited the Site.</u>**

The second requirement for an invasion-of-privacy injury is a reasonable

[5] Plaintiff devotes a significant amount of her Opposition trying to distinguish *United States v. Forrester*, 512 F.3d 500, 519 (9th Cir. 2007), but, as demonstrated, *Forrester's* finding that an individual has no privacy interest in the IP address she is using has been upheld numerous times, including as recently as August 2025.

belief by the plaintiff that whatever she was doing was and would remain private. The requirement, therefore, contains both subjective and objective elements. *People v. Sneed*, 32 Cal. App. 3d 535, 540 (Ct. App. 1973), disapproved of on other grounds by *People v. Cook*, 41 Cal. 3d 373 (1985) ("The basic test as to whether there has been an unconstitutional invasion of privacy is whether the person has exhibited a subjective expectation of privacy which is objectively reasonable."). Not only must the plaintiff believe that what she is doing is private, but so, too, must the average person under similar circumstances. Only where both elements—subject and objective—are met is an invasion of privacy injury possible.

Here, Plaintiff had no subjective expectation of privacy when she visited the Site because, by her own admission, she is "tester" who goes from website to website looking for the very violations she alleges here. *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387, at *2 (C.D. Cal. Mar. 14, 2025) (stating that a "tester…seeks out invasions of privacy"). Put another way, Plaintiff "visited the Website 'fully expect[ing]' it to violate her privacy," and "[h]aving expected an invasion of privacy, she cannot claim that she had a reasonable expectation to privacy." *Id.*

Plaintiff claims that her acting as a "tester" is not fatal to her claim because, in other contexts, courts have allowed "tester" plaintiffs to survive dismissal. [Dkt. No. 20, pp. 1-6.] But, in making these claims, Plaintiff fails to take into consideration the differences between an invasion-or-privacy injury and, for example, an injury arising from a violation of one's First Amendment rights or one's rights under the American with Disabilities Act. As the court in *Rodriguez* explained, under the First Amendment and the ADA, "the plaintiffs were injured regardless of their expectations or intentions." *Rodriguez*, 2025 WL 1085787, at *1.

"The same," however, "cannot be said of invasions of privacy, which depend on the plaintiff's reasonable expectations. [Citation.] And as a tester that visited and entered information into Defendant's website expecting the information to be

accessed, recorded, and disclosed, she cannot claim an injury when her expectations were ultimately met." *Id.*

To make matters worse, Plaintiff is not simply trying to circumvent Article III's requirements by bringing this claim; she is trying to circumvent the California legislature's purpose in enacting CIPA in the first place. The California legislature enacted CIPA to "protect the right of privacy of the people of this state," Cal. Penal Code § 630, but, by including in CIPA the statutory-standing "injury" requirement, sought to avoid creating an army of opportunistic and uninjured citizen enforcers, like Plaintiff here. To allow Plaintiff to proceed here would directly contradict the legislature's apparent purpose in enacting CIPA in the first place.

Plaintiff has failed to allege that she was "injured" by AFHI's claimed "violation of" CIPA. She, therefore, lacks statutory standing to sue under CIPA, and her FAC must be dismissed.[6]

### B. <u>Plaintiff's Internally Inconsistent Allegations Kill Her Claim.</u>

While Plaintiff's admission that she visited the Site in order to drum up an alleged violation of CIPA is sufficient reason to dismiss the FAC, it is not the only one. Plaintiff's pen-register/trap-and-trace claim fails—indeed, all pen-register/trap-and-trace claims fail—because, by definition, the use a pen register and/or trap and trace device cannot result in an injury.

Plaintiff's entire claim hinges on her establishing at least two things: (1) that the JavaScript running on the Site constituted either a pen register or trap and trace device and (2) the JavaScript injured her. The problem is that proving those two

---

[6] In her Opposition, Plaintiff makes several references to AFHI's alleged "duty do disclose," [Dkt. No. 20, p. 8], the notice requirements under the California Consumer Privacy Act ("CCPA"), [*Id.* at pp. 8-9], and AFHI's alleged "deceptive representation on its [Consent Management Platform]," [*id.* at p. 9]. Not only are none of these arguments supported by allegations in the FAC, but they are also completely irrelevant. The CCPA provides no private right of action that would apply in this situation, and it is unclear how AFHI's statements on its "CMP" could be deceptive if Plaintiff alleges AFHI had no CMP. [*Id.* at p. 8 ("Plaintiff did not encounter any cookie banner notifying her that tracking cookies would be installed[.]").]

things requires diametrically opposite allegations.

Pen registers and trap and trace devices are defined not only by the information they collect (i.e., "dialing, routing, addressing, and signaling" ("DRAS") information) but also by the information they do not collect (i.e., "the contents of a communication"). The dividing line between DRAS information and communication contents can be, at times, blurred. But one thing is for certain: to be a pen register and/or trap and trace device, the JavaScript cannot collect information in which a person has a reasonable expectation of privacy.

The reason for this lies in criminal procedure. It is well-settled law that the 4th Amendment protects against unreasonable searches and seizures, *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 62 (1992), and that a "search" occurs "when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jefferson*, 566 F.3d 928, 933 (9th Cir. 2009). It is also well-settled law that, in most instances, a lawful "search" "requires a warrant supported by probable cause." *Carpenter v. United States*, 585 U.S. 296, 304 (2018).

Despite this, Cal. Penal Code § 638.51, the statute authorizing the use of a pen register/trap and trace device, does not require a search warrant. Cal. Penal Code § 638.51(a). It merely requires that before a pen register is installed or used, a person must "obtain[] a court order pursuant to Section 638.52 or 638.53." Cal. Penal Code § 638.51(a). Indeed, the United States Supreme Court has held that "[t]he installation and use of a pen register…was not a 'search,' and no warrant was required." *Smith v. Maryland*, 442 U.S. 735, 745–46 (1979). Therefore, pen registers and trap and trace devices, as defined under § 638.50, necessarily must not collect "information in which a person has a reasonable expectation of privacy." To hold otherwise would mean that § 638.51 authorizes courts to issue orders permitting the government to engage in unlawful searches and seizures under the 4th Amendment.

The end result is that, in order to allege the use or installation of a pen

register or trap and trace device, Plaintiff must allege that the JavaScript did not collect any information in which she had a reasonable expectation of privacy, but, in order to have statutory standing to sue under CIPA, she must allege that by collecting this otherwise non-private information, the JavaScript invaded her privacy. The two cannot be true at the same time, as Judge Wise recently pointed out in *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025), appeal dismissed, No. 25-4452, 2025 WL 2943080 (9th Cir. Oct. 3, 2025):

> Though neither party discusses the distinction between information about a communication versus information within a communication, it crystalizes the futility of Plaintiff's suit (and the myriad identical cases Plaintiff's counsel has filed in both federal and state courts). If Defendant only collects information regarding the "metadata" of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location). If Defendant instead collects content information from communication between the parties (e.g., information provided from Plaintiff to Defendant directly), then the TikTok software is not a trap and trace device and § 638.50 does not apply.

Put simply, Plaintiff cannot have it both ways. Either she can allege the use of a pen register or trap and trace device, in which case she lacks statutory standing, or she can allege statutory standing, in which case she has not alleged the use of a pen register or trap and trace device. Plaintiff has pleaded herself out of court; her FAC should be dismissed.

**C. <u>Plaintiff Has Failed to Establish Personal Jurisdiction Over AFHI.</u>**

The seminal ruling on personal jurisdiction over non-California-based companies in CIPA actions is *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025). In *Briskin*, the Ninth Circuit found that Shopify was subject to personal

jurisdiction in California not because it operated a website that was accessible in California, like AFHI does here, or because the website it operated allowed it to collect certain information about website viewers, like the Site does here, but because "Shopify deliberately reached out beyond its home state by knowingly installing tracking software onto unsuspecting Californians' phones," *id.* at 759, that Shopify "allegedly knew w[ere] in California," *id*. at 760. Further, the Ninth Circuit found that personal jurisdiction over Shopify existed because the plaintiff's claims arose out of Shopify's deliberate act of "surreptitiously implant[ing] cookies that permanently remained on [the plaintiff's] device," *id.* at 746, and that "extract[ed] personal data" from the plaintiff's device while Shopify knew it was located in California, *id.* at 760. That is certainly not the case here.

In this case, AFHI is not Shopify; it is merely the website on which Shopify operated. Plaintiff admits as much in the FAC, alleging that Meta "created" the "spyware pixel" [Dkt. No. 13, ¶ 77]; "set" the "Meta_fbp cookie," which is a "Facebook identifier that is…able to track users over the next 90 days," [*id.* at ¶ 85]; and ultimately received at its "servers" the information used "to track visitor activity on the Website," [*id.* at ¶ 83]. Plaintiff makes similar allegations with regard to Basis [*id.* at ¶¶ 75-76] and LinkedIn [*id.* at 86-90]. Therefore, under *Briskin*, if entities are subject to personal jurisdiction in California Meta, Basis, and LinkedIn are.

Courts to consider, post-*Briskin*, whether personal jurisdiction attaches to a non-California company operating a globally accessible website that uses technology like the technology at issue here have found that it does not. *See, e.g., Moody v. Textron Inc.,* No. 2:25-CV-01032-MWC-E, 2025 WL 2828109, at *5 (C.D. Cal. Sept. 24, 2025) (dismissing for lack of personal jurisdiction CIPA claim against non-California-based website operator).

For example, in *Shah v. Hilton Worldwide Holdings Inc.,* No. 25-CV-01018-EKL, 2025 WL 1683577 (N.D. Cal. June 11, 2025), the Northern District of

California faced a situation similar to that presented here. In *Shah*, the defendant—a non-California-based holding company—operated the website, www.hilton.com and was sued, under CIPA, for allegedly installing on the site certain technologies. *Id.* at *1. The defendant moved to dismiss for lack of personal jurisdiction arguing that, as a holding company, it is "a parent company of many Hilton companies, but [it] does not operate hotels[,]" "is not registered to do business in California and does not have an office or mailing address in California." *Id.*

The Northern District of California agreed with the defendant and dismissed the case for lack of personal jurisdiction. In doing so, the court distinguished *Briskin*, stating that, unlike in *Briskin*, the plaintiff there had not alleged that "the defendant targeted a California consumer and then used the consumer's data to further target businesses in California." *Id.* at *2. Additionally, the court noted that, unlike in *Briskin*, the defendant there was not alleged to have "collect[ed] data directly" but, instead, to have included on the website "resources and programming scripts from *third parties* that enable *those parties* to place cookies and other similar tracking technologies on visitors' browsers and devices." *Id.* (emphasis in original). In other words, "[t]here [were] no allegations that Hilton Holdings knew the location of particular devices." *Id.*

The same is true here. Plaintiff does not allege that AFHI operates in California. Plaintiff does not allege that AFHI collected the information at issue directly from Site visitors. And Plaintiff does not allege that AFHI knew the location of her or any other device before it was used to visit the Site.

Finally, the Court should not permit jurisdictional discovery, because "Plaintiff is unlikely to discover further facts related to Defendant's contacts with California that will change the calculus as to whether Plaintiff's claims "arise out of" or "relates to" such contacts." *Cline v. Dan-Bunkering (Am.), Inc.*, No. 24-CV-2081-JES-JLB, 2025 WL 1194076, at *5 (S.D. Cal. Apr. 23, 2025).

## III. <u>CONCLUSION</u>

Based on the foregoing, AFHI respectfully asks the Court to dismiss Plaintiff's FAC, with prejudice.

Respectfully submitted,

Dated: November 19, 2025

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/ Matthew D. Pearson*
MATTHEW D. PEARSON

*Attorneys for Defendant*
Accident Fund Holdings, Inc., d/b/a
www.compwestinsurance.com

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Accident Fund Holdings, Inc., certifies that this brief contains 4,508 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 19, 2025

By: */s/ Matthew D. Pearson*

MATTHEW D. PEARSON