Matthew D. Pearson (SBN 294302)
mpearson@fkks.com
FRANKFURT KURNIT KLEIN + SELZ PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (310) 579-9650

*Attorneys for Defendant*
ACCIDENT FUND HOLDINGS, INC.
(erroneously sued as ACCIDENT FUND HOLDINGS, INC., D/B/A WWW.COMPWESTINSURANCE.COM)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EMILY RODRIGUEZ, individually and on behalf of all other similarly situated,

Plaintiffs,

v.

ACCIDENT FUND HOLDINGS, INC., d/b/a www.compwestinsurance.com,

Defendant.

Case No.: 2:25-cv-03920-SK

**DEFENDANT'S NOTICE AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

[Filed Concurrently with Declarations of Matthew D. Pearson and [Proposed] Order]

Action Filed: March 24, 2025
Action Served: April 3, 2025
Action Removed: May 2, 2025
FAC Filed: July 14, 2025
SAC Filed: January 28, 2026

**DATE: APRIL 29, 2026**
**TIME: 10:00 A.M.**
**COURTROOM: 540, 5TH FLOOR**

## NOTICE OF MOTION

**NOTICE IS HEREBY GIVEN** that on April 29, 2026, at 10:00 a.m. in Courtroom 540, 5th Floor of the United States District Court, Central District of California, located at 255 E. Temple Street, Los Angeles, California 90012, Defendant Accident Fund Holdings, Inc. (erroneously sued as Accident Fund Holdings, Inc. dba www.compwestinsurance.com) ("AFHI") will and hereby does move, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing with prejudice Plaintiff Emily Rodriguez's ("Plaintiff") Second Amended Class-Action Complaint ("SAC") for failure to state a claim upon which relief can be granted.

This motion is made on the grounds that Plaintiff has failed to state against AFHI a plausible claim of invasion of privacy, whether under California's Constitution or common law because, (1) as a "tester" who actively sought out alleged privacy violations, Plaintiff had no subjective expectation of privacy when she visited the Site; (2) given that everything AFHI did complied with California law and was disclosed in its Privacy Policy, any expectation of privacy Plaintiff had was not reasonable; and (3) AFHI could not have engaged in conduct constituting an "egregious breach of social norms" if everything it did was permitted under California law.

This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Matthew D. Pearson;

the Court's file and records in this action; and such other evidence and arguments as may be made or presented at or before the hearing on this Motion.

Dated: March 5, 2026

Respectfully submitted,
**FRANKFURT KURNIT KLEIN + SELZ PC**

By: */s/ Matthew D. Pearson*
MATTHEW D. PEARSON

*Attorney for Defendant,* ACCIDENT FUND HOLDINGS, INC. (erroneously sued as Accident Fund Holdings, Inc. dba www.compwestinsurance.com)

# TABLE OF CONTENTS

I. INTRODUCTION .................................................. 1
II. PROCEDURAL POSTURE AND PLAINTIFF'S ALLEGATIONS .......... 3
III. RULE 12(B)(6) STANDARD .................................. 6
IV. ARGUMENT ................................................. 7
A. Plaintiff's Claims Are Incongruous. ....................... 7
B. Plaintiff Admits That She Did Not Expect Her Information To Be Kept Private. ... 10
C. Plaintiff Fails To Allege A Reasonable Expectation of Privacy. ....... 12
D. Plaintiff Fails to Plead the Egregious Conduct Required for Her Claims. ... 17
V. CONCLUSION ............................................... 18

# TABLE OF AUTHORITIES

TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*A.S. v. SelectQuote Ins. Servs.*,
No. 3:23-CV-02258-RBM-MSB, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ........ 11

*Abagninin v. MVAC Chemical Corp.*,
545 F.3d 733 (9th Cir. 2008) ........ 7

*In re Adobe Sys., Inc. Priv. Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) (incorporating by reference "Adobe's Privacy Policies of May 7, 2012 and December 20, 2013" because they "are referenced and quoted in the Complaint") ........ 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) ........ 6

*D'Angelo v. FCA US, LLC*,
726 F.Supp.3d 1179 (S.D. Cal. 2024) ........ 12

*Ecological Rights Found. V. Pac. Gas & Elec. Co.*,
713 F.3d 502 (9th Cir. 2013) ........ 6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 7

*Four Navy Seals v. Associated Press*,
413 F. Supp. 2d 1136 (S.D. Cal. 2005) ........ 10

*Fregosa v. Mashable, Inc.*,
No. 25-CV-01094-CRB, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025), *motion to certify appeal denied*, No. 25-CV-01094-CRB, 2026 WL 183857 (N.D. Cal. Jan. 23, 2026) ........ 8

*Gabrielli v. Haleon US Inc.*,
No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........ 17

*Gabrielli v. Motorola Mobility LLC*,
No. 24-CV-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ 17

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ........ 8, 9

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........ 12

*Hill v. National Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ........ 17

*Jacobs v. Superior Ct.*,
36 Cal. App. 3d 489 (Ct. App. 1973) ........ 10

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 9, 12

*Loder v. City of Glendale*,
14 Cal. 4th 846, 927 P.2d 1200 (1997) ........ 17

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-CV-03647-JSC, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) ........ 17

*People v. Matthews*,
112 Cal. App. 3d 11 (Ct. App. 1980) ........ 1

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 2

*Project 80's, Inc. v. City of Pocatello*,
876 F.2d 711 (9th Cir. 1988), *cert. granted, judgment vacated sub nom. City of Idaho Falls, Idaho v. Project 80's, Inc.*, 493 U.S. 1013 (1990) ........ 12

*Ramos v. Gap, Inc.*,
No. 23-CV-04715-HSG, 2024 WL 4351868 (N.D. Cal. Sept. 30, 2024) ........ 9

*Rehberg v. Paulk*,
611 F.3d 828 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012) .................................... 7

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) .................................... 1

*Rodriguez v. Culligan Int'l Co.*,
No. 25-CV-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .................................... 2

*Rodriguez v. Ink America International Group LLC*,
Case No. 25STCV15350, Order .................................... 13

*In re Rudy F.*,
117 Cal. App. 4th 1124 (2004) .................................... 10

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .................................... 8

*Smith v. Maryland*,
442 U.S. 735 (1979) .................................... 10, 12

*TBG Ins. Servs. Corp. v. Superior Ct.*,
96 Cal. App. 4th 443 (2002) .................................... 13

*In re U.S. for Ords. (1) Authorizing Use of Pen Regs. & Trap & Trace Devices*,
515 F. Supp. 2d 325 (E.D.N.Y. 2007) .................................... 7

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .................................... 7

*United States v. Gottesfeld*,
319 F. Supp. 3d 548 (D. Mass. 2018) .................................... 8

*United States v. Rosenow*,
50 F.4th 715 (9th Cir. 2022) .................................... 8

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021) .................................... 8

*Woods v. U.S. Bank N.A.*,
831 F.3d 1159 (9th Cir. 2016) .................................... 6

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 8, 12

**Statutes**

Cal. Civ. Code § 1798.100, *et seq.* ........ 13, 14

Cal. Civ. Code § 1798.140(v)(1) ........ 18

Cal. Penal Code § 638.50(b)-(c), 638.51 ........ 7

California Consumer Privacy Act ........ 3

California Consumer Privacy Act ........ 13

California Penal Code § 638.51 ........ *passim*

California Privacy Rights Act of 2020 ........ 14

CCPA ........ 13, 14, 18

CPRA ........ 14

Privacy Act ........ 18

**Other Authorities**

*i.e.*, "Demographic Information" ........ 6

*i.e.*, "User Input Data" ........ 6

Fourth Amendment ........ 7, 8

California Constitution ........ 7

Defendant's website—www.compwestinsurance.com ........ 1

Defendant's Website at:
https://www.compwestinsurance.com/careers/; ........ 4, 6

https://globalprivacycontrol.org/implementation (last visited: February 11, 2026) ........ 11

RULE 12(B)(6) ........ 6

, www.afgroup.com ........ 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Every invasion-of-privacy claim, whether asserted under California's Constitution or its common law, requires—at minimum—that the plaintiff have "an actual (subjective) expectation of privacy…that society is prepared to accept as reasonable." *People v. Matthews*, 112 Cal. App. 3d 11, 21 (Ct. App. 1980).

The reason for this is simple. There can be no invasion of privacy where the plaintiff herself does not believe the information in question is or should be private. Just as there can be no actionable invasion-of-privacy claim where the plaintiff's expectation of privacy is unreasonable.

Here, Plaintiff Emily Rodriguez ("Plaintiff") has alleged neither a subjective expectation of privacy nor an objectively reasonable one. Plaintiff is a "tester." She has admitted that she went to Defendant's website—www.compwestinsurance.com (the "Site")—looking for and, in fact, expecting to find the types of technologies she now claims violated her privacy. Indeed, "testing" websites for alleged CIPA violations is her stated *modus operandi*, having filed at least thirty-seven complaints against website operators for violating section 638.51 prior to filing this action. [*See* Dkt. No. 17-4 (listing cases filed by Plaintiff).] That is not an invasion of privacy; it is a business model. As one court put it, "a tester that visit[s] and enter[s] information into [a] website expecting the information to be accessed, recorded, and disclosed…cannot claim an injury when her expectations [a]re ultimately met." *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025). When Plaintiff visited the Site, she did not expect that her information would be kept private; she expected that the Site would function exactly as it did, thereby negating the possibility of an invasion-of-privacy claim in the first place.

But even if Plaintiff did have a subjective expectation of privacy in the information collected from the Site, her claim would still fail because her subjective

expectation would not be objectively reasonable. "Courts have consistently held that internet users have no [reasonable] expectation of privacy in their IP addresses" or in "the IP addresses of the websites they visit," *Rodriguez v. Culligan Int'l Co*., No. 25-CV-00225-AJB-KSC, 2025 WL 3064113, at *4 (S.D. Cal. Nov. 3, 2025). They likewise have held that a plaintiff has no reasonable expectation of privacy in information about the device she is using at the time she visits a website or the products she viewed while on the website. *Popa v. Microsoft Corp*., 153 F.4th 784, 786 (9th Cir. 2025) (finding no injury-in-fact where the plaintiff alleged the third parties collected, among other things, "the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website" and the products viewed). This means that, of the twelve categories of information Plaintiff claims the Site allowed third parties to collect, Plaintiff, by law, had no reasonable expectation of privacy in nine of them: (1) browsing history (*i.e.*, that Plaintiff visited the Site), (2) visit history (*i.e.*, how often Plaintiff visited the Site), (3) website interaction (*i.e.*, what Plaintiff did on the Site), (4) referring URL (*i.e.*, how Plaintiff ended up on the Site, including through a Google search), (5) session information (*i.e.*, what Plaintiff did during a specific visit to the Site), (6) geolocation date (*i.e.*, the location gleaned from Plaintiff's IP address at the time she visited the Site), (7) user identifiers (*i.e.*, her device's cookie ID), (8) device information (*i.e.*, "type…(mobile, tablet, desktop), operating system, and browser type"), and (9) shopping behaviors (*i.e.*, "products viewed or added to shopping carts"). [Dkt. No. 29, ¶ 22.]

As to the remaining three categories of information—"demographic information," "interests and preferences," and "user inputted data"—they consist of information either not collected from the Site or not collected about Plaintiff. For example, Plaintiff admits that demographic information and interests and preferences are ***inferences*** drawn from the non-private information collected from the Site. [*See id*. (describing "Demographic Information" as "[i]nferences…based

on browsing habits and interactions with Website's content" and "Interests and Preferences" as "[i]nsights…based on the types of Website content viewed, products searched for, or topics engaged with").] And, with regard to "user inputted data," Plaintiff does not allege to have inputted any data into the Site; therefore, even if that information could give rise to a reasonable expectation of privacy, it does not do so here.

Perhaps most importantly, Plaintiff could not have had a reasonable expectation of privacy in the information at issue because California law ***expressly authorizes AFHI to collect and disclose that information so long as Plaintiff does not exercise her right to opt out, which she did not do here***. To hold otherwise would be to find that in enacting the California Consumer Privacy Act, the California legislature expressly authorized companies, like AFHI, to violate the rights of California citizens. That simply cannot be the case.

To state a viable invasion-of-privacy claim, Plaintiff must allege that she had a subjective expectation of privacy in the information collected, that was objectively reasonable—something she has not done and cannot do. Her SAC should be dismissed in its entirety and with prejudice.

## II. PROCEDURAL POSTURE AND PLAINTIFF'S ALLEGATIONS

Plaintiff has now filed three complaints in this action, and with each complaint filed, Plaintiff has made new allegations. For example, in her original complaint, filed on March 24, 2025 in the Superior Court of California, County of Los Angeles, Plaintiff asserted a single cause of action—violation of California Penal Code § 638.51—based on the use of a single technology: Meta Pixel. [*See generally* Dkt. No. 1-1.] She also alleged, as the basis for her visiting the Site, that she was "(1) genuinely interested in the goods, services, and information available on Defendant's website, and (2) a consumer privacy advocate who works as a 'tester' to ensure that companies abide by the privacy obligations imposed by California law." [*Id.* at ¶ 19.] Of course, as an "insurance conglomerate" [*id.* at ¶

11], that provides workers' compensation coverage, the Site does not offer "goods" or "services" directly to consumers.

After AFHI filed its first motion to dismiss, Plaintiff filed her amended complaint. [Dkt. No. 13.] While Plaintiff still only asserted a single cause of action for violation of California Penal Code § 638.51, she now identified other technologies, in addition to Meta's, running on the site, including Basis and LinkedIn (collectively, the "Third Parties"). [*See generally id.*] She also claimed that she visited the Site because she was "(1) genuinely interested in an employment opportunity with Defendant, which is advertised on Defendant's Website at: https://www.compwestinsurance.com/careers/; and (2) a consumer privacy advocate who works as a "tester" to ensure that companies abide by the privacy obligations imposed by California law." [*Id.* at ¶ 14.] She made no mention of her employment interests in the original complaint [*see generally* Dkt. No. 1-1], and it would be odd to actively seek out reasons to sue a company by whom you would like to be employed.

After the Court dismissed Plaintiff's amended complaint, Plaintiff filed a second amended complaint. [Dkt. No. 29.] In her second amended complaint, Plaintiff entirely abandoned her claim under California Penal Code § 638.51, choosing instead to assert claims for invasion of privacy and intrusion upon seclusion under both California's common law and Constitution. [*See generally id.*] She did not abandon, however, her assertion that she visited the Site because she was "(1) genuinely interested in an employment opportunity with Defendant, which is advertised on Defendant's Website at: https://www.compwestinsurance.com/careers/; and (2) a consumer privacy advocate who works as a 'tester' to ensure that companies abide by the privacy obligations imposed by California law." [*Id.* at ¶ 84.]

Although Plaintiff does not identify any concrete injury suffered by her as a result of anything AFHI did or did not do, she claims that her privacy has been invaded because the Third Parties may have collected her:

- **Browsing History**: Information about the webpages a Website user visits, including the URLs, titles, and keywords associated with the webpages viewed, time spent on each page, and navigation patterns;
- **Visit History**: Information about the frequency and total number of visits to the Website;
- **Website Interactions**: Data on which links, buttons, or ads on the Website that a user clicks;
- **User Input Data**: The information the user entered into the Website's form fields, including search queries, the user's name, age, gender, email address, location, and/or payment information;
- **Demographic Information**: Inferences about age, gender, and location based on browsing habits and interactions with Website's content;
- **Interests and Preferences**: Insights into user interests based on the types of Website content viewed, products searched for, or topics engaged with;
- **Shopping Behavior**: Information about the Website products viewed or added to shopping carts;
- **Device Information**: Details about the Website user's device, such as the type of device (mobile, tablet, desktop), operating system, and browser type;
- **Referring URL**: Information about the Website that referred the user to the Website;
- **Session Information**: Details about the user's current Website browsing session, including the exact date and time of the user's session, the session duration and actions taken on the Websites during that session;

- **User Identifiers**: A unique ID that is used to recognize and track a specific Website user across different websites over time; and
- **Geolocation Data**: General location information based on the Website user's IP address or GPS data, if accessible.

[Dkt. No. 29, ¶ 22.]

The information that Plaintiff claims the Third Parties collected falls into one of three categories: (1) information created by Plaintiff (*i.e.*, "User Input Data"); (2) information created by the Third Parties (*i.e.*, "Demographic Information" and "Interests and Preferences"); and (3) information automatically generated as a result of Plaintiff visiting the Site (*i.e.*, all other categories listed). Of course, Plaintiff does not allege to have inputted any data into the Site, and her privacy could not have been invaded by information created by the Third Parties on their own.

## III. <u>RULE 12(B)(6) STANDARD</u>

A court must dismiss a complaint for failure to state a claim if the complaint does not allege "sufficient facts" under a "cognizable legal theory." *See Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). Sufficient factual matter only exists if the facts alleged state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When ruling on a motion to dismiss, courts presume the truth of all well-pleaded facts. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013). However, no presumption of truth attaches to "threadbare recitals." *Iqbal*, 556 U.S. at 678.

A trial court's discretion to dismiss a complaint without leave to amend is "particularly broad where the plaintiff has previously amended its complaint." *Ecological Rights Found. V. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (internal quotations omitted). Here, dismissal without leave to amend is

appropriate given Plaintiff's "repeated failure to cure deficiencies by previous amendment." *Abagninin v. MVAC Chemical Corp.*, 545 F.3d 733 (9th Cir. 2008).

# IV. ARGUMENT

## A. Plaintiff's Claims Are Incongruous.

The claims asserted by Plaintiff thus far in this litigation—violation of California Penal Code § 638.51, invasion of privacy, and intrusion upon seclusion—are directly at odds with one another. A claim under Section 638.51 requires a plaintiff to allege, among other things, that a "device or process" collected "dialing, routing, addressing, or signaling information" ("DRAS Information") but not the "contents of a communication." Cal. Penal Code § 638.50(b)-(c), 638.51. A claim for invasion of privacy requires the plaintiff to allege, among other things, an invasion of a reasonable expectation of privacy. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (noting that for an invasion-of-privacy claim under either the California Constitution or common law, the plaintiff must have "a reasonable expectation of privacy"). On their face, the claims do not appear to conflict, but, upon closer examination, it becomes clear that they are mutually exclusive.

It is well-settled law that "Fourth Amendment protections…apply…[when] the person invoking the protection…ha[s] an objectively reasonable expectation of privacy in the place searched or item seized." *Rehberg v. Paulk*, 611 F.3d 828, 842 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012). It is also well-settled law that pen registers and trap-and-trace devices do not implicate the Fourth Amendment. *See, e.g.*, *United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008) ("[U]se of a pen register (a device that records numbers dialed from a phone line) does not constitute a search for Fourth Amendment purposes."). This is so because pen registers and trap-and-trace devices do not collect information in which people have reasonable expectation of privacy. *See In re U.S. for Ords. (1) Authorizing Use of Pen Regs. & Trap & Trace Devices*, 515 F. Supp. 2d 325, 336 (E.D.N.Y. 2007) ("[P]en registers

fall outside the province of the Fourth Amendment because phone users do not have a reasonable expectation of privacy in the numbers they dial to connect a phone call.”). They, definitionally, only collect DRAS Information and, even in the internet context, DRAS Information is not private. *See, e.g.*, *United States v. Rosenow*, 50 F.4th 715, 738 (9th Cir. 2022) (finding that “a defendant has no expectation of privacy in IP address or basic subscriber information because internet users should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information” and “this basic information differs from the content of email messages and other private communications, which...the government does need a warrant to search.”) (quoting *Forrester*, 512 F.3d at 511) (cleaned up); *United States v. Soybel*, 13 F.4th 584, 587 (7th Cir. 2021) (holding that the use of a pen register to identify IP information is not a “search” under the Fourth Amendment because there is no expectation of privacy in captured routing information); *United States v. Gottesfeld*, 319 F. Supp. 3d 548, 563-64 (D. Mass. 2018) (noting “the growing consensus that the collection of IP address information . . .does not violate a defendant’s Fourth Amendment rights” because the defendant has no expectation of privacy in IP addresses and the collection of IP addresses and port numbers does not constitute “content”).

As applied to the internet, courts have interpreted DRAS Information to include: (1) a user’s IP address (*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024)); (2) cookie IDs (*In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014)); (3) “device identifiers,” (*Fregosa v. Mashable, Inc.*, No. 25-CV-01094-CRB, 2025 WL 2886399, at *5 (N.D. Cal. Oct. 9, 2025), *motion to certify appeal denied*, No. 25-CV-01094-CRB, 2026 WL 183857 (N.D. Cal. Jan. 23, 2026)); (4) geolocation data (*Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1085 (N.D. Cal. 2018), *on reconsideration*, No. 17-CV-02264-JSC, 2018 WL 3068248 (N.D. Cal. June 21, 2018)); and (5) “the url of the webpage the individual

was viewing," *id,*. at 1084. *See also Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 n. 9 (N.D. Cal. 2023) (finding that "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions[] are…record information"). In other words, nearly all of the information identified by Plaintiff as being collected by third parties from the Site is DRAS Information and, as such, cannot support an invasion of privacy claim. [Dkt. No. 29, ¶ 22 (identifying as the information collected from the Site webpages viewed, frequency of visits, device information and identifiers, location information, etc.).]

In fact, Plaintiff only identifies one category of information that potentially is not DRAS Information—the "User Input Data" [*id.*]—but even then, she does not allege to have provided any such information to the Site or that such information was collected by the Third Parties. *Ramos v. Gap, Inc.*, No. 23-CV-04715-HSG, 2024 WL 4351868, at *6 (N.D. Cal. Sept. 30, 2024) (dismissing complaint where "Plaintiff d[id] not allege that he ever entered any information into…Defendant's website" and "offer[ed] no detail about his use of Defendant's website").

In truth, Plaintiff has pleaded herself out of court. She took her shot at asserting a claim under Section 638.51, motivated, presumably, by its $5,000 statutory-damages provision. The Court, being well-versed in how pen-register and trap-and-trace devices actually function, correctly rejected that claim. She cannot now pivot to a claim that requires the exact opposite elements. She cannot plead on the one hand that AFHI utilized a pen register to collect information that by its definition is not private information, and then utilize the exact same facts to plead that AFHI invaded her privacy. Plaintiff has not stated and cannot state a claim for invasion of privacy or intrusion upon seclusion. Her SAC should be dismissed.

**B. Plaintiff Admits That She Did Not Expect Her Information To Be Kept Private.**

Even beyond the inherent incongruity of Plaintiff's causes of action, Plaintiff's claims for invasion of privacy fail because she admits that she never expected "her" information to be kept private in the first place.

A threshold issue for every invasion-of-privacy claim is whether the plaintiff, herself, had an expectation of privacy in the information at issue. *See Jacobs v. Superior Ct*., 36 Cal. App. 3d 489, 493 (Ct. App. 1973) ("The basic test as to whether there has been an unconstitutional invasion of privacy is whether the person has exhibited a subjective expectation of privacy which is objectively reasonable[.]"); *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1146 (S.D. Cal. 2005) ("To prevail on the first element of the tort of intrusion upon seclusion, a plaintiff must show: (a) an actual, subjective expectation of seclusion or solitude, and (b) that the expectation was objectively reasonable.").

While "there is no set formula" for determining whether a plaintiff has a subjective expectation of privacy, *In re Rudy F*., 117 Cal. App. 4th 1124, 1132 (2004), the ultimate question is whether the plaintiff "has shown that 'he s[ought] to preserve [something] as private'", *Smith v. Maryland*, 442 U.S. 735, 740 (1979). Plaintiff here has shown the opposite.

Plaintiff has admitted in all three of her complaints that she visited the Site, in part, "to ensure that companies," like AFHI, "abide by the privacy obligations imposed by California law." [Dkt. No. 29, ¶ 84.] Although Plaintiff does not identify what these "privacy obligations" are, her past actions make it clear. Prior to filing this lawsuit, she filed at least 37 complaints against website operators like AFHI for allegedly unlawfully using or installing a pen register or trap and trace device—the very statute under which she brought her first claims against AFHI. The only explanation for Plaintiff's litigation history is that she goes from website

to website searching for alleged violations. That is not how people "seek to preserve something as private."

On top of that, as a self-proclaimed enforcer of the "privacy obligations imposed by California law," [Dkt. No. 29, ¶ 84], one would assume that Plaintiff would be aware of mechanisms to prevent the type of data sharing about which she now complains. For example, the Site's Privacy Policy, to which Plaintiff cites repeatedly in the SAC, expressly provides that "[y]ou may exercise your right to submit a request to opt-out of the sale of your personal information by clicking on the Do Not Sell My Personal Information link on the bottom of our homepage, www.afgroup.com. After clicking the link, you will be directed to a webform where you can submit your contact information." [Declaration of Matthew D. Pearson, ¶ 3, Ex. A (AFHI's Privacy Policy), p. 8.][1] Yet nowhere in the SAC does Plaintiff claim to have made such a request.

As another example: the Global Privacy Control ("GPC") "is a browser-level signal, maintained either by a browser or browser extension, that a user or privacy-focused technology can set…that [automatically] selects the Do Not Sell preference on a site on behalf of a user." *See* https://globalprivacycontrol.org/implementation (last visited: February 11, 2026).] Plaintiff does not allege to have implemented the GPC—something one would expect a consumer who has sued 37 website operators to do if she truly expected her information to remain private.

And finally, numerous browsers have emerged that prevent the collection and sharing of the exact type of data Plaintiff complains was collected here. They

[1] AFHI has attached as Exhibit A to the concurrently filed Declaration of Matthew D. Pearson a true and correct copy of AFHI's Privacy Policy. The Court can consider AFHI's Privacy Policy when deciding this Motion because Plaintiff repeatedly references the Privacy Policy throughout the SAC, thereby incorporating by reference. *See, e.g., A.S. v. SelectQuote Ins. Servs.,* No. 3:23-CV-02258-RBM-MSB, 2024 WL 3881850, at *4 (S.D. Cal. Aug. 19, 2024) ("[T]he Court will incorporate Defendant's privacy policy by reference."); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1207 (N.D. Cal. 2014) (incorporating by reference "Adobe's Privacy Policies of May 7, 2012 and December 20, 2013" because they "are referenced and quoted in the Complaint").

include Tor Browser, Brave, DuckDuckGo, LibreWolf, and others. One would assume a privacy-driven person like Plaintiff to use such a browser, yet nowhere in the SAC does she claim to have done so.

As the Ninth Circuit has noted, "[p]rivacy is inherently an individual matter; it is difficult to violate a person's privacy unless that person wishes to be let alone." *Project 80's, Inc. v. City of Pocatello*, 876 F.2d 711, 714 (9th Cir. 1988), *cert. granted, judgment vacated sub nom. City of Idaho Falls, Idaho v. Project 80's, Inc.*, 493 U.S. 1013 (1990). Plaintiff here did not "wish[] to be let alone." Quite the opposite. She was on the Site with the stated purpose of identifying third-party technologies collecting benign, anonymous information so that she could file another lawsuit. Her SAC should be dismissed.

**C. <u>Plaintiff Fails To Allege A Reasonable Expectation of Privacy.</u>**

Even if Plaintiff did harbor some subjective expectation that the information collected while she was visiting the Site would remain private, this expectation is not "one that society is prepared to recognize as 'reasonable.'" *Smith*, 442 U.S. at 743 (citing *Katz v. United States*, 389 U.S. 347 (1967)).

Several courts have already found that there is no reasonable expectation of privacy in the type of information Plaintiff claims was collected and disclosed here. *See, e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d at 1108-09 (finding no reasonable expectation of privacy in URLs that reveal basic information about a user); *D'Angelo v. FCA US, LLC*, 726 F.Supp.3d 1179, 1206 (S.D. Cal. 2024) (finding no invasion of privacy based on the collection of user's account name, IP address, geographic location, and site the user previously visited); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (finding no reasonable expectation of privacy in "generalized location" information).

But because "privacy is an evolving area of law that is inherently tied to community standards," *Katz-Lacabe*, 668 F. Supp. 3d at 948, courts look to "'the customs of the time and place" and "habits of [the plaintiff's] neighbors and fellow

citizens" when determining whether and to what extent a privacy expectation is reasonable. *TBG Ins. Servs. Corp. v. Superior Ct*., 96 Cal. App. 4th 443, 450 (2002) (quoting *Hill v. National Collegiate Athletic Assn*., 7 Cal. 4th 1, 37 (1994)).

Californians, through their elected representatives, made clear their internet-based privacy expectations when they enacted the California Consumer Privacy Act ("CCPA") in June 2018. Cal. Civ. Code § 1798.100, *et seq.* As the first comprehensive state data privacy law, the CCPA provided Californians, including Plaintiff, the right to opt out of the sale of their personal information, which included, among other things, "identifiers," like IP addresses, and "commercial and behavioral information," like purchasing history, browsing history, and online activity. *See id.* at § 1798.120(a)(1) ("A consumer shall have the right, at any time, to direct a business that sells or shares personal information about the consumer to third parties not to sell or share the consumer's personal information."); *see also id.* at § 1798.140(v)(1) (defining "personal information" as including, among other things, "Internet Protocol address" and " [i]nternet or other electronic network activity information, including, but not limited to, browsing history, search history, and information regarding a consumer's interaction with an internet website application, or advertisement"). Simply put, the CCPA empowered Plaintiff to tell AFHI not to do exactly what she claims AFHI did here: share her browsing-related information with the Third Parties.

But the right to opt out of the sale of information is not a prohibition against it. In fact, it is the exact opposite. By allowing Californians to opt out of the sale of information, the California Legislature inherently recognized that companies were selling information collected over the internet and expressly permitted them to continue doing so unless and until they received an opt out request. [*See* Pearson Declaration. ¶ 4, Ex. B (*Rodriguez v. Ink America International Group LLC*, Case No. 25STCV15350, Order re: Motion for Judgment on the Pleadings), p. 7 ("CCPA presumes that [tracking] tools will be employed so long as the proper procedures

such as notice, opt-out, and deletion are followed.”). The California Legislature, therefore, identified the point at which Californians had a reasonable expectation of privacy in their internet activity: when they exercised their opt-out rights.

Two years later, California citizens themselves reiterated their internet-based privacy expectations when they passed Proposition 24, also know at the California Privacy Rights Act of 2020 (“CPRA”), which amended and built upon the CCPA. California Privacy Rights Act of 2020 (codified at Cal. Civ. Code § 1798.100 *et seq*.). But while the CPRA strengthened Californians’ privacy protections, it left untouched the CCPA’s opt-out regime. Thus, when the California legislature enacted the CCPA in 2018 and, again, when the California public voted to pass the CPRA in 2020, public sentiment was clear: internet-based tracking, like that alleged here, is permissible unless and until the user opts out. That is the “custom of the time” and reflects the “habits of [plaintiff’s] neighbors and fellow citizens.”

Implicitly acknowledging that California law does not support her alleged expectation of privacy, Plaintiff cites to statements in AFHI’s Privacy Policy, claiming that *those* statements made her expectation reasonable. [Dkt. No. 29, ¶¶ 26-36.] For example, Plaintiff quotes the statement in AFHI’s Privacy Policy that AFHI is “dedicated to handling your personal information with care and keeping it secure,” [*id.* at ¶¶ 3, 26], and then alleges that this statement “is false” because AFHI “enabl[ed] [the] Third Parties” to collect her browsing information, [*id.* at ¶ 5].

Plaintiff, apparently, has failed to read any other statement in AFHI’s Privacy Policy. AFHI details in its Privacy Policy the information it collects, the information it sells or shares with third parties, and how a user, like Plaintiff, can stop AFHI from doing so. The first section of AFHI’s Privacy Policy, titled “**THE INFORMATION WE COLLECT**,” includes an entire section of the information AFHI collects about its website visitors through “**Automated Means.**” [Pearson Decl., ¶ 3, Ex. A, p. 2.] It states, in no uncertain terms, that:

> We and third-party online advertising and web analytic companies may use cookies, pixel tags, or similar technologies to automatically collect information about your online activity, browser and device (including your IP address) as well as collect information when you interact with our website(s) or other AF Group offerings.

[*Id.* at ¶ 3, Ex. A., p. 2]

The third section of AFHI's Privacy Policy, titled **"INFORMATION SPECIFIC TO OUR WEBSITE(S),"** goes into even greater detail about the information AFHI collects from Site visitors, how it does so, and with whom it shares that information:

> [W]hile you are visiting or navigating our site, our web server may collect anonymous, non-personally identifiable information from you, such as your domain name, IP address, and the type of browser you are using. Such information is gathered for statistical purposes and may be used to better allow us to understand our users' interests and preferences. This information will not be disclosed to anyone outside AF Group unless necessary to better meet your needs, to offer AF Group products or services to you, or allowed or required by law.
>
> Additionally, when you visit or use our site, we may place a "cookie" on your browser. "Cookies" are small pieces of information transferred from our website to your hard drive that contain a unique identifier recognized by our web server. They allow us to track usage and facilitate your access to and use of this site by allowing your experience on our website to be customized and permit us to authenticate your identity as a returning user when you browse portions of the website restricted to registered users.
>
> Our "cookies" do not track your activity on third party sites. We do not use "cookies" to gather personal information about you and we do not link them to identifiable information, such as policy number. The "cookies" only enable someone to use our website more

> easily. You do not have to accept "cookies" from our site, but if you refuse a "cookie," you may not be able to browse the restricted areas of our website for security reasons.
>
> Our third-party vendors, such as Google, LinkedIn, Facebook, and others use first-party cookies (such as Google Analytics, Linkedin Insights, Facebook Pixel and Centro Basis Retargeting cookies) and third-party cookies or other third-party identifiers together to gather demographic and behavioral information to better serve our users.

[*Id*. at ¶ 3, Ex. A., pp. 3-4.]

AFHI's Privacy Policy even provides links to policies of the Third Parties, including Google, LinkedIn, Facebook, and Centro, the very Third Parties on which Plaintiff bases her claims here. [*Id*. at ¶ 3, Ex. A., p. 4.]

Finally, AFHI's Privacy Policy explains to Site users, like Plaintiff, how they can prevent AFHI from selling the exact information Plaintiff identifies here. It states:

> You may exercise your right to submit a request to opt-out of the sale of your personal information by clicking on the Do Not Sell My Personal Information link on the bottom of our homepage, http://www.afgroup.com/www.afgroup.com. After clicking the link, you will be directed to a webform where you can submit your contact information.

[*Id*. at ¶ 3, Ex. A., p. 8.]

California law is clear: companies, like AFHI, can collect, share, and sell the type of information about which Plaintiff complains here unless and until they receive an opt-out notice. AFHI's Privacy Policy is clear: AFHI collects, shares, and sells the type of information about which Plaintiff complains here unless and

until it receives an opt-out notice. And Plaintiff's allegations are clear: she did not opt out. [*See generally* Dkt. No. 29.]

Had Plaintiff submitted an opt-out request and AFHI ignored it, this might be a different case. Indeed, several courts have recently found reasonable expectations of privacy where the plaintiff claims the defendant engaged in post-opt-out tracking. *See, e.g., Gabrielli v. Haleon US Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368, at *9 (N.D. Cal. Aug. 29, 2025) (refusing to dismiss invasion-of-privacy claims where Plaintiff alleged the defendant continued to track her after she opted out); *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025) (same); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-CV-03647-JSC, 2025 WL 3268404, at *5 (N.D. Cal. Nov. 24, 2025) (same).

But that is not what Plaintiff alleges. She claims that AFHI violated her privacy because AFHI collected her browsing activity while she was on the Site—conduct that is both authorized by California law and consistent with AFHI's Privacy Policy. Plaintiff has no claim for invasion of privacy. Her SAC must be dismissed.

### D. <u>Plaintiff Fails to Plead the Egregious Conduct Required for Her Claims.</u>

"No community could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to a cause of action for invasion of privacy." *Hill*, 7 Cal. 4th at 37. This is why, to be actionable, "invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Id*. In fact, it is the Court's duty to "weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant." *Loder v. City of Glendale*, 14 Cal. 4th 846, 893, 927 P.2d 1200, 1230 (1997).

The Court should "weed out" Plaintiff's claims here for several reasons. **First**, Plaintiff fails to identify in the SAC a single injury suffered by her as a result of AFHI's conduct. She does not claim embarrassment, anxiety, fraudulent activity, or any of the other maladies often associated with data disclosure. For both claims, she merely states: "Plaintiff has been damaged by Defendant's invasion of her privacy and is entitled to just compensation, including monetary damages." [Dkt. No. 29, ¶¶ 120, 130.] That is not an allegation; it is a legal conclusion.

**Second**, even if the Plaintiff could allege some type of injury suffered, that allegation would still be insufficient because none of the information collected and disclosed by AFHI is sufficiently personal (let alone personal at all) to render such an injury reasonable. Plaintiff claims that AFHI allowed the Third Parties to collect her "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data." [Dkt. No. 29, ¶¶ 119, 125.] With the exception of "user input data," which Plaintiff does not allege she even provided, all of that information is expressly covered by the CCPA, *see* Cal. Civ. Code § 1798.140(v)(1) (defining "personal information"), meaning California has determined that collection and disclosure of that information is entirely legal absent an opt-out request, *id.* at § 1798.120(a)(1). Surely, Plaintiff cannot legitimately contend that the California legislature authorized under the CCPA conduct that qualifies as an "egregious breach of…social norms." Plaintiff's SAC should be dismissed.

## V. <u>CONCLUSION</u>

Plaintiff has now had three opportunities to impose liability upon AFHI. She tried to do so under the California Invasion of Privacy Act, and, when that did not work, she pivoted to California's Constitution and common law. But, at a certain point, enough is enough. California law expressly authorizes AFHI to do what it

did in this case, and complying with the law is not now, nor has it ever been, an "egregious breach of social norms." Plaintiff's SAC should be dismissed in its entirety and with prejudice.

Dated: March 5, 2026

Respectfully submitted,
**FRANKFURT KURNIT KLEIN + SELZ PC**

By: *_/s/ Matthew D. Pearson_*
MATTHEW D. PEARSON

*Attorney for Defendant,* ACCIDENT FUND HOLDINGS, INC. (erroneously sued as Accident Fund Holdings, Inc. dba www.compwestinsurance.com)