**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
David W. Reid, Bar No. 267382
dreid@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

**UNITED STATE DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EMILY RODRIGUEZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ACCIDENT FUND HOLDINGS, INC., a Michigan corporation, d/b/a WWW.COMPWESTINSURANCE.COM,

Defendant.

Case No. 2:25-cv-03920-SK

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Date: April 29, 2026
Time: 10:00 a.m.
Courtroom: 540
Judge: Hon. Steve Kim

# TABLE OF CONTENTS

**Page(s)**


I. ARGUMENT ..... 1

A. The Invasion of Privacy and Intrusion Upon Seclusion Claims Are Plausibly Alleged in the Second Amended Complaint. ..... 1

1. Deceit Is a "Plus" Factor that Establishes Both a Reasonable Expectation of Privacy and Highly Offensive Infringement. ..... 1

2. The SAC Plausibly Alleges that Plaintiff Had a Reasonable Expectation of Privacy. ..... 3

a. The Right to Privacy Encompasses the Individual's Control of Information Concerning the Individual. ..... 3

b. Information Including Identifiers, Internet Activity Information Including Browsing History, and Geolocation Data Constitute a Consumer's Personal Information in California. ..... 4

c. Anonymous Speech Has Long Been Recognized in the United States. ..... 5

d. The Ninth Circuit Recognizes that a Website Visitor Communicates with a Website and Sends Messages to a Website. ..... 5

e. The Website Has Embedded Pixels or Third-Party Cookies to Surveil Plaintiff and Other Users of the Website Including When They Visit Other Websites and Build Profiles. ..... 6

f. Defendant Violated Its Statutory Duties to Disclose Its Personal Information Gathering Practices Via a Conspicuous Notice at Collection and to Provide Californians with the Option to Opt-Out of Collection of Personal Information for Cross-Context Behavioral Advertising. ..... 7

g. *Popa v. Microsoft Corp.* Is Distinguishable. ............ 10

h. *Rodriguez v. Culligan Int'l Co.* Is Distinguishable. ............ 11

3. Plaintiff's "Tester" Status Does Not Preclude Plaintiff From Personally Holding an Expectation of Privacy in Her Personal Information As a Matter of Law. ............ 13

4. The SAC Pleads Highly Offensive Conduct. ............ 14

a. Plaintiff Did Not Consent to Defendant's Conduct. ............ 18

5. Numerous Federal District Court Decisions Support Plaintiff's Position Regarding the Viability of Plaintiff's Non-Statutory Claims. ............ 20

**CERTIFICATE OF COMPLIANCE** ............ 22

# TABLE OF AUTHORITIES


**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 16

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 16

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 2, 8

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 12, 14

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 18

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 19

*Camplisson v. Adidas America, Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025) .......... 10, 12, 13

*Casillas v. Six Flags Enter. Corp.*,
812 F. Supp. 3d 1016 (C.D. Cal. 2025) (Marshall, J.) .......... 20

*D'Antonio v. Smith & Wesson Inc.*,
- F. Supp. 3d -, 2026 WL 446310 (N.D. Cal. Feb. 17, 2026) .......... 20

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) .......... 11, 21

*Deivaprakash v. Condé Nast Digital*,
2025 WL 2779193 (N.D. Cal. Sept. 30, 2025) .......... 10, 11, 12, 16

*Deivaprakash v. Condé Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) .......... 6, 7

*Dellasala v. Samba TV, Inc.*,
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) .......... 10

*Doe v. 2TheMart.com Inc.*,
140 F. Supp. 2d 1088 (W.D. Wash. 2001) ....................................................5

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ................................................................ 3, 11, 12

*Gabrielli v. Haleon US Inc.*,
- F. Supp. 3d -, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025)......... 4, 11, 12, 21

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (C.D. Cal. Dec 29, 2025)..................................................21

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026)...................................................11, 20

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)..................................................... *passim*

*Heeger v. Facebook, Inc.*,
2019 WL 7282477 (N.D. Cal. Dec. 27, 2019)....................................................2

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ...........................................................................2

*In re Anonymous Online Speakers*,
661 F.3d 1168 (9th Cir. 2011) ..........................................................................5

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)..............................................................15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) .......... *passim*

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)..............................................................19

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)..................................... 18, 19, 20

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) .............................................................................2

*In re Google Location History Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021)...............................................................2

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .................................................. 5, 14, 15

*In re Henson*,
869 F.3d 1052 (9th Cir. 2017) ...........................................................................2

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ...............................................................................2

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ...........................................................................12

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ...............................................................12

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ...............................................19, 20

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107, (9th Cir. May 31, 2022) ......................................................19

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) ............................................................................3, 4

*Krzyzek v. OpenX Technologies, Inc.*,
- F. Supp. 3d -, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026)................. 10, 11, 20

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec 4, 2025) .......................................................20

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ...............................................................2

*Mirmalek v. Los Angeles Times Communications LLC*,
2024 WL 5102709, (N.D. Cal. Dec 12, 2024).......................................................4

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ...............................................................15

*Pemberton v. Restaurant Brands Int'l, Inc.*,
2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) .............................................2, 20

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) (Def.'s Mem. ) .............................................10, 11

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (July 18, 2025)........................................................21

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ....................................................14

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ...........................................................19

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025)....................................... 11, 12, 13

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ...........................................................12

*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) ..................................... 11, 20, 21

*Semien v. Pubmatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026)........................................ 10, 11, 20

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024)............................................................18

*Shah v. Myfitnesspal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026)...............................................2, 20

*Shah v. Politico LLC*,
2026 WL 323269 (N.D. Cal. Feb. 6, 2026) ...............................................1, 2, 20

*South Dakota v. Wayfair*,
585 U.S. 162 (2018).........................................................................................2

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..........................................................................................4

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Process*,
489 U.S. 749 (1989)..........................................................................................3

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ..........................................................................12

*United States v. Staves*,
383 F.3d 977 (9th Cir. 2004) ......................................................................14, 18

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229, (N.D. Cal. Oct. 16, 2025) ....................21

*Wiley v. Universal Music Group, Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025).................2, 9, 20

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018)..........................15

*Zeichner v. Nord Security Inc.*,
2024 WL 4951261 (N.D. Cal. Dec. 2, 2024)......................7

**California Cases**

*Armenta v. Superior Court*,
61 Cal. App. 3d 584 (1976) ....................................13

*Hernandez v. Hillsides, Inc.*,
47 Cal.4th 272 (2009) ....................................... *passim*

*Hill v. National Collegiate Athletic Ass'n*,
7 Cal.4th 1 (1994) ................................ 3, 14, 17, 18

*Neary v. Regents of the University of California*,
3 Cal.4th 273 (1992) ..........................................10

*Rattagan v. Uber Techs., Inc.*,
17 Cal.5th 1 (2024) ..........................................2, 7

*Rodriguez v. Ink America Int'l Group LLC*,
No. 25STCV15350 (Cal. Super. Ct. L.A. Cty. Dec. 10, 2025) ..........10

*Sanders v. Am. Bd. Co., Inc.*,
20 Cal.4th 907 (1999) ......................................19, 20

*Shulman v. Group W Productions, Inc.*,
18 Cal.4th 200 (1998) .........................................19

**U.S. Constitution**

Article III...................................................10, 16

**Caifornia Constitution**

Constitution...................................................1, 21

**California Statutes**

Civil Code
§ 1798.100 *et seq.* ....................4
§ 1798.100(a)(1) ....................7
§ 1798.100(a)(2) ....................7
§ 1798.100(a)(3) ....................7
§ 1798.100(a) ....................7
§ 1798.100(b) ....................7
§ 1798.140....................5
§ 1798.140(v)(1)(A)....................4
§ 1798.140(v)(1)(F) ....................4
§ 1798.140(v)(1)(G)....................4
§ 1798.175....................4
California Consumer Privacy Act.................... *passim*

Penal Code
§ 631(a) ....................19
§ 638.51....................12
Invasion of Privacy Act ....................21

**Federal Rules**

Rules of Civil Procedure
Rule 9(b) ....................21
Rule 12(b)(1)....................10
Rule 12(b)(6).................... 10, 16, 21

**California Regulations**

11 C.C.R. § 7000(a) ....................7

11 C.C.R. § 7001(q) ....................7

11 C.C.R. § 7012....................7, 8

11 C.C.R. § 7012(c) ....................7

11 C.C.R. § 7012(c)(1)....................7, 8

11 C.C.R. § 7012(d) ....................8

**Other Authorities**

https://oag.ca.gov/privacy/ccpa ........................................................................ 9

Restatement (Second) of Torts, § 652D cmt. C, illus. 11 ......................................... 2

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

## I. ARGUMENT

### A. The Invasion of Privacy and Intrusion Upon Seclusion Claims Are Plausibly Alleged in the Second Amended Complaint.

"To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,]' and (2) the intrusion 'occur[red] in a manner highly offensive to a reasonable person.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ("*Facebook Tracking*") (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 286 (2009)).

"A claim for invasion of privacy under the California Constitution involves similar elements. Plaintiffs must show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious ... as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *Facebook Tracking*, 956 F.3d at 601 (quoting *Hernandez*, 47 Cal.4th at 287).

"Because of the similarity of the tests, courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601 (citing *Hernandez*, 47 Cal.4th at 287).

#### 1. Deceit Is a "Plus" Factor that Establishes Both a Reasonable Expectation of Privacy and Highly Offensive Infringement.

It is well-established that deceit can constitute a "plus" factor that establishes both a reasonable expectation of privacy and the existence of conduct that is highly offensive to a privacy interest. *See, e.g.*, *Facebook Tracking*, 956 F.3d at 602 ("Plaintiffs have plausibly alleged that Facebook set an expectation that … user data would not be collected, but then collected it anyway."); *Shah v. Politico LLC*, 2026 WL 323269, at *4

(N.D. Cal. Feb. 6, 2026) ("[Plaintiff] was immediately presented with an option to opt out of certain tracking cookies[1] upon entering the Politico site, giving rise to an expectation of privacy. In short, Politico 'set an expectation that ... user data would not be collected, but then collected it anyway.' *Facebook Tracking*. That is enough to allege an injury.'"); *Shah v. Myfitnesspal, Inc.*, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026) (citing Restatement (Second) of Torts, § 652D cmt. C, illus. 11); *Wiley v. Universal Music Group, Inc.*, 2025 WL 3654085, at *6 (N.D. Cal. Dec. 17, 2025); *Pemberton v. Restaurant Brands Int'l, Inc.*, 2025 WL 3268404, at *4 (N.D. Cal. Nov. 24, 2025); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) ("***Courts have held that 'deceit can be a kind of 'plus' factor [that is] significant in … making a privacy intrusion especially offensive***.") (emphasis added) (quoting *Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019) and citing *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019)); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1078 (N.D. Cal. 2021); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 294 (3d Cir. 2016); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 151 (3d Cir. 2015).

As explained below, the Second Amended Complaint ("SAC") plausibly alleges that Defendant engaged in deceit,[2] which constitutes a "plus" factor that establishes both a reasonable expectation of privacy and the existence of conduct that is highly offensive to a privacy interest. *In re Google Location History Litig.*, 514 F. Supp. 3d at 1157; *Heeger*, 2019 WL 7282477, at *4; *McDonald*, 385 F. Supp. 3d at 1036.

[1] "A 'cookie' is software code that transmits a user's web-browsing history and other usage data back to the entity that attached the cookie." *In re Henson*, 869 F.3d 1052, 1056 (9th Cir. 2017). Cookies are "small text files stored on the user's device." *Facebook Tracking*, 956 F.3d at 596; *South Dakota v. Wayfair*, 585 U.S. 162, 181 (2018) ("A website may leave cookies saved to the customers' hard drives….").

[2] California case law … has viewed fraud by concealment on equal footing with fraud by affirmative misrepresentation." *Rattagan v. Uber Techs., Inc.*, 17 Cal.5th 1, 39 (2024); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) ("Omissions may be the basis of claims under California consumer protections laws, but 'to be actionable the omission must be contrary to a representation actually made by the defendant, or *an omission of a fact the defendant was obliged to disclose*.") (emphasis in original) (quotation omitted).

### 2. The SAC Plausibly Alleges that Plaintiff Had a Reasonable Expectation of Privacy.

"The existence of a reasonable expectation of privacy, given the circumstances of each case, is a mixed question of law and fact." *Facebook Tracking*, 956 F.3d at 601 (citing *Hill v. National Collegiate Athletic Ass'n*, 7 Cal.4th 1, 40 (1994)). Courts evaluating the existence of a reasonable expectation of privacy "first consider whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms.'" *Facebook Tracking*, 956 F.3d at 601-02 (quoting *Hernandez*, 47 Cal.4th at 286). "To make this determination, courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *Facebook Tracking*, 956 F.3d at 602 (citing *Hill*, 7 Cal.4th at 36). Courts also consider "***the opportunity to be notified in advance and consent to the intrusion***." *Hernandez*, 47 Cal.4th at 287 (emphasis added).

"[T]he expectation of privacy must be '***objectively*** reasonable.'" *Hernandez*, 47 Cal.4th at 286 (emphasis added). "A 'reasonable expectation of privacy is an ***objective*** entitlement founded on broadly based and widely accepted community norms." *Hill*, 7 Cal.4th at 37 (emphasis added).

#### a. The Right to Privacy Encompasses the Individual's Control of Information Concerning the Individual.

Defendant's analysis is flawed from the outset because it conveniently ignores that the right to privacy encompasses the individual's control of information concerning the individual. *Facebook Tracking*, 956 F.3d at 598 (holding that "[a] right to privacy 'encompass[es] the individual's control of information concerning his or her person'") (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (quoting *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Process*, 489 U.S. 749, 763 (1989)); *Eichenberger*, 876 F.3d at 983 ("the Supreme Court has noted that 'both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person"); *Jones v. Ford Motor Co.*, 85 F.4th 570,

574 (9th Cir. 2023) ("With respect to constitutional injury-in-fact, the relevant law is settled. A statute that codifies a common law privacy right 'gives rise to a concrete injury sufficient to confer standing.' And this court has consistently found that '[v]iolations of the right to privacy have long been actionable at common law.'") (internal citation omitted); *Gabrielli v. Haleon US Inc.*, - F. Supp. 3d -, 2025 WL 2494368, at *5-*8 (N.D. Cal. Aug. 29, 2025) ("The Ninth Circuit has not disavowed *Facebook* in the wake of *TransUnion[ LLC v. Ramirez*, 594 U.S. 413 (2021)].").

**b. Information Including Identifiers, Internet Activity Information Including Browsing History, and Geolocation Data Constitute a Consumer's Personal Information in California.**

The individual's control of information concerning the individual when visiting commercial websites has been codified in California law for nearly a decade. In 2018, the California Legislature enacted into law the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.*,[3] which recognizes that "Internet or other electronic network activity information, including, but not limited to, "[i]dentifiers such as a "unique personal identifier, online identifier, Internet Protocol address, … or other similar identifiers," "Internet or other electronic network activity information, including, but not limited to, ***browsing history***, search history, and information regarding a consumer's interaction with an internet website application, or advertisement," and "Geolocation data" constitute a consumer's "personal information," (Civ. Code § 1798.140(v)(1)(A), (F), & (G)) (emphasis added).

The fact that Californians have a reasonable expectation of privacy in their anonymity in using the Internet is strongly supported by the CCPA's enactment into California law nearly a decade ago. If a business can freely collect and sell the identifiers of Californians with impunity because Californians have no reasonable

[3] Notably, the CCPA does not preempt California privacy law. *Mirmalek*, 2024 WL 5102709, at *5 (citing Cal. Civ. Code § 1798.175) ("the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control").

expectation of privacy in such personal information, then surely the CCPA would not exist. The CCPA's recognition of various types of electronic information relating to a consumer's use of an Internet website as a consumer's "personal information" supports a reasonable expectation of privacy in such personal information. *Cf. In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) ("plaintiffs allege that Google sells sensitive personal information such as plaintiff's IP address….Google argues that such information is routinely shared and thus cannot support a reasonable expectation of privacy. Not so. First, ***such information is personal information under California law and parties generally maintain a reasonable expectation in their personal information***.") (emphasis added) (citing Civ. Code § 1798.140).

**c. Anonymous Speech Has Long Been Recognized in the United States.**

Anonymous speech including on the Internet has long been recognized in the U.S. *See In re Anonymous Online Speakers*, 661 F.3d 1168, 1172-73 (9th Cir. 2011); *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1093, 1093 (W.D. Wash. 2001).

**d. The Ninth Circuit Recognizes that a Website Visitor Communicates with a Website and Sends Messages to a Website.**

The fact that an actual ***communication*** takes place back and forth between a website and a visitor of such website has been recognized by the Ninth Circuit. "When an individual internet user visits a web page, his or her browser ***sends a message*** called a 'GET request' to the web page's server. The GET request serves two purposes: ***it first tells the website what information is being requested and then instructs the website to send the information back to the user***. The GET request also transmits a refer[r]er header containing the personally-identifiable URL information. Typically, ***this communication*** occurs only between the user's web browser and the third-party website." *Facebook Tracking*, 956 F.3d at 607 (emphasis added). This is why visiting a website and browsing it and/or engaging in online searches can constitute online speech.

**e. The Website Has Embedded Pixels or Third-Party Cookies to Surveil Plaintiff and Other Users of the Website Including When They Visit Other Websites and Build Profiles.**

The Website has embedded the software code of third parties to collect ***personal information*** from Plaintiff and other Website users via software code embedded into the Website. (SAC ¶¶ 45-77.) During Plaintiff's visit to the Website, third party cookies began to surreptitiously collect information about Plaintiff's device and Plaintiff's interactions with the Website the moment that Plaintiff landed on the Website. (SAC ¶¶ 46, 89.) The reason why such entities have embedded their code on the Website so that their third-party cookies are downloaded onto the devices and browsers of Website visitors and stored there is because they are harvesting visitor data, building profiles of consumers, and monetizing "segmented" audiences *via* targeted advertising and marketing campaigns. (SAC ¶¶ 45-77.)

Indeed, Defendant's Privacy Policy last updated on December 30, 2019 and made effective on January 1, 2020 (the "Privacy Policy"), which was the applicable version of such Privacy Policy on the date of Plaintiff's May 2024 visit to the Website, https://www.compwestinsurance.com/privacy-policy/, freely acknowledges that the Website ***automatically*** collects personal information about consumers through the use of cookies and similar tracking technologies to serve targeted advertising upon users of the Website. (SAC ¶¶ 27-29, 31-34.) Indeed, one third party technology provider, which is specifically identified in Defendant's online Privacy Policy, which provides third party cookies through the Website, has a name that is literally "Centro Basis ***Retargeting***." (SAC ¶¶ 32, 40, 41, 44) (emphasis added).

"[I]t does not matter whether [Plaintiff] had a 'reasonable expectation of privacy' in the information collected … because the privacy violation extends beyond the collection of just his IP address and metadata; it encompasses how that collection allegedly allowed the third parties to: (1) build a profile reflecting his personal information; and (2) interfere with his ability to remain anonymous." *Deivaprakash v.*

*Condé Nast Digital*, 798 F. Supp. 3d 1100, 1106-07 (N.D. Cal. 2025).

**f. Defendant Violated Its Statutory Duties to Disclose Its Personal Information Gathering Practices Via a Conspicuous Notice at Collection and to Provide Californians with the Option to Opt-Out of Collection of Personal Information for Cross-Context Behavioral Advertising.**

"A duty to disclose a material fact can arise if … it is imposed by statute…." *Zeichner v. Nord Security Inc.*, 2024 WL 4951261, at *6 (N.D. Cal. Dec. 2, 2024) (quoting *Rattagan*, 17 Cal.5th at 40). Here, the CCPA and its regulations imposed upon Defendant statutory duties to: (i) to conspicuously disclose material facts about its collection of personal information from California consumers who used the Website to avoid misleading such consumers about the nature of its personal information collection practices on the Website in May 2024 (during Plaintiff's visit to the Website); and (ii) give consumers the option to opt out of targeted advertising.

Defendant was required to provide a conspicuous "Notice at Collection" of personal information in compliance with the CCPA, (Cal. Civ. Code § 1798.100(a)(1)-(3)), and California's regulation at 11 C.C.R. § 7012 at that time, which are part of the California Consumer Privacy Act Regulations. 11 C.C.R. § 7000(a). Such Regulations define "Notice at Collection" to mean "the notice given by a business to a consumer at or before the point at which a business collects personal information from the consumer as required by Civil Code section 1798.100, subdivisions (a) and (b), and specified in these regulations." 11 C.C.R. § 7001(q).

Section 7012 provides, "The Notice at Collection shall be made readily available where consumers will encounter it at or before the point of collection of any personal information." 11 C.C.R. § 7012(c). Such regulation provides an "[i]llustrative example" as follows: "When a business collects consumers' personal information online, it may post a ***conspicuous*** link to the notice on the introductory page of the business's website and on all webpages where personal information is collected." 11

C.C.R. § 7012(c)(1) (emphasis added). Section 7012 provides, "If a business does not give the Notice at Collection to the consumer at or before the point of collection of their personal information, the business shall not collect personal information from the consumer." 11 C.C.R. § 7012(d).

Although Plaintiff visited the Website in May 2024, Plaintiff's investigation has determined that the Website failed to provide a ***conspicuous*** Notice at Collection during such visit such as a ***conspicuous*** cookie banner on the homepage of the Website including what is known as a consent management platform ("CMP") displayed at the outset of her visit to the Website notifying Plaintiff about what categories of cookies would be attached to Plaintiff's browser and computer device resulting from her use of the Website and giving her opt out options. (SAC ¶¶ 83, 85-87.) Plaintiff reasonably relied upon such omission in browsing the Website. (*Id.* ¶ 88.) Defendant's violation of its statutory obligation to disclose its personal information gathering practices via a ***conspicuous*** Notice at Collection and to provide a CMP is highly offensive to a reasonable person, which support Plaintiff's position that she was harmed by Defendant's conduct, which deprived her of the ability to control personal information regarding her digital activity and profile. *Brown*, 525 F. Supp. 3d at 1077-79 (allegations that Google collected a "profile of users" "collected secretly … without any notice to users" via "fingerprinting techniques, system data, and geolocation data" sufficient to plead a reasonable expectation of privacy because "users' Internet activity" "may reveal" "a user's private plans for the future (e.g., purchasing of an engagement ring)" and plaintiffs "could have reasonably assumed that Google would not receive their data … based on Google's representations").

Although Defendant relies heavily upon the existence of its disclosures of online tracking contained within its Privacy Policy, (Def.'s Mem. at 14:22-16:23), Defendant conveniently ignores the SAC's allegation that such Privacy Policy was not conspicuously disclosed on the Website such as via a conspicuous cookie consent banner. (SAC ¶ 85.) Notably, Defendant fails to even include the word "conspicuous"

even a single time within its Memorandum. (Def.'s Mem. at 1:1-19:3; Doc. 36; Page ID #447-#465.) Thus, Defendant seeks to obfuscate the fact that it violated the CCPA by failing to conspicuously disclose its Privacy Policy to Plaintiff (and other Website visitors).

Such omission has consequences here. "As the California Attorney General's website explains, the CCPA requires that companies give users the choice to opt out of any collection of personal information for 'cross-context behavioral advertising, which is the targeting of advertising to a consumer based on the consumer's personal information obtained from the consumer's online activity across numerous websites." *Wiley*, 2025 WL 3654085, at *4 (citing https://oag.ca.gov/privacy/ccpa).

"When evaluating Californians' reasonable privacy expectations, the CCPA's provisions are highly relevant 'customs, practices, and circumstances,' because they provide Californians with the reasonable expectation that they will have some control over their data and necessarily shape users' expectations about their ability to opt out of websites' collection of data for profit." *Id.* at *4 (quoting *Facebook Tracking*, 956 F.3d at 602). "Today, when California users visit a website, they can expect to see a popup screen giving them the option to opt out of various types of tracking." *Id.*

As mentioned above, advance notice and consent are relevant factors in determining the reasonableness of the expectation of privacy. *Hernandez*, 47 Cal.4th at 287.

Thus, the Court should follow *Wiley*'s holding by considering the CCPA's provisions as highly relevant "customs, practices, and circumstances" in evaluating Californians' reasonable privacy expectations. The CCPA's provisions provide Californians with the reasonable expectation that they will have some control over their data and shapes users' expectations about their ability to opt out of websites' collection of data for profit.

If Defendant failed to conspicuously disclose its Privacy Policy disclosing that it uses technologies such as third party cookies to collect, use, and share users' personal

information for cross-contextual advertising, then why would California consumers, who were not notified about such collection, use, and sharing of their personal information, be aware of the urgency to opt out of the Website's collection of data for profit?

Defendant's reliance upon *Rodriguez v. Ink America Int'l Group LLC*, No. 25STCV15350 (Cal. Super. Ct. L.A. Cty. Dec. 10, 2025), is misplaced because it is a state trial court order that provides no guidance of California law. *Neary v. Regents of the University of California*, 3 Cal.4th 273, 282 (1992). To the extent that the Court follows *Rodriguez* for the proposition that "CCPA presumes that such [website tracking] tools will be employed so long as the proper procedures such as ***notice***, opt-out, and deletion are followed," *Rodriguez*, *supra*, at 7:24-26, here, Defendant has completely ignored the "notice" requirement of the CCPA and gone straight to focusing entirely upon the "opt-opt" portion of the CCPA's regulatory framework. But, the CCPA's regulatory framework requires the provision of proper notice in order for a California consumer to be properly informed about the circumstances warranting the potential exercise of the opt-out option. Thus, if anything, *Rodriguez* supports Plaintiff's interpretation. Without adequate notice, the opportunity to exercise the "opt-out" option is meaningless under the CCPA.

**g. *Popa v. Microsoft Corp.* Is Distinguishable.**

Defendant's reliance upon *Popa v. Microsoft Corp.*, 153 F.4th 784, 786 (9th Cir. 2025) (Def.'s Mem. at 2:5-11), is misplaced for several reasons. First, *Popa* did not create a new rule for Article III standing, ***which is not at issue via the instant Motion***, which only invokes Rule 12(b)(6) and not Rule 12(b)(1) and, in fact, confirmed that *Facebook Tracking* remains good law. *Krzyzek v. OpenX Technologies, Inc.*, - F. Supp. 3d -, 2026 WL 206855, at *3 n.5 (N.D. Cal. Jan. 27, 2026) (citing *Dellasala v. Samba TV, Inc.*, 2025 WL 3034069, at *2 (N.D. Cal. Oct. 30, 2025); *Camplisson v. Adidas America, Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025); *Semien v. Pubmatic Inc.*, 2026 WL 216333, at *5 n.5 (N.D. Cal. Jan. 27, 2026); *Deivaprakash v. Condé Nast*

*Digital*, 2025 WL 2779193, at *1 (N.D. Cal. Sept. 30, 2025).

To the extent that *Popa* conflicts with Ninth Circuit precedent recognizing that the right to privacy dating back to the common law encompasses "the individual's control of information concerning his or her person" such as "an individual's likes, dislikes, interests, and habits" without imposing a confidential information requirement, *Facebook Tracking*, 956 F.3d at 598; *Eichenberger*, 876 F.3d at 983, the Court should follow *Facebook Tracking*.

Second, *Popa* is factually distinguishable because the information collected therein was far less intrusive because it involved only data generated during a visit to a single website; whereas, here, ***third-party cookies are alleged to track users across the Internet***. (SAC ¶¶ 18, 20, 22-23, 25, 31, 35, 37-40, 44, 47-48, 53, 64, 78, 82, 97, 117, 119, 125-126, 128); *Krzyzek*, 2026 WL 206855, at *3; *Semien*, 2026 WL 216333, at *5; *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026); *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *2 (N.D. Cal. Dec. 22, 2025); *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *3 n.3 (N.D. Cal. Oct. 17, 2025) ("The scope of the alleged tracking in this case is materially more invasive than the limited tracking at issue in the Ninth Circuit's recent decision in *Popa*….Plaintiffs allege that Sovrn compiled detailed profiles by tracking their interactions across many websites…"). Tracking cookies "are capable of tracking [users'] browser[s] across other sites and building up a profile of [users'] interests." *Haleon*, 2025 WL 2494368, at *8.

Third, in *Haleon*, the federal district court distinguished *Popa* because the plaintiff in *Popa* "did not challenge the storage and/or transmission of cookies…." *Haleon*, 2025 WL 2494368, at *7. Thus, the nature of the privacy invasion was far more serious therein just as it is serious here unlike in *Popa*.

**h. *Rodriguez v. Culligan Int'l Co.* Is Distinguishable.**

*Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025), is both distinguishable and unpersuasive. First, the only claim therein alleged a violation

of section 638.51 of the California Penal Code, *id.* at *2, which is no longer at issue herein. Second, *Culligan* found lack of constitutional standing because the pleading therein failed to point to "any specific tort" including intrusion upon seclusion, *id.* at *3, unlike the SAC here. Third, *Culligan* squarely focused on the expectation of privacy in users' IP addresses, *id.* at *3-*4, but the SAC here goes far beyond the tracking of IP addresses to include Plaintiff's browsing history of the webpages visited by Plaintiff. (SAC ¶¶ 22, 60, 64-66, 67-71, 73-74, 76, 119, 125.)

The page URL viewed constitutes the contents of the Website. *Haleon*, 2025 WL 2494368, at *11 ("descriptive URLs … constitute 'contents'"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 935-36 (N.D. Cal. 2023). Plaintiff's browsing history is information that is "not like the 'outside of an envelope,' revealing the address and name of the recipient, but instead the contents of a letter." *Id.* at 936 (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) and citing *Facebook Tracking*, 956 F.3d at 605 (holding that "full-string detailed URL[s]" are distinct from information discussed in *In re Zynga Privacy Litig.*) (noting that "resulting URLs could divulge a user's personal interests, queries, and habits on third-party websites"). Surveillance of a website user's pages viewed without such user's prior consent is actionable. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023) (citing *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 518 (C.D. Cal. 2021), as amongst "cases which hold that ***information such as pages viewed … may be sufficiently private to implicate cognizable privacy interests****….*") (emphasis added); *United States v. Forrester*, 512 F.3d 500, 510 & n.6 (9th Cir. 2008).

Ninth Circuit precedent recognizes that the right to privacy dating back to the common law encompasses "the individual's control of information concerning his or her person" such as "an individual's likes, dislikes, interests, and habits" ***without imposing a confidential information requirement***. *Facebook Tracking*, 956 F.3d at 598; *Eichenberger*, 876 F.3d at 983; *Deivaprakash*, 2025 WL 2779193, at *4 n.4; *Camplisson*, 809 F. Supp. 3d at 1106 ("There is no requirement that … the information

collected [via an online tracker] be sensitive").

Although *Culligan* noted that "Internet users also have no expectation of privacy in the other data [besides IP addresses] that Culligan allegedly collects," 2025 WL 3064113, at *5, *Culligan* noted that the collected data only included the plaintiff's IP address and device or other identifiers. *Id.* at *3. *Culligan* treated the allegations therein as excluding the plaintiff's browsing history, which is unlike the allegations herein.

### 3. Plaintiff's "Tester" Status Does Not Preclude Plaintiff From Personally Holding an Expectation of Privacy in Her Personal Information As a Matter of Law.

Defendant's contention that the SAC admits that Plaintiff lacks a subjective expectation of privacy based on Plaintiff's "admission" that Plaintiff is a "tester"[4] who was motivated, in part, "to ensure that companies abide by their privacy obligations," (Def.'s Mem. at 10:1-11:2) (SAC ¶ 84), is mistaken. The case law cited by Defendant for a "subjective expectation of privacy" merely refers to the requirement that the expectation of privacy be "personally held". *Armenta v. Superior Court*, 61 Cal. App. 3d 584, 594 (1976). Plaintiff's "admission" that she is a "tester" does not deprive her of her state constitutional and common law privacy interests. A simple hypothetical illustrates the absurdity of Defendant's position. By analogy, if Plaintiff visited a restaurant's restroom in part as a privacy tester and undressed while using it while a hidden camera recorded her ***surreptitiously***, which is subsequently discovered somehow, Defendant's position, taken to its logical extreme, would be that Plaintiff lacked any subjective expectation of privacy in using such restroom in order to maintain ***any*** privacy-related claim (including criminal charges) against the wrongdoer who surreptitiously installed the hidden camera. Defendant's position cannot be the law.

---

[4] The Court rejected Plaintiff's tester status as relevant in deciding the prior Motion to Dismiss. (Tr. of H'rg of 12/3/25 at 7:19-24.) The Court should continue to reject Defendant's attempt to smear Plaintiff to bias the Court. (Def.'s Mem. at 1:17-19; 10:24.)

*Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1-*2 (C.D. Cal. Apr. 4, 2025), is both distinguishable and is unpersuasive for the reasons previously explained in Plaintiff's Memorandum in opposition to Defendant's prior Motion to Dismiss. (Doc. 20 at 2:18-6:4.) In particular, *Autotrader.com* failed to address or distinguish *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) ("foreseeability of monitoring is insufficient to infer consent"), which is binding precedent.

**4. The SAC Pleads Highly Offensive Conduct.**

"Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Facebook Tracking*, 956 F.3d at 606 (citing *Hernandez*, 47 Cal.4th at 287 and *Hill*, 7 Cal.4th at 25–26). "While analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Facebook Tracking*, 956 F.3d at 606 (citing *Hernandez*, 47 Cal.4th at 287) (noting that highly offensive analysis "essentially involves a 'policy' determination as to whether the alleged intrusion is highly offensive under the particular circumstances").

As an initial matter, Plaintiff submits that the question whether Defendant's conduct is "highly offensive" should not be decided as a matter of law at the pleading stage. *Facebook Tracking*, 956 F.3d at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage. Plaintiffs have identified sufficient facts to survive a motion to dismiss."); *Brown v. Google LLC*, 685 F. Supp. 3d at 941 ("The Court cannot find, as a matter of law, that the data collection here was not highly offensive."); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1046 (S.D. Cal. 2023) (agreeing with plaintiff that seriousness of invasion is question for finder of fact); *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d at 946 ("Whether the

conduct was highly offensive can rarely be resolved at the pleading stage.") (citing *Facebook Tracking*, 956 F.3d at 606); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (Whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury.") (internal quotations omitted); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1061 (N.D. Cal. 2014) ("That question is best left for a jury.").

Assuming *arguendo* that the Court decides to resolve the question whether the conduct was highly offensive via the instant Motion, at minimum, the Court should find an "egregious breach plausible." *Greenley*, 684 F. Supp. 3d at 1047. "The right to privacy is neither static nor objective." *Id.* at 1046. "[A]dvances in technology can increase the potential for unreasonable intrusions into personal privacy. In this way, the right is dynamic against new threats to privacy." *Id.* The type of information gathered by Defendant and its tracking tools is highly revealing to Internet users in California who attempt to use the Internet anonymously consistent with their rights under the CCPA, and their surreptitious method of gathering such personal data is unknown to virtually all Californians. Here, the degree of the invasion of Plaintiff's privacy interest is substantial. It is reasonable to infer from the SAC's allegations that Plaintiff browsed the Website, (SAC ¶¶ 83, 89-90) ("Plaintiff continues to desire to browse content featured on the Website."), and that the third party tracking cookies downloaded to Plaintiff's browser or device by the Website and pixels used by the Website tracked Plaintiff's browsing history of the webpages visited by Plaintiff. (SAC ¶¶ 22, 60, 64-66, 67-71, 73-74, 76, 119, 125.) Notably, such conduct occurred in the specific context of Defendant's statutory obligation under the CCPA to provide conspicuous notice about its use of tracking technology via the Website, which Defendant failed to do so. (SAC ¶¶ 85-88, 111-115.)

Furthermore, not only did Defendant violate the CCPA's conspicuous notice requirement, Defendant's Privacy Policy misrepresents the functioning of "cookies" by inaccurately claiming that "[o]ur 'cookies' do not track your activity on third party sites." (SAC ¶¶ 30, 35, 97, 117.)

Defendant's Privacy Policy also implies that its third-party vendors use only first-party cookies even though, in reality, all four third-party vendors identified in its Privacy Policy (*i.e.*, Google, LinkedIn, Facebook, and Centro Basis Retargeting) use third-party cookies to gather information about the Website's users. (SAC ¶¶ 31, 35-40, 44, 97, 117); *see also id.* ¶¶ 18, 20, 22-23, 25, 47-48, 53, 64, 78, 82, 119, 125-126, 128.)

The foregoing conduct is highly offensive. *Hernandez*, 47 Cal.4th at 287 (noting that courts consider "the degree and setting of the intrusion" as factors in determining whether an invasion of privacy is "highly offensive").

Although Defendant contends that the SAC does not allege any injury suffered by Plaintiff, (Def.'s Mem. at 18:1-23), the SAC alleges that Plaintiff's communications are valuable, (SAC ¶¶ 78-82), and injured her dignity, (SAC ¶ 98), which this Court must take as true here. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").

Thus, the likelihood of serious harm to Plaintiff and the putative class from Defendant's conduct is significant. *Facebook Tracking*, 956 F.3d at 606 (recognizing "the likelihood of serious harm to the victim" as a factor in determining whether an invasion of privacy is "highly offensive"). In *Facebook Tracking*, *supra*, the Ninth Circuit held that allegations of data collection performed "in order to receive and compile [the plaintiffs'] personally identifiable browsing history" "no matter how sensitive or personal" constituted sufficient allegations of injury for purposes of Article III standing." 956 F.3d at 598, *quoted in Deivaprakash*, 2025 WL 2779193, at *4 n.4.

Defendant's motives and objectives are commercial in nature to receive discounted or higher-quality analytics and other services derived from the data about consumers' online activities, including the option to target advertisements to customers that had merely browsed the Website. (SAC ¶ 99); *Hernandez*, 47 Cal.4th at 287 (noting that courts consider "the intruder's motives and objectives" as factors in determining whether an invasion of privacy is "highly offensive").

Finally, the intrusion on privacy is not justified by "one or more competing interests." *Hernandez*, 47 Cal.4th at 287-88. Indeed, the Legislature surely considered any and all competing interests in enacting the CCPA with an unambiguous notice provision built into the CCPA's regulatory framework. A website operator that ignores such notice provision in tracking user interactions on its website should not be permitted to rely upon purported competing interests that undermine the legislative intent underlying the CCPA to protect Californians' privacy interest when using commercial websites.

As such, the Court should reasonably infer that Defendant's data-collection practices "amount to an egregious breach of social norms." *Greenley*, 684 F. Supp. 3d at 1047. The undisputed material facts do not show "an insubstantial impact on privacy interests" allowing "the question of invasion" to be "adjudicated as a matter of law." *Hill*, 7 Cal.4th at 40.

The Court should not treat Defendant's practices of using technology to de-anonymize otherwise anonymous consumers and to profit from such technology as "routine commercial behavior." The fact that the CCPA expressly includes many types of "[i]dentifiers" and website browsing information as "personal information" indicates that the Legislature was concerned about businesses collecting and sharing consumer data that might unmask otherwise anonymous consumers, and, thus, imposed a comprehensive regulatory framework for the collection, use, and sharing of a consumer's personal information.

Defendant's implicit argument that it can simply bypass the notice requirements

of the CCPA and rely solely upon the opt-out provisions of the CCPA constitutes an intrusion upon Plaintiff's (and other consumers') privacy interests in their personal information that is unacceptable as a matter of public policy.

**a. Plaintiff Did Not Consent to Defendant's Conduct.**

"[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a ***voluntary consent*** to the invasive actions of defendant. If voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person' so as to justify tort liability." *Hill*, 7 Cal.4th at 26 (emphasis added).

Although Defendant contends that Plaintiff could not have had a reasonable expectation of privacy based upon Plaintiff's subjective expectations, (Def.'s Mem. at 10:1-12:11), Defendant is implicitly arguing that Plaintiff manifested a "voluntary consent" to Defendant's invasive conduct. But, ***Defendant fails to even include the word "consent" even once in its Memorandum presumably because it knows that it cannot prevail as a matter of law on its consent defense based on the pleadings***.

Defendant has failed to satisfy its burden of proving consent as a matter of law.[5] Significantly, the Ninth Circuit has held that "***foreseeability of monitoring is insufficient to infer consent***". *Staves*, 383 F.3d at 981 (emphasis added); *In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) ("That the person communicating knows that the interceptor has the *capacity* to monitor the communication is insufficient to establish implied consent."); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024) ("A user who consents to disclose their IP address to Fandom as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers.").

Furthermore, "[t]he critical question with respect to implied consent is whether

[5] It is the defendant's burden to prove consent. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024).

the parties whose communications were intercepted had ***adequate notice*** of the interception." *In re Google*, 2013 WL 5423918, at *12 (emphasis added); *see Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (interpreting section 631(a) of the California Penal Code as requiring "prior consent," and predicting that the California Supreme Court would interpret such statute in such manner) ("Based on these statements by the California Supreme Court, we conclude that the California Supreme Court would interpret Section 631(a) to require the ***prior consent*** of all parties to a communication.") (emphasis added).

The SAC alleges:

> "Plaintiff's investigation of the Website has determined that visitor data is harvested and shared with third-party services immediately upon webpage loading, preceding any opportunity for visitors to read the Website's Privacy Policy."

(SAC ¶ 46); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025). The foregoing allegations indicate that "prior consent" was impossible here. Thus, the SAC expressly alleges Plaintiff's lack of consent to Defendant's actions, (SAC ¶¶ 8, 46, 50-53, 85, 89, 92, 96, 116, 119, 132), which this Court is required to take as true.

"'Consent is … generally limited to the specific conduct authorized.'" *Greenley*, 684 F. Supp. 3d at 1048 (quoting *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021)); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014) (no consent to data being used for targeted advertising where users consented to its use for "data analysis"); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 824 (N.D. Cal. 2020) (consent to data collection does not extend to data disclosure). As the California Supreme Court has explained:

> "[W]e adhere to the view suggested in *Shulman v. Group W Productions, Inc.*, 18 Cal.4th 200 (1998)]: privacy … is not a binary, all-or-nothing characteristic. There are degrees and nuances to societal recognition of our expectations of

privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law."

*Sanders v. Am. Bd. Co., Inc.*, 20 Cal.4th 907, 915-16 (1999) (recognizing an "expectation of limited privacy"); *Javier*, 2021 WL 940319, at *2 ("[C]onsent 'is not an all-or-nothing proposition.'") (quoting *In re Google*, 2013 WL 5423918, at *12).

**5. Numerous Federal District Court Decisions Support Plaintiff's Position Regarding the Viability of Plaintiff's Non-Statutory Claims.**

Numerous federal courts have recognized the viability of common law intrusion upon seclusion and/or non-statutory invasion of privacy claims involving allegations that are substantially similar to the allegations at issue in the instant action. *See, e.g.*, *D'Antonio v. Smith & Wesson Inc.*, - F. Supp. 3d -, 2026 WL 446310, at *3 (N.D. Cal. Feb. 17, 2026) ("Smith & Wesson's motion to dismiss plaintiffs' intrusion upon seclusion and invasion of privacy claims is therefore denied."); *Politico*, 2026 WL 323269, at *5 (denying motion to dismiss of intrusion upon seclusion and invasion of privacy claims); *Shah v. Myfitnesspal, Inc.*, 2026 WL 216334, at *6 (N.D. Cal. Jan. 27, 2026) ("Because plaintiffs have pleaded each required element of their invasion of privacy and intrusion upon seclusion claim, MFP's motion to dismiss those claims is denied."); *Semien*, 2026 WL 216333, *7 ("the Court finds that the plaintiffs' intrusion on seclusion claim can proceed"); *Krzyzek*, 2026 WL 206855, at *5 ("the Court finds that the plaintiffs' intrusion on seclusion claim can proceed"); *Gilligan*, 2026 WL 32259, at *3 ("Plaintiffs … have stated a claim for intrusion upon seclusion."); *Wiley*, 2025 WL 3654085, at *6 ("UMG's motion to dismiss plaintiffs' intrusion upon seclusion and invasion of privacy claims is denied."); *Casillas v. Six Flags Enter. Corp.*, 812 F. Supp. 3d 1016, 1029-30 (C.D. Cal. 2025) (Marshall, J.) ("Plaintiff states a claim for intrusion upon seclusion and invasion of privacy."); *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *7-*11 (denying motion to dismiss intrusion upon seclusion claim); *Pemberton*, 2025 WL 3268404, at *5 ("Plaintiff has stated intrusion upon seclusion and invasion of privacy claims."); *Selby*, 2025 WL 2950164, at *3 ("this Court and many

others have found that the tort of intrusion upon seclusion, and an injury for purposes of CIPA, is adequately alleged at the pleadings stage"); *Walsh*, 2025 WL 2939229, at *15 ("because Plaintiffs have sufficiently alleged highly offensive conduct in the collection and disclosure of their private information and have sufficiently alleged a reasonable expectation of privacy, the Court **DENIES** Dollar Tree's motion.") (emphasis in original); *Haleon*, 2025 WL 2494368, at *9 ("The motion to dismiss Gabrielli's invasion of privacy claims is DENIED."); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1085-89 (N.D. Cal. July 18, 2025) (denying motion to dismiss "claims for intrusion upon seclusion and invasion of privacy under the California Constitution"); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025) ("The Court … denies Motorola's motion to dismiss Gabrielli's invasion of privacy claims."); *Greenley*, 684 F. Supp. 3d at 1047 ("the Court **DENIES** Defendant's Motion to Dismiss with respect to Plaintiff's invasion of privacy claim") (emphasis in original); *de Ayora*, 2025 WL 3707561, at *5. Defendant's silence in addressing the foregoing case authority speaks volumes.

Dated: April 8, 2026

PACIFIC TRIAL ATTORNEYS, P.C.

By: */s/ Scott J. Ferrell*
Scott. J. Ferrell
Attorney for Plaintiff

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 8, 2026

*/s/ Scott J. Ferrell*
Scott J. Ferrell