Matthew D. Pearson (SBN 294302)
mpearson@fkks.com
FRANKFURT KURNIT KLEIN + SELZ PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (310) 579-9650

*Attorneys for Defendant*
ACCIDENT FUND HOLDINGS, INC.
(erroneously sued as ACCIDENT FUND HOLDINGS, INC., D/B/A WWW.COMPWESTINSURANCE.COM)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EMILY RODRIGUEZ, individually and on behalf of all other similarly situated,

Plaintiffs,

v.

ACCIDENT FUND HOLDINGS, INC., d/b/a www.compwestinsurance.com,

Defendant.

Case No.: 2:25-cv-03920-SK

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Action Filed: March 24, 2025
Action Served: April 3, 2025
Action Removed: May 2, 2025
FAC Filed: July 14, 2025
SAC Filed: January 28, 2026

**DATE: APRIL 29, 2026**
**TIME: 10:00 A.M.**
**COURTROOM: 540, 5TH FLOOR**

# TABLE OF CONTENTS


I. INTRODUCTION ........................................ 1

II. ARGUMENT ........................................ 3

A. Plaintiff Fails To Allege a Reasonable Expectation of Privacy. .......... 3

1. Without Opting Out, Plaintiff's "Expectation of Privacy" Is Unreasonable ........................................ 3

2. AFHI's Conduct Was Not Deceptive ........................................ 5

3. Lack of Consent Does Not Create Reasonable Expectation of Privacy ........................................ 6

4. Plaintiff Had No Expectation of Privacy As a Tester Plaintiff .. 7

B. Plaintiff Fails To Allege Highly Offensive Conduct. ........................... 8

III. CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996685 .......... 8

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 7

*D'Antonio v. Smith & Wesson Inc.*,
2026 WL 446310 (N.D. Cal. Feb. 17, 2026) .......... 5

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 9

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 10

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 9

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 7

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......... 9

*Morilha v. Alphabet, Inc.*,
2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) .......... 10

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 .......... 8

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1122387 (Mar. 14, 2025) .......... 8

*Rodriguez v. Brushfire Records*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) .......... 8

*Shah v. MyFitnessPal, Inc.*,
No. 25-CV-04430-PCP, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) .......... 1, 4, 5

*Shah v. Politico LLC*,
2026 WL 323269 (N.D. Cal. Feb. 6, 2026) .......... 6

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) .......... 7, 10

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) .......... 6

*Wiley v. Universal Music Grp., Inc*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) .......... 4, 5, 6

*Williams v. DDR Media, LLC*,
2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) .......... 8, 9, 10

**Statutes**

Cal. Code Regs. tit. 11, § 7012(a) .......... 2

Cal. Code Regs. tit. 11, § 7012(c)(2) .......... 3

California Consumer Privacy Act .......... 1

CCPA .......... 1, 2, 3, 5

**Other Authorities**

California Constitution .......... 8

, www.compwestinsurance.com .......... 1

## I. INTRODUCTION

Plaintiff's Opposition to Accident Fund Holdings, Inc.'s ("AFHI") Motion to Dismiss actually proves AFHI's point: Plaintiff could not have had a reasonable expectation of privacy in the information collected on the website, www.compwestinsurance.com (the "Site"), unless and until she exercised her "opt-out" rights under the California Consumer Privacy Act ("CCPA"), and Plaintiff did not opt out. Therefore, her two invasion-of-privacy claims must be dismissed.

Plaintiff argues in her Opposition that "[i]f a business c[ould] freely collect and sell the identifiers of Californians with impunity because Californians have no reasonable expectation of privacy in such personal information, then surely the CCPA would not exist." [Dkt. No. 38, 4:24-5:2.] Plaintiff, however, has it backwards. The CCPA exists ***because***, prior to its enactment, businesses could freely share or sell information they collected from their websites. Put another way, by allowing consumers to opt out of "sales and shares" of their information, the CCPA created a privacy right that otherwise did not exist. The CCPA drew a line between when a consumer has no reasonable expectation of privacy in the information collected (*i.e.*, pre-opt out) and when she does (*i.e.*, post-opt out). Plaintiff here did not opt out; therefore, she has no reasonable expectation of privacy in the information at issue.

This is entirely consistent with Plaintiff's "deceit" argument. Plaintiff asserts that "deceit can constitute a 'plus' factor that establishes both a reasonable expectation of privacy and the existence of conduct that is highly offensive to a privacy interest." [Dkt. No. 38, 1:24-26.] And Plaintiff is correct; courts have consistently found that the promise not to "sell or share" information (*i.e.*, allowing a consumer to opt out) creates in the consumer a reasonable expectation of privacy in that information, the violation of which may give rise to an invasion of privacy. *See, e.g.*, *Shah v. MyFitnessPal, Inc.*, No. 25-CV-04430-PCP, 2026 WL 216334, at *4 (N.D. Cal. Jan. 27, 2026) (noting that although "the type of information at issue,

standing alone, may not involve information in which users have an unqualified expectation of privacy," where the defendant "allegedly told [site visitors] that it would not collect information for advertising or analytics if they opted out of such collection" but did so anyway, "[a] reasonable visitor to [the] website who chose to opt out…would thus reasonably expect" his or her information not to be shared). That, however, is not the case here. Plaintiff never exercised her right to opt out while on the Site. Therefore, she had no reasonable expectation of privacy in the information she alleged the Site collected.

Plaintiff tries to avoid this conclusion by arguing that AFHI failed to meet its disclosure requirements under the CCPA. That argument is both an improper attempt to create a private right of action under the CCPA and patently false. Under the CCPA, a business must "provide consumers with timely notice, at or before the point of collection, about the categories of personal information to be collected from them, the purposes for which the personal information is collected or used, and whether that information is sold or shared, so that consumers…[can] choose whether to…direct the business not to sell or share their personal information…." Cal. Code Regs. tit. 11, § 7012(a). Plaintiff argues that this notice must be in "a conspicuous cookie consent banner." [Dkt. No. 38, 8:25-28.] Not so. The regulations clearly explain that "[w]hen a business collects consumers' personal information online, it may post a conspicuous link to the notice on the introductory page of the business's website and on all webpages where personal information is collected." *Id.* at § 7012(c)(2). That is exactly what AFHI did when it linked to its privacy policy on the Site's homepage.

Ultimately, Plaintiff has made this case far more complicated than it is. Plaintiff could have no reasonable expectation of privacy in the information she alleges was collected and shared here unless and until she opted out. She did not opt out. Therefore, she has no reasonable expectation of privacy in the information at issue, and her invasion of privacy and intrusion upon seclusion claims must be

dismissed.

## II. ARGUMENT

### A. Plaintiff Fails To Allege a Reasonable Expectation of Privacy.

#### 1. Without Opting Out, Plaintiff's "Expectation of Privacy" Is Unreasonable

Plaintiff agrees with AFHI that the CCPA acts as a guidepost when determining whether and under what circumstances a California consumer has an expectation of privacy in information collected and shared on online. [Dkt. No. 38, 9:21-23 (Plaintiff arguing that this Court should consider the CCPA's provisions as "highly relevant customs, practices, and circumstances in evaluating Californians' reasonable privacy expectations" (internal quotations omitted).] She likewise agrees that, under the CCPA, the dividing line between a reasonable expectation of privacy and an unreasonable one is the consumer's decision to opt out. [*Id.* at 9:23-26 (Plaintiff arguing that the "CCPA's provisions provide Californians with the reasonable expectation that they will have some control over their data and shapes users' expectations about their ability to opt out of websites' collection of data for profit").]

Acknowledging, as she must, that she did not opt out of sales and shares of her information while she was on the Site, Plaintiff challenges AFHI's compliance with the CCPA's disclosure requirements. Specifically, she argues that AFHI "failed to conspicuously disclose its Privacy Policy disclosing that it uses technologies such as third party cookies" [*id.* at 9:27-28] and, as such, rendered the "opt-out" option under the CCPA "meaningless" [*id.* at 10:17-18]. The law says otherwise.

The regulations implementing the CCPA make clear that, in order to provide proper notice of its collection and disclosure practices, a business must "post a conspicuous link to the notice on the introductory page of the business's website and on all webpages where personal information is collected." Cal. Code Regs. tit.

11, § 7012(c)(2). That is exactly what AFHI did here. As Plaintiff admits, the Site "has a hyperlink to its…Privacy Policy" that linked to the "version" applicable to "Plaintiff's May 2024 visit to the [S]ite." [Dkt. No. 10, ¶ 26.] Indeed, Plaintiff repeatedly cites to and quotes from AFHI's Privacy Policy in her Second Amended Complaint. [*See generally id.*] She cannot now legitimately claim that she was not aware of the policy.

Even the cases Plaintiff herself cites support AFHI's position that she had no reasonable expectation of privacy in the information at issue here. For example, Plaintiff relies on *Wiley v. Universal Music Grp., Inc,* 2025 WL 3654085 (N.D. Cal. Dec. 17, 2025). [Dkt. No. 38, pp. 9-10.] But, in *Wiley*, the plaintiffs alleged that Universal Music Group ("UMG") violated certain of "their privacy rights by placing cookies on their devices after they had *expressly opted out of receiving such cookies.*" *Id.* at *1 (emphasis added). The *Wiley* court determined that the plaintiffs had a reasonable expectation of privacy in the information being collected through the site not because that information was, in and of itself, inherently private but "[b]ecause UMG told users that they could opt out of such forms of information collection" and the plaintiffs did, in fact, opt out. *Id.* at *4; *see also id* (noting that the defendant UMG was "correct that the information at issue [browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data], standing alone, may not involve the types of information in which users have an unqualified expectation of privacy"). Here, Plaintiff does not allege that she opted out of the collection and sharing of information on the Site, nor does she allege that AFHI ignored her (non-existent) opt-out request.

Similarly, Plaintiff relies on *Shah v. Myfitnesspal, Inc.*, 2026 WL 216334, in which the plaintiffs alleged that the defendant Myfitnesspal, Inc., violated their privacy rights by placing cookies on their browsers even though they had expressly

opted out of receiving those cookies. 2026 WL 216334 at *1. The court also looked to the CCPA as a relevant "custom[], practice[], and circumstance[]" and determined that the plaintiffs had sufficiently pled the elements of their invasion of privacy and intrusion upon seclusion claims, relying on the fact that the defendant had "specific[ally] promise[d] that users would not be tracked in specific ways." *Id.* *5-6. By contrast, here, the Plaintiff did not "expressly opt[] out" of receiving any cookies (and AFHI did not place any cookies after Plaintiff opted out). Just like the *Wiley* and *Myfitnesspal, Inc.* courts, this Court should look to the CCPA as guidance for Californians' reasonable expectations about their privacy. However, the courts in these cases were presented with completely different factual scenarios then the one here.

### 2. AFHI's Conduct Was Not Deceptive

In her Opposition, Plaintiff argues that AFHI "engaged in deceit," which "constitutes a 'plus' factor that establishes both a reasonable expectation of privacy and the existence of conduct that is highly offensive to a privacy interest." [Dkt. No. 38, 2:17-20.] Plaintiff, however, fails to identify what this alleged "deceit" is. In fact, Plaintiff admits that AFHI "freely acknowledges" in its privacy policy that it collects information about website visitors via cookies and tracking technologies, and she notes that one technology provider is "specifically identified in Defendant's online Privacy Policy". [*Id.* at 6:17-23.] "Freely acknowledging" and "specifically identifying" are the exact opposite of deceitful conduct and undercut Plaintiff's argument that AFHI did anything "deceitful."

In support of her arguments, Plaintiff cites many cases in which the courts denied motions to dismiss invasion of privacy and intrusion upon seclusion claims when the plaintiffs alleged that websites tracked and collected information *after* the plaintiff website users specifically and affirmatively opted out of tracking. *See D'Antonio v. Smith & Wesson Inc.*, 2026 WL 446310, at *3 (N.D. Cal. Feb. 17, 2026) (denying plaintiffs' intrusion upon seclusion and invasion of privacy claims,

noting that the defendant "not only misled users into thinking that their cookie rejections would be effective but also led them to engage in tracked conduct they otherwise would not have undertaken"); *Shah v. Politico LLC*, 2026 WL 323269, at *5 (N.D. Cal. Feb. 6, 2026) (denying motion to dismiss invasion of privacy and intrusion upon seclusion claims in situation where website allowed visitors to opt-out of third-party cookies and tracking, but nevertheless continued placing cookies and tracking); *Wiley*, 2025 WL 3654085, at *4-5 (denying motion to dismiss common law privacy claims in situation where the plaintiffs alleged they opted out of tracking, explaining that "plaintiffs have alleged both an invasion of their reasonable expectations of privacy and that this invasion was undertaken through deceptive conduct"); *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *14-15 (N.D. Cal. Oct. 16, 2025) (denying dismissal of invasion of privacy and intrusion upon seclusion claims, determining that the plaintiffs had a reasonable expectation of privacy because "having (allegedly) given users the option to 'Reject Advertising Cookies' and so opt out of having their data tracked, Dollar Tree cannot say that the users do not have a reasonable expectation of privacy in such data" and finding adequate allegations of highly offensive conduct, acknowledging the "'plus factor' of alleged deceit on the part of Dollar Tree in collecting such information via the Cookie Banner").

Again, though, that is not the case here. AFHI made clear to Plaintiff what it was collecting and how it was using the collected information, and it gave Plaintiff the ability to opt out of sales and shares of her information. She choose not to do so. She cannot now claim that AFHI was somehow deceitful in providing her an option she herself elected not to exercise.

**3. Lack of Consent Does Not Create Reasonable Expectation of Privacy**

Contrary to Plaintiff's arguments in her Opposition, AFHI has not failed to satisfy its burden of proving consent as a matter of law. [Dkt. No. 38, 18:11-17.]

That is because lack of consent does not necessarily give rise to a privacy violation. "[A]llegations that a plaintiff did not consent to data collection practices, without more, does not support a reasonable expectation of privacy." *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024) (dismissing invasion of privacy claim after determining that plaintiff failed to adequately allege a reasonable expectation of privacy, and rejecting lack of consent argument). In *In re Yahoo Mail Litig.*, the court analyzed an invasion of privacy claim, and the plaintiffs' argument that they did not consent to the defendant's conduct. 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014). The court rejected the "argument that an allegation of lack of consent suffices to state a privacy claim" and explained that "in determining whether a plaintiff has satisfied the elements of the claim, a plaintiff's lack of consent does not matter so much as the nature of the information in which he or she alleges a privacy interest." *Id; see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("Even assuming this information was transmitted without Plaintiffs' knowledge and consent, a fact disputed by Defendants, such disclosure [of information including device identifier number, personal data, and geolocation information] does not constitute an egregious breach of social norms."). Here, Plaintiff did not have a reasonable expectation in the information she alleges AFHI tracked or collected. Therefore, Plaintiff's consent to that alleged collection, or lack thereof, is immaterial.

**4. Plaintiff Had No Expectation of Privacy As a Tester Plaintiff**

Finally, when Plaintiff visited AFHI's website, she was not seeking to keep anything about that visit private. She admits in the SAC that she is "a consumer privacy advocate who works as a 'tester'". [Dkt. 29, ¶ 84.] Therefore, she was not visiting the AFHI website with an expectation that her activity would be kept "private". "Generally, the internet is not a place where users have a reasonable expectation of privacy." *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, *1 (S.D. Cal. May 8, 2024). A sophisticated "consumer privacy advocate" who works

as a "tester", and has brought tens of complaints against companies for alleged privacy violations would know this. What is more is that "an invasion of privacy requires a reasonable expectation of privacy to have been violated." *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1122387, *3 (Mar. 14, 2025).

Various courts have explained that where a tester is "seeking to file lawsuits for invasions of her privacy," she has "no expectation of privacy." *Id.; see also Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, *1 and *1 n.2 (C.D. Cal. Apr. 4, 2025) (court emphasizing that "invasions of privacy . . . depend on the plaintiff's reasonable expectations" and explaining that Plaintiff's argument that she had dual motivations for using the website—as a tester and legitimate user who wanted to use the website's services—did not change the fact that she expected her privacy to be invaded); *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996685, *3 n.4 (noting the "undisputed fact that [the tester plaintiff] filed numerous similar lawsuits before visiting Defendant's website" which "casts doubt on any suggestion that [the plaintiff] was surprised by surreptitious recording of her information."); *Rodriguez v. Brushfire Records*, 2025 WL 3692144, *6 (C.D. Cal. Dec. 15, 2025) (noting that the "Plaintiff's status as a 'tester' casts doubt on any suggestion that she was surprised by defendant's alleged privacy violations") (internal quotations omitted). Plaintiff had no expectation of privacy because she was seeking out potential invasions of privacy—she had no expectation or desire for her activity to be kept private.

**B. <u>Plaintiff Fails To Allege Highly Offensive Conduct.</u>**

Plaintiff twists herself into knots attempting to apply to routine commercial internet practices laws meant to prohibit extreme conduct. Even if the Court were to find that Plaintiff had a reasonable expectation of privacy—which she did not—there are no allegations in the SAC that AFHI's conduct was highly offensive. "The California Constitution sets a high standard for intrusion." *Williams v. DDR Media, LLC*, 2023 WL 5352896, at *6 (N.D. Cal. Aug. 18, 2023). The intrusion

analysis "involves the degree to which the intrusion is unacceptable as a matter of public policy." *Id.* (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020)). Courts examine "all of the surrounding circumstances, including the degree and setting of the intrusion and the intruder's motives and objectives." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009) (internal quotations omitted). Ultimately, it must constitute "an egregious breach of the social norms." *Id.* (quoting *Hill v. National Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (2004)). "Highly offensive conduct is that which amounts to 'an exceptional kind of prying into another's private affairs.'" *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *4 (N.D. Cal. Jan. 17, 2024) (quoting *Medical Laboratory Management Consultants v. Am. Broadcast Co.*, 306 F.3d 806, 819 (9th Cir. 2002)) (dismissing invasion of privacy claim in case where website installed cookies on website visitors' devices the moment they accessed the website).

Plaintiff's allegations in the FAC, taken as true, do not meet the high standard for intrusion under California law. And, instead of meaningfully engaging with the arguments AFHI set forth in the Motion to Dismiss, Plaintiff attempts to avoid this analysis entirely by relying on *Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606 to argue that the question of whether AFHI's conduct was highly offensive should not be decided as a matter of law at the pleading stage. [Dkt. No. 38, 14:19-21.] However, "the conclusion in *Facebook Internet Tracking* made a case-specific determination, not a generalized holding that this issue can never be resolved at the pleadings stage." *Williams*, 2023 WL 5352896, at *5. The Ninth Circuit in *Facebook, Inc. Internet Tracking* specifically referenced cases where courts *had* determined there had not been a highly offensive intrusion, and distinguished those cases, but said nothing about overruling those decisions. 956 F.3d at 606, n.8.

Numerous federal courts in California have considered this question at the pleading stage, and determined that collecting the types of data that Plaintiff alleges

AFHI collected (for instance, geolocation data and IP addresses) is not the type of collection that constitutes "highly offensive" or "egregious" behavior giving rise to an invasion of privacy claim. *See, e.g.*, *Papa Johns Int'l, Inc.*, 2024 WL 2060140, *5-6 (explaining that the court could determine the intrusion element on a motion to dismiss post-*In re Facebook Internet*, collecting cases that determined the same, and holding that the plaintiff failed to allege facts supporting both the "reasonable expectation of privacy" and "highly offensive" prongs of her intrusion upon seclusion claim); *Morilha v. Alphabet, Inc.*, 2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) (explaining that "disclosure of IP addresses and geolocation data is not sufficiently 'egregious' to support an invasion of privacy claim."); *Williams*, 2023 WL 5352896, at *6-7 (finding that the plaintiff had "alleged a minimal intrusion that was not highly offensive" because she alleged that she "willingly provided her information" and the alleged information recorded was "date and time" of her website visits, "her keystrokes and clicks on the website, her name, her IP address, her geographic location, her address, and her phone number.").

What's more, courts have held that "data collection and disclosure to third parties that is routine commercial behavior is not a highly offensive intrusion of privacy" and even that "disclosure of highly personal information such as social security numbers is not 'highly offensive.'" *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (internal quotations omitted). AFHI's practices were routine, and AFHI did not collect highly sensitive personal information such as social security numbers and medical information.

## III. CONCLUSION

For the foregoing reasons, and for the reasons outlined in AFHI's Motion to Dismiss, this Court should dismiss Plaintiff's SAC in its entirety and with prejudice.

Dated: April 15, 2026

Respectfully submitted,
**FRANKFURT KURNIT KLEIN + SELZ PC**

By: */s/ Matthew D. Pearson*
MATTHEW D. PEARSON

*Attorney for Defendant,* ACCIDENT FUND HOLDINGS, INC. (erroneously sued as Accident Fund Holdings, Inc. dba www.compwestinsurance.com)

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant ACCIDENT FUND HOLDINGS, INC. (erroneously sued as Accident Fund Holdings, Inc. dba www.compwestinsurance.com), certifies that this brief contains 3865 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated ____________.

DATED: April 15, 2026

*/s/ Matthew D. Pearson*

Matthew D. Pearson